**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

| | | |
|---|---|---|
| KAWA FOAD, ESQ., | § | |
| | § | |
| ***Plaintiff***, | § | |
| | § | |
| v. | § | Civil Action No. 4:26-cv-05348 |
| | § | |
| THE HARRIS-GALVESTON SUBSIDENCE DISTRICT, et al., | § | Judge Lee H. Rosenthal |
| | § | |
| | § | |
| | § | |
| ***Defendants***. | | |

**PLAINTIFF'S RESPONSE IN OPPOSITION TO THE GDHM DEFENDANTS' RULE 12(b)(6) MOTION TO DISMISS (ECF NO. 10)**

**TABLE OF CONTENTS**

**I. NATURE AND STAGE OF THE PROCEEDING....................1**

**II. STATEMENT OF THE ISSUES AND STANDARD OF REVIEW....................2**

**III. SUMMARY OF THE ARGUMENT....................3**

**IV. THE MOTION MISSTATES THE RECORD AND ITS OWN AUTHORITIES....................4**

**V. ARGUMENT....................6**

A. Attorney Immunity Is An Affirmative Defense Whose Predicate—A Client And A Defined Scope Of Representation—Is Absent From, And Contradicted By, The Pleadings....................6

B. Texas Common-Law Defenses Cannot Defeat Claims Arising Under 42 U.S.C. § 1983....................9

C. Private Lawyers Who Conspire With An Adjudicator Act Under Color Of State Law And Share No One's Immunity; The Conspiracy Is Pleaded With Extraordinary Particularity....................11

D. The Quasi-Judicial Privilege Is A State-Law Defamation Privilege That Does Not Reach The Federal Claims, Does Not Reach Conduct, And Is Fact-Bound As To The Statements It Might Reach....................12

E. Even Under Texas Law, Attorney Immunity Reaches Only Lawyerly Conduct Within The Scope Of An Established Representation....................14

F. The Motion's Unauthorized-Practice Argument Seeks Merits Fact-Finding Rule 12 Does Not Permit, Rests On The Very Order The FAC Challenges, And Is Beside The Point....................15

G. The "Unappealed Order" Premise Is Refuted By The Motion, By The District's Rules, And By The Statute....................18

H. The Claims Against GDHM Do Not Fall With A Defense That Has Not Been Established....................18

I. Dismissal With Prejudice Would Be Improper; In The Alternative, Leave To Amend Should Be Granted....................19

**VI. CONCLUSION....................19**

## TABLE OF CITATIONS

**Cases**

*Adickes v. S.H. Kress & Co.*, 398 U.S. 144 (1970)....11
*Ashcroft v. Iqbal*, 556 U.S. 662 (2009)....2
*BancPass, Inc. v. Highway Toll Admin., L.L.C.*, 863 F.3d 391 (5th Cir. 2017)....13, 19
*Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007)....2, 12
*Bethel v. Quilling, Selander, Lownds, Winslett & Moser, P.C.*, 595 S.W.3d 651 (Tex. 2020)....7, 14
*Bonner v. Newrez LLC*, No. 4:24-CV-3805, 2025 WL 1905590 (S.D. Tex. Mar. 11, 2025)....10
*Briscoe v. LaHue*, 460 U.S. 325 (1983)....3, 5, 10
*Burzynski v. Aetna Life Ins. Co.*, 967 F.2d 1063 (5th Cir. 1992)....14
*Cantey Hanger, LLP v. Byrd*, 467 S.W.3d 477 (Tex. 2015)....6, 8, 10, 14
*Clark v. Amoco Prod. Co.*, 794 F.2d 967 (5th Cir. 1986)....2, 8
*Collins v. Morgan Stanley Dean Witter*, 224 F.3d 496 (5th Cir. 2000)....2
*De Mankowski v. Ship Channel Dev. Co.*, 300 S.W. 118 (Tex. Civ. App.—Galveston 1927, no writ)....14
*Dennis v. Sparks*, 449 U.S. 24 (1980)....5, 11, 19
*Deramus v. Shapiro Schwartz, LLP*, No. 4:19-CV-4683, 2020 WL 3493545 (S.D. Tex. June 2, 2020)....10
*Dimitric v. Tex. Workforce Comm'n*, No. G-07-247, 2009 WL 674391 (S.D. Tex. Mar. 13, 2009)....10
*Felder v. Casey*, 487 U.S. 131 (1988)....9
*Fiess v. State Farm Lloyds*, 202 S.W.3d 744 (Tex. 2006)....17
*Gooden v. Mackie*, No. 4:19-CV-02948, 2020 WL 714291 (S.D. Tex. Jan. 23, 2020)....10
*Great Plains Tr. Co. v. Morgan Stanley Dean Witter & Co.*, 313 F.3d 305 (5th Cir. 2002)....19
*Hampton v. City of Chicago*, 484 F.2d 602 (7th Cir. 1973)....9
*Haynes & Boone, LLP v. NFTD, LLC*, 631 S.W.3d 65 (Tex. 2021)....7, 8
*Howlett v. Rose*, 496 U.S. 356 (1990)....3, 9, 10, 19
*Ironshore Europe DAC v. Schiff Hardin, LLP*, 912 F.3d 759 (5th Cir. 2019)....2, 6, 10
*James v. Brown*, 637 S.W.2d 914 (Tex. 1982)....12, 19
*Jennings v. Naman Howell Smith & Lee, PLLC*, No. 25-11284, 2026 WL 2018673 (5th Cir. July 13, 2026)....3, 5, 10, 18
*Kelley v. Saenz*, No. H-22-2175 (S.D. Tex. Sept. 24, 2025)....9
*Kelly v. Nichamoff*, 868 F.3d 371 (5th Cir. 2017)....2, 6, 8, 10, 19
*Landry's, Inc. v. Animal Legal Def. Fund*, 631 S.W.3d 40 (Tex. 2021)....14
*Lugar v. Edmondson Oil Co.*, 457 U.S. 922 (1982)....11
*Martinez v. California*, 444 U.S. 277 (1980)....3, 9, 10, 12, 19
*McCaffety v. Barnstone*, No. H-23-2629, 2024 WL 709679 (S.D. Tex. Feb. 21, 2024)....10, 11
*Miller v. Dunn*, No. 24-10500, 2025 WL 1605023 (5th Cir. Apr. 8, 2025)....10

*Moskovits v. McGlinchey Stafford PLLC*, No. 4:23-CV-3746, 2024 WL 2750049 (S.D. Tex. May 1, 2024) ........ 10
*Patsy v. Bd. of Regents*, 457 U.S. 496 (1982) ........ 18
*Payne v. Anthony Scott Law Firm PLLC*, No. 3:22-CV-2926, 2023 WL 3587775 (N.D. Tex. May 5, 2023) ........ 3, 5, 12
*R.R. Comm'n of Tex. v. Tex. Citizens for a Safe Future & Clean Water*, 336 S.W.3d 619 (Tex. 2011) ........ 17
*Reagan v. Guardian Life Ins. Co.*, 166 S.W.2d 909 (Tex. 1942) ........ 12
*Shanks v. AlliedSignal, Inc.*, 169 F.3d 988 (5th Cir. 1999) ........ 13
*Taylor v. Tolbert*, 644 S.W.3d 637 (Tex. 2022) ........ passim
*Tower v. Glover*, 467 U.S. 914 (1984) ........ 3, 9, 10, 11, 19
*Troice v. Greenberg Traurig, LLP*, 921 F.3d 501 (5th Cir. 2019) ........ 6, 10, 18
*Troice v. Proskauer Rose, LLP*, 816 F.3d 341 (5th Cir. 2016) ........ 5, 10, 18
*United States ex rel. Doe v. Planned Parenthood Fed'n of Am., Inc.*, No. 23-11184 (5th Cir. Aug. 12, 2026) (en banc) ........ 5, 8, 19

**Statutes**

42 U.S.C. § 1983 ........ passim
Tex. Gov't Code § 81.101 ........ 16, 17
Tex. Penal Code § 38.123 ........ 16
Tex. Spec. Dist. Loc. Laws Code § 8801.058 ........ 8
Tex. Spec. Dist. Loc. Laws Code § 8801.109 ........ 16
Tex. Spec. Dist. Loc. Laws Code § 8801.202 ........ 17

**Rules**

Fed. R. Civ. P. 12(b)(6) ........ 1, 2, 19
Fed. R. Civ. P. 15(a)(2) ........ 19
Fed. R. Civ. P. 15(a)(1) ........ 4
S.D. Tex. LR 7.5(A) ........ 20
Harris-Galveston Subsidence District Rule 7.3(c) (June 10, 2026) ........ 15, 16
Harris-Galveston Subsidence District Rule 7.5(c), (k) (June 10, 2026) ........ 11, 14, 16
Harris-Galveston Subsidence District Rule 7.8(b) (June 10, 2026) ........ 17

**Other Authorities**

Tex. Att'y Gen. Op. No. H-974 (1977) ........ 16

**TO THE HONORABLE LEE H. ROSENTHAL, UNITED STATES DISTRICT JUDGE:**

Plaintiff KAWA FOAD, ESQ. ("***Plaintiff***"), appearing *pro se*, files this Response in Opposition to the Rule 12(b)(6) Motion to Dismiss (ECF No. 10) (the "***Motion***") jointly filed by Defendants GRAVES, DOUGHERTY, HEARON & MOODY, P.C. ("***GDHM***"), NATASHA J. MARTIN ("***Martin***"), and BOBBY M. SALEHI ("***Salehi***") (inadvertently named in Plaintiff's Verified First Amended Complaint as "Bobby Saleh")[1] (collectively, the "***GDHM Defendants***"), and respectfully states as follows:

## I. NATURE AND STAGE OF THE PROCEEDING

This is a civil-rights action under 42 U.S.C. § 1983, with supplemental Texas-law claims, arising from Plaintiff's removal—without motion, notice, or hearing—from an administrative proceeding before the Harris-Galveston Subsidence District ("***HGSD***" or the "***District***") on an accusation—first advanced by Martin, by electronic mail but not an *actual* motion—that Plaintiff had engaged in the unauthorized practice of law. (FAC ¶¶ 4(i), 25, 71; ECF No. 10-1.)

Plaintiff's Verified First Amended Complaint (ECF No. 6) (the "***FAC***"), filed July 24, 2026, pleads eight counts. As against the GDHM Defendants, the FAC pleads First Amendment retaliation (Count I) and stigma-plus due process (Count II) against Martin and GDHM; § 1983 conspiracy (Count VII) against Martin, Salehi, and GDHM; defamation *per se* (Count V) against Martin; tortious interference (Count VI) against Martin and GDHM; and *respondeat superior* liability (Count VIII) against GDHM. The GDHM Defendants moved to dismiss under Rule 12(b)(6) on August 24, 2026, attaching three exhibits. No scheduling order has issued; the Rule 16 conference is set for October 9, 2026. (ECF No. 2.)

---

[1] Concurrently herewith, Plaintiff files a Notice of Errata to rectify this negligible issue, as well as some other minor, non-substantive issues.

## II. STATEMENT OF THE ISSUES AND STANDARD OF REVIEW

The Motion presents five issues: (1) whether Texas's common-law attorney-immunity defense bars Plaintiff's claims, including his federal claims, on the face of the FAC; (2) whether Texas's absolute privilege for communications in quasi-judicial proceedings does so; (3) whether the Court may dismiss on the ground that the FAC's own allegations "show" that Plaintiff engaged in the unauthorized practice of law; (4) whether the FAC states a claim against GDHM; and (5) whether the FAC plausibly pleads a § 1983 conspiracy. Mot. 6.

On a Rule 12(b)(6) motion, the Court accepts all well-pleaded facts as true and views them in the light most favorable to the plaintiff, asking only whether the complaint states a claim that is plausible on its face. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007); *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). An affirmative defense supports dismissal at this stage only "if a successful affirmative defense appears clearly on the face of the pleadings," and even a claim the court believes cannot ultimately be proved "may not be dismissed so long as the complaint states a claim." *Clark v. Amoco Prod. Co.*, 794 F.2d 967, 970 (5th Cir. 1986) (cited at Mot. 6–7). Where the defense is attorney immunity, "an attorney seeking dismissal based on attorney immunity bears the burden of establishing entitlement to the defense," and must conclusively establish that the conduct alleged fell within the scope of the representation. *Kelly v. Nichamoff*, 868 F.3d 371, 375 (5th Cir. 2017); *Ironshore Europe DAC v. Schiff Hardin, LLP*, 912 F.3d 759, 763–64 (5th Cir. 2019) (cited at Mot. 7). The GDHM Defendants attach three exhibits under *Collins v. Morgan Stanley Dean Witter*, 224 F.3d 496, 498–99 (5th Cir. 2000). Plaintiff does not object; those exhibits are before the Court for all purposes, including the admissions they contain against the GDHM Defendants.

## III. SUMMARY OF THE ARGUMENT

The Motion asks the Court to do three things Rule 12(b)(6) simply does not permit. Firstly, it asks the Court to resolve a fact-bound affirmative defense—attorney immunity—whose predicate (a client and a defined scope of representation) the movants never establish and which the record expressly contradicts: The only engagement instrument GDHM has ever produced is unsigned by the District; no Board authorization exists, by the District's own written admission, for the retention of GDHM and/or its attorneys; and the GDHM Defendants have given four inconsistent accounts of whom they represent. Secondly, it asks the Court to apply a Texas common-law defense to federal causes of action, which is contrary to *Martinez v. California*, 444 U.S. 277, 284 n.8 (1980); *Howlett v. Rose*, 496 U.S. 356, 375–76 (1990); *Tower v. Glover*, 467 U.S. 914, 920–23 (1984); and the Supreme Court of Texas's own holding in *Taylor v. Tolbert*, 644 S.W.3d 637, 653 (Tex. 2022), that "a state's common-law defense does not apply to federal statutes." Lastly, it asks the Court to adjudicate the merits of the very accusation the FAC alleges was false and retaliatory—that Plaintiff practiced law without authority—by treating the challenged exclusion order as settled fact.

The Motion also refutes itself. It tells the Court that Plaintiff "did not appeal" the exclusion order, yet concedes that Plaintiff served a forty-page verified omnibus motion attacking it and argued at a status conference that it was wrong. Mot. 11–12, 19. It also tells the Court that Martin's July 1, 2026 email "did not refer to" Plaintiff, yet its own Exhibit 3 shows Martin answering the permittee's objection that "my counsel was removed" by reasserting that only Texas-licensed persons may represent parties before the District. ECF No. 10-3 at 2, 4. It cites *Briscoe v. LaHue*, 460 U.S. 325, 334–35 (1983)—a witness-immunity case—for the proposition that Texas attorney immunity defeats § 1983 claims. Mot. 14. It cites *Jennings v. Naman Howell Smith & Lee, PLLC*, No. 25-11284, 2026 WL 2018673, at *1 (5th Cir. July 13, 2026), while omitting that the Fifth

Circuit applied attorney immunity there only to the plaintiff's "state law claims." Mot. 15. And it cites *Payne v. Anthony Scott Law Firm PLLC*, No. 3:22-CV-2926, 2023 WL 3587775, at *3–4 (N.D. Tex. May 5, 2023), which expressly concludes that the Texas quasi-judicial privilege does *not* apply to federal causes of action. Mot. 17.

Making matters worse, there is a plethora of other issues with the Motion. Setting aside the fact that counsel for the GDHM Defendants (who, by the way, practices at GDHM alongside Martin and Salehi) has misstated the names of the very cases on which the Motion relies (*see* Section V.B, *infra*), the Motion also seeks dismissal of Plaintiff's claims against the GDHM Defendants "with prejudice." Mot. 16, 21. And what is the ground for this entirely unwarranted relief, according to the Motion? That Plaintiff has already amended his Complaint once, and that any further amendment would therefore, be futile, purportedly. Mot. 16. For this Court's reference, Plaintiff has amended his Complaint only once, and did so as a matter of course, which is expressly permitted by the Rules. *See* Fed. R. Civ. P. 15(a)(1).

Thus, the Motion should be denied. At a minimum, a dismissal with prejudice would be improper, and leave to amend should be granted should the Court dismiss the FAC.

## IV. THE MOTION MISSTATES THE RECORD AND ITS OWN AUTHORITIES

Before turning to the law, the Court should be aware of the following, each verifiable from the Motion, its exhibits, or the cited opinions themselves.

1. **The "unappealed order."** The Motion twice asserts that Hearing Examiner Truscott's October 20, 2025 order went unchallenged. Mot. 12 ("he does not allege that he appealed the order"), 19 ("which Foad did not appeal"). Its own statement of facts concedes that Plaintiff served a "40-page 'Emergency Omnibus Motion for Relief'" and, on April 7, 2026, "argued that the order precluding him from appearing was wrong." Mot. 11. The FAC pleads that the omnibus motion—which sought the disqualification of Truscott, Martin, and the District's general counsel, Defendant Gregory M. Ellis ("***Ellis***")—was placed before the tribunal and all counsel in November 2025, re-served in March and April 2026, resubmitted May 18, 2026 to the District's board of directors (the "***Board***") through its Chairman, and never ruled upon.

(FAC ¶¶ 80–81, 88 & n.14, 167.) Exhibit 3 itself records the permittee's written objection and request to reopen the record. ECF No. 10-3 at 3–4.

2. **The July 1, 2026 email.** The Motion asserts that "Martin's July 1 email did not refer to him, let alone accuse him of the unauthorized practice of law." Mot. 12. Exhibit 3 shows otherwise. Answering permittee Bradley Davis's ("***Mr. Davis***") objection that "[a]fter my counsel was removed, I was not given a reasonable opportunity to present my case or obtain new representation," Martin wrote that "the District only allows authorized representatives, meaning people fully licensed in the State of Texas to represent parties and provide legal advice," and that "no Texas-licensed lawyer has appeared on your behalf." ECF No. 10-3 at 2, 4. The email does not name Plaintiff; it unmistakably refers to him and repeats the accusation that his representation was unauthorized.

3. ***Jennings***. The Motion quotes *Jennings*, 2026 WL 2018673, at *1, as holding that claims against lawyers were "entitled to immunity." Mot. 15, 20, 21. The sentence immediately preceding the one the Motion quotes reads: "Jennings argues that the district court misapplied attorney immunity to her state law claims . . . ." *Jennings*, 2026 WL 2018673, at *1 (emphasis added). The § 1983 claim in *Jennings* was dismissed for failure to plead state action—"[n]or did her pleadings demonstrate, with facial plausibility, any conspiracy or joint activity between the defendant and any state actors"—not on immunity. *Id.* The Motion omits both "state law" and "facial."

4. ***Briscoe***. The Motion cites *Briscoe*, 460 U.S. at 334–35, for attorneys' "immunity from Section 1983 claims." Mot. 14. *Briscoe* concerns the federal common-law immunity of witnesses for trial testimony; it does not address attorney immunity or suggest that § 1983 absorbs state-law immunity doctrines, and it recognizes that private participants in the judicial process may act under color of law "by conspiring with the prosecutor or other state officials." *Id.* at 329 n.7 (citing *Dennis v. Sparks*, 449 U.S. 24 (1980)).

5. ***Payne***. The Motion relies on *Payne*, 2023 WL 3587775, at *2–3, for the breadth of the quasi-judicial privilege. Mot. 17. The same opinion finds no "sufficient support to show that the Texas judicial communications privilege applies to federal causes of action, such as those alleged here, when the court is exercising federal question jurisdiction," and holds that the defendant "lacks privilege from suit for Plaintiff's section 1983 . . . causes of action." *Id.* at *3–4.

6. ***Doe***. The Motion cites the *en banc* Fifth Circuit's decision in *United States ex rel. Doe v. Planned Parenthood Federation of America, Inc.*, No. 23-11184 (5th Cir. Aug. 12, 2026) (en banc), as decided on "Aug. 19, 2026." Mot. 4, 7 n.1. The opinion issued August 12, 2026. More important is what the Motion omits: the *en banc* court dismissed an interlocutory appeal from the denial of attorney immunity because the Supreme Court of Texas "has made conflicting statements characterizing attorney immunity as an affirmative defense to liability rather than a true immunity from suit," and it therefore "lack[s] confidence in *Troice*"—the very *Troice v. Proskauer Rose, LLP*, 816

F.3d 341 (5th Cir. 2016), decision on which the Motion relies for dismissal with prejudice. *Doe*, slip op. at 3–4; *cf.* Mot. 16 (citing *Troice*, 816 F.3d at 350).[2]

7. **Martin's "switched sides."** The Motion says Martin could not have "switched sides" because her April 9, 2025 litigation update to the Board "could not possibly have included the Woodloch contested case." Mot. 13. That is not the allegation. The FAC alleges that Martin advised the Board—"including its closed session"—at the very meeting at which the Board took up the Woodloch penalty in executive session and, within a minute of reconvening, denied Plaintiff's continuance request and rejected the counteroffer; she then appeared as the General Manager's adversary counsel in the contested case arising from that action. (FAC ¶¶ 45–47, 169, 191.)

A motion that impeaches its own premises cannot carry a dismissal, let alone one with prejudice.

## V. ARGUMENT

### A. Attorney Immunity Is An Affirmative Defense Whose Predicate—A Client And A Defined Scope Of Representation—Is Absent From, And Contradicted By, The Pleadings.

"Attorney immunity is an affirmative defense." *Cantey Hanger, LLP v. Byrd*, 467 S.W.3d 477, 481 (Tex. 2015). It applies only "when the conduct at issue occurred within the scope of the attorney's representation of a client." *Troice v. Greenberg Traurig, LLP*, 921 F.3d 501, 503 (5th Cir. 2019). "An attorney who pleads the affirmative defense of attorney immunity has the burden to prove that his alleged wrongful conduct . . . is part of the discharge of his duties to his client." *Cantey Hanger*, 467 S.W.3d at 484. "The only facts required to support an attorney-immunity defense are the type of conduct at issue and the existence of an attorney–client relationship at the time" of the conduct. *Taylor*, 644 S.W.3d at 645. Those are the two facts the movants must supply, and the Fifth Circuit has held that at the pleading stage they must be supplied by the complaint itself: "Although Texas courts occasionally grant attorney immunity at the motion to dismiss stage, in those cases, the scope of the attorney's representation—and thus entitlement to the immunity—

[2] The Motion cites the decision as 2026 WL 2333162, at *1–2. Plaintiff cites the slip opinion, available at https://www.ca5.uscourts.gov/opinions/pub/23/23-11184-CV1.pdf.

was apparent on the face of the complaint." *Kelly*, 868 F.3d at 375. In *Kelly*, the Fifth Circuit affirmed the denial of a motion to dismiss precisely because the complaint's acknowledgment that the defendant "was Rembach's attorney" "establishes only that Rembach was Nichamoff's client. It does not establish the *scope* of Nichamoff's representation." *Id.* at 375. "The mere fact that an attorney was representing a client at the time of alleged fraudulent activity is not enough to warrant immunity." *Id.* at 375–76; *accord Ironshore*, 912 F.3d at 763–64 (defense "must appear on the face of the complaint"); *Haynes & Boone, LLP v. NFTD, LLC*, 631 S.W.3d 65, 78, 81 (Tex. 2021) (remanding for determination whether the record conclusively established that the conduct was of the kind immunity protects); *Bethel v. Quilling, Selander, Lownds, Winslett & Moser, P.C.*, 595 S.W.3d 651, 656 (Tex. 2020) ("some affirmative defenses will not be conclusively established by the facts in a plaintiff's petition").

Here the client and the scope are not merely unestablished; they are contradicted by the pleadings and by the District's own written admissions. The FAC pleads, and the Appendix filed with it documents, that the only engagement instrument GDHM has ever produced is a December 22, 2021 letter that by its terms takes effect only "if accepted by you," that is signed by GDHM alone, and whose "AGREED: Michael J. Turco, General Manager" block is blank. (FAC ¶¶ 173, 176–77; App. Ex. E, APP-0017–18.) The District's public-information counsel confirmed in writing that no Board agenda and no Board minutes reflect any legal-services agreement with GDHM, and no GDHM invoice or payment record has ever been produced. (FAC ¶¶ 174, 177, 179; App. Ex. G, APP-0027.) And when a sitting Director asked Salehi on the record, "When did you become the general manager's attorney?", Salehi answered: "I don't know when my firm was retained," describing an engagement "with the district"; Director Don Johnson responded, "I just didn't realize we had that relationship." (FAC ¶¶ 148, 150, 154; App. Ex. M, APP-0120.) The

GDHM Defendants have thus described their client, in turn, as the Board (April 9, 2025), the General Manager (October 2025 forward), "the district" (July 8, 2026), and—per the only engagement letter—the District for "public-information requests," a role Martin disclaimed in writing on June 22, 2026 ("I do not represent the District on open records matters") nine days before delivering the "General Manager's PIA Response." (FAC ¶¶ 45–46, 152, 169, 173, 187; ECF No. 10-3 at 1.)

The Motion's only answer is that Tex. Spec. Dist. Loc. Laws Code § 8801.058(a) authorizes the general manager to hire attorneys. Mot. 8. The statute authorizes; it does not engage. It supplies neither a client, nor a scope, nor a contract, nor an invoice—and the blank signature line on the only engagement letter in existence is the general manager's. Nor does the FAC's recounting of the GDHM Defendants' own assertions of their roles (Mot. 13, 15–16) concede a formed engagement or define its scope. The FAC pleads what the GDHM Defendants said; it pleads in the same breath that the District has no record of authorizing, executing, or paying for what they said. (FAC ¶¶ 173–79, 215.) *Kelly* is dispositive: an allegation that a lawyer "was representing" someone establishes at most a client, not a scope, and "is not enough to warrant immunity." 868 F.3d at 375–76. The defense is theirs to prove, not Plaintiff's to negate, and on the currently-developed record, it cannot be resolved under *Clark*.

The Fifth Circuit's decision in *Doe* confirms the character of what the movants invoke. Sitting en banc, the court dismissed an interlocutory appeal from the denial of attorney immunity because the Supreme Court of Texas "has made conflicting statements characterizing attorney immunity as an affirmative defense to liability rather than a true immunity from suit." *Doe*, slip op. at 3–4 (citing *Taylor*, 644 S.W.3d at 645–46, 649; *Cantey Hanger*, 467 S.W.3d at 481–84; *Haynes & Boone*, 631 S.W.3d at 78–80). The GDHM Defendants know this; their Motion proceeds

only by "[a]ssuming, without conceding," that the doctrine supplies an affirmative defense rather than an immunity from suit. Mot. 7 & n.1. An affirmative defense to liability is pleaded, proven, and—where fact-bound, as here—tried. It is not a writ of departure from Rule 12.

### B. Texas Common-Law Defenses Cannot Defeat Claims Arising Under 42 U.S.C. § 1983.

Counts I, II, and VII arise under federal law. The Motion deploys a Texas common-law defense against them without once confronting the Supreme Court's holdings that it cannot be done. "Conduct by persons acting under color of state law which is wrongful under 42 U.S.C. § 1983 . . . cannot be immunized by state law. A construction of the federal statute which permitted a state immunity defense to have controlling effect would transmute a basic guarantee into an illusory promise." *Martinez*, 444 U.S. at 284 n.8 (quoting *Hampton v. City of Chicago*, 484 F.2d 602, 607 (7th Cir. 1973)); *Howlett*, 496 U.S. at 375–76 ("The elements of, and the defenses to, a federal cause of action are defined by federal law."); *Felder v. Casey*, 487 U.S. 131, 138 (1988). Immunities under § 1983 are matters of federal law, and even federal courts "do not have a license to establish immunities from § 1983 actions in the interests of what [they] judge to be sound public policy." *Tower*, 467 U.S. at 922–23. *Tower* is directly on point: lawyers—there, public defenders—alleged to have conspired with state officials "have no immunity from § 1983 liability for intentional misconduct of the type alleged here." *Id.* at 921. The Court specifically noted that the common-law "immunity for defamatory statements made in the course of judicial proceedings . . . would not have covered a conspiracy by defense counsel and other state officials . . . ." *Id.* at 922.

The Supreme Court of Texas agrees. In *Taylor v. Tolbert*, the court held that Texas attorney immunity barred a plaintiff's *state* wiretap claims but not her *federal* wiretap claims, "because, quite simply, a state's common-law defense does not apply to federal statutes." 644 S.W.3d at 653.

The court explained that "state law cannot modify federal law," that federal courts "refus[e] to apply state common-law defenses, such as the judicial-proceedings privilege," to federal statutory claims, and that when the defense does apply, "counsel is shielded only from liability in a civil suit." *Id.* at 646, 653–57. Texas's highest court thus disclaims, for its own doctrine, the reach the GDHM Defendants ask this Court to give it. *See also Kelley v. Saenz*, No. H-22-2175, ECF No. 87, at 20–21 (S.D. Tex. Sept. 24, 2025) (Ellison, J.) (applying *Taylor* and holding that it "forecloses application of the defense to plaintiff's [federal] ECPA claims").

None of the Motion's authorities holds otherwise, and most say the opposite. *Troice v. Greenberg Traurig*, *Troice v. Proskauer Rose*, *Ironshore*, *Cantey Hanger*, *Gooden*, *Moskovits*, and *Bonner* involved only state-law claims.[3] *Deramus v. Shapiro Schwartz, LLP*, No. 4:19-CV-4683, 2020 WL 3493545 (S.D. Tex. June 2, 2020)—cited as "Dramus," Mot. 16—involved no § 1983 claim; every federal claim there was dismissed on independent grounds (no private right of action, failure to plead, limitations) before the magistrate judge reached attorney immunity, and she applied *Kelly*'s rule that the defense must be "apparent on the face of the complaint." *See id.* (Parts III.A–D). *Jennings* applied immunity to the "state law claims" and dismissed the § 1983 claim for want of state action. 2026 WL 2018673, at *1. *Miller v. Dunn*, No. 24-10500, 2025 WL 1605023, at *1–3 (5th Cir. Apr. 8, 2025), is an unpublished order denying leave to appeal *in forma pauperis*; the district court there had dismissed the § 1983 claims against the lawyers for failure to allege state action and declined supplemental jurisdiction over the state claims, and the panel's

[3] *Troice v. Greenberg Traurig*, 921 F.3d at 503–07 (Texas common-law and Texas Securities Act claims); *Troice v. Proskauer Rose*, 816 F.3d at 343–50 (same); *Ironshore*, 912 F.3d at 763–64 (negligent misrepresentation); *Cantey Hanger*, 467 S.W.3d at 480–81 (fraud and conspiracy); *Gooden v. Mackie*, No. 4:19-CV-02948, 2020 WL 714291, at *4 (S.D. Tex. Jan. 23, 2020) (improper-joinder analysis under state law); *Moskovits v. McGlinchey Stafford PLLC*, No. 4:23-CV-3746, 2024 WL 2750049 (S.D. Tex. May 1, 2024) (cited as "Moskovitz," Mot. 16) (fraud on the court and defamation); *Dimitric v. Tex. Workforce Comm'n*, No. G-07-247, 2009 WL 674391 (S.D. Tex. Mar. 13, 2009) (summary judgment on a state-law defamation claim); *Bonner v. Newrez LLC*, No. 4:24-CV-3805, 2025 WL 1905590 (S.D. Tex. Mar. 11, 2025) (order denying leave to amend in a removed diversity case).

two sentences invoking *Troice* contain no analysis of whether a state-law defense can bar a federal claim. And *McCaffety v. Barnstone*, No. H-23-2629, 2024 WL 709679, at *2 (S.D. Tex. Feb. 21, 2024), disposed of a frivolous *pro se* complaint against a *government* lawyer who also enjoyed qualified immunity, in a single sentence, as one of three alternative grounds. *Briscoe*, as shown above, concerns witness immunity. Not one of these decisions engages *Martinez*, *Howlett*, *Tower*, or *Taylor*. Where the Supreme Court of the United States and the Supreme Court of Texas have both spoken to the question, they have answered it against the movants.

### C. Private Lawyers Who Conspire With An Adjudicator Act Under Color Of State Law And Share No One's Immunity; The Conspiracy Is Pleaded With Extraordinary Particularity.

The Motion's conspiracy section (Mot. 20–21) runs headlong into *Dennis v. Sparks*. There, as here, private parties were alleged to have conspired with an immune adjudicator to procure an order. The Supreme Court held that "[p]rivate parties who corruptly conspire with a judge in connection with such conduct are thus acting under color of state law," 449 U.S. at 29, and—dispositive here—that they do not share the adjudicator's immunity: "it is of no consequence in this respect that the judge himself is immune from damages liability. Immunity does not change the character of the judge's action or that of his co-conspirators." *Id.* at 28; *accord Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 152 (1970); *Lugar v. Edmondson Oil Co.*, 457 U.S. 922, 941 (1982); *Tower*, 467 U.S. at 920. *McCaffety*, the Motion's lead case, applies Texas attorney immunity to a § 1983 conspiracy claim in a single unreasoned sentence; as shown in Section V.B, that doctrine does not reach the federal claims, and no district-court application of state law can override *Dennis* and/or *Tower*.

Nor is the conspiracy pleaded in conclusions. The FAC alleges a specific, dated sequence: On October 14, 2025, the Hearing Examiner emailed the General Manager's counsel—excluding the permittee's side—in violation of the District's own bar on ex parte contact, HGSD Rule 7.5(k)

(FAC ¶¶ 67, 256 & Fig. 6); on Friday, October 17, 2025—days after Plaintiff's renewed records demands—Martin sent the accusation to the Hearing Examiner's personal email address, ECF No. 10-1 (FAC ¶¶ 71, 136, 256); on Monday, October 20, 2025, before any response was possible and without any motion, the Hearing Examiner entered an order granting relief no party had requested, ECF No. 10-2 (FAC ¶¶ 73–75, 256); Martin thereafter drafted the proposed findings the Hearing Examiner adopted—including Finding No. 21 branding Plaintiff a violator of the tribunal's order—without any evidentiary hearing (FAC ¶¶ 89, 103, 107, 109, 116, 257); and the Hearing Examiner then closed the record and adopted the General Manager's proposal as her recommendation, as the Motion's own Exhibit 3 confirms, ECF No. 10-3 at 3 ("The record is now closed"); *id.* (Davis: "As you said, 'No evidentiary hearing has occurred.'") (FAC ¶¶ 111–13). The FAC further alleges that Salehi told the Board on July 8, 2026 that "no ex parte communications ever took place" while his firm possessed the October 14 email (FAC ¶¶ 150, 162, 183). "Three actors, five days, one result, no process." (FAC ¶ 256.) That is not a label; it is a chronology. Whether it reflects agreement is a question for discovery and a jury, not for Rule 12. *See Twombly*, 550 U.S. at 556 (plausibility requires "enough fact to raise a reasonable expectation that discovery will reveal evidence of illegal agreement").

As to Salehi specifically, the Motion concedes that the only claim pleaded against him is the § 1983 conspiracy count. Mot. 13–14. Texas attorney immunity and the Texas defamation privilege are therefore irrelevant to him in their entirety.

### D. The Quasi-Judicial Privilege Is A State-Law Defamation Privilege That Does Not Reach The Federal Claims, Does Not Reach Conduct, And Is Fact-Bound As To The Statements It Might Reach.

The absolute privilege of *Reagan v. Guardian Life Insurance Co.*, 166 S.W.2d 909 (Tex. 1942), is a creature of Texas defamation law: it provides that a privileged communication "cannot constitute the basis of a civil action in damages for slander or libel." *Id.* at 912 (quoted at Mot. 17).

Three consequences follow: *First*, as a state-law privilege, it cannot defeat the § 1983 claims. *Martinez*, 444 U.S. at 284 n.8; *Taylor*, 644 S.W.3d at 653 (federal courts refuse "to apply state common-law defenses, such as the judicial-proceedings privilege," to federal statutory claims). The Motion's own authority so holds. *Payne*, 2023 WL 3587775, at *3–4. *Second*, the privilege is confined to communications and to defamation-type liability. In *James v. Brown*—the Motion's own authority (Mot. 17)—the Supreme Court of Texas held that privileged reports to a probate court could not ground a libel action, but expressly disapproved a lower court's extension of "a blanket immunity from all civil liability," holding that "[t]he unavailability of a defamation action does not preclude a plaintiff from pursuing other remedies at law." 637 S.W.2d 914, 917–18 (Tex. 1982); *see Shanks v. AlliedSignal, Inc.*, 169 F.3d 988, 995 n.8 (5th Cir. 1999) (cited at Mot. 17) ("It is unclear whether, under Texas law, absolute immunity bars all causes of action arising from communications during a quasi-judicial proceeding. The Texas Supreme Court has intimated that absolute immunity applies only to defamation actions."). Count VI (tortious interference) and the federal counts rest on *conduct*—procuring Plaintiff's removal through a process-free order, ghost-drafting the adjudicator's findings, and *ex parte* coordination—not merely on the content of a communication. *Third*, as to Count V, whether each challenged publication was made "in the due course of" a quasi-judicial proceeding is a fact-bound question. The July 1, 2026 email was sent nearly six weeks *after* the Hearing Examiner had closed the contested case and remanded it (FAC ¶¶ 111–13; ECF No. 10-3 at 3 ("The record is now closed")), to a distribution list that included the District's public-information mailbox, its records custodian, and its public-information counsel (ECF No. 10-3 at 1; FAC ¶ 17), and it repeated the accusation in the guise of a "General Manager's PIA Response" on records matters Martin had disclaimed in writing nine days earlier. (FAC ¶¶ 152, 173, 187, 230, 243.) The Fifth Circuit has twice refused to apply the privilege on a defendant's

threshold motion on comparable facts. In *BancPass, Inc. v. Highway Toll Administration, L.L.C.*, 863 F.3d 391 (5th Cir. 2017), the court affirmed the denial of the privilege, holding that "the purpose—and not just the general subject matter—of a . . . communication should bear some relation to the contemplated litigation," that "the recipient of the communications must have a direct interest in the litigation or possess evidentiary information relevant to it." *Id.* at 403–05 (citation omitted). *BancPass* quoted the Texas warning that the privilege "cannot be enlarged into a license to go about in the community and make false and slanderous charges against his court adversary and escape liability for damages caused by such charges on the ground that he had made similar charges in his court pleadings." *Id.* at 402 (quoting *De Mankowski v. Ship Channel Dev. Co.*, 300 S.W. 118, 122 (Tex. Civ. App.—Galveston 1927, no writ)); *Burzynski v. Aetna Life Ins. Co.*, 967 F.2d 1063, 1068–69 (5th Cir. 1992) (reversing Rule 12 dismissal where communications were sent to recipients whose "relationship to the litigation was hypothetical at best" and served an "ulterior" purpose) (citation omitted). Whether the July 1 publication, made after closure to recipients with no adjudicative role, falls within or outside the privilege cannot be decided against Plaintiff on the pleadings.

### E. Even Under Texas Law, Attorney Immunity Reaches Only Lawyerly Conduct Within The Scope Of An Established Representation.

Texas attorney immunity protects only conduct involving "the office, professional training, skill, and authority of an attorney," and "attorney immunity does not apply to an activity simply because attorneys often engage in that activity." *Landry's, Inc. v. Animal Legal Def. Fund*, 631 S.W.3d 40, 47, 52 (Tex. 2021) (quoting *Cantey Hanger*, 467 S.W.3d at 482). "'Foreign to the duties' does not mean something a good attorney should not do; it means that the attorney is acting outside his or her capacity and function as an attorney." *Taylor*, 644 S.W.3d at 646; *Bethel*, 595 S.W.3d at 657–58 (immunity "is not boundless"; it does not reach conduct that does not "involve

'the provision of legal services'" or that "fall[s] outside the scope of the attorney's representation of a client"). The FAC alleges conduct a jury could find falls outside any lawyerly function performed for an identified client within an identified scope: coordinating with the adjudicator outside the presence of the opposing party in violation of Rule 7.5(k); drafting the neutral examiner's findings against a party whose counsel had just been removed; publishing the accusation after the proceeding had closed, on a subject (public-information responses) outside the representation Martin herself claimed; and acting in the GDHM Defendants' own professional and financial interest in shielding an unauthorized, unexecuted, and undocumented public engagement from the one lawyer demanding the District's records. (FAC ¶¶ 66, 136, 173–79, 194, 205, 250, 261.) The Motion's cases involved lawyers whose clients and engagements were undisputed and whose conduct was the ordinary work of litigation—"sending letters and notices, filing legal documents," Mot. 16—not a lawyer whose client the District cannot identify and whose engagement the District never signed. With the client, the engagement, and the function all unestablished by the movants and disputed by the pleadings, the defense cannot be resolved on this record.

### F. The Motion's Unauthorized-Practice Argument Seeks Merits Fact-Finding Rule 12 Does Not Permit, Rests On The Very Order The FAC Challenges, And Is Beside The Point.

Section V.C of the Motion asks the Court to find, as fact and on the movants' framing, that Plaintiff "did, indeed, engage in the unauthorized practice of law." Mot. 18. The FAC alleges, under oath, that Plaintiff "permissibly represented his Clients" and that the accusation was false. (FAC ¶¶ 14, 245.) Those allegations are accepted as true. Truth is an affirmative defense to defamation; it does not appear on the face of a complaint that pleads falsity. Four further defects follow.

*First*, the argument is bootstrapping. It rests entirely on the October 20, 2025 order, which it calls "eminently reasonable." Mot. 19. The FAC challenges that order as the product of the very misconduct alleged—an order entered on the strength of a Friday email, without motion, notice, briefing, or hearing, granting relief Martin herself had not requested. (FAC ¶¶ 72–75.) Assuming the validity of a challenged official act in order to defeat the challenge to it is not analysis.

*Second*, the District's own rules refute the premise. Rule 7.3(c), a "General Procedures" provision applicable to all District hearings, provides that "[a]ny interested person may appear in person or may be represented by counsel, engineer, or other representative, provided the representative is fully authorized to speak and act for the principal," and that such "representative may present evidence, exhibits, or testimony, or make an oral presentation." HGSD Rules 7.3(c) (June 10, 2026) (cited at Mot. 9, 19). Rule 7.5(c), governing contested cases, likewise provides for appearance "in person or by representative." The Enabling Act provides that interested persons may appear "in person or by counsel, or both," including before a hearings examiner. Tex. Spec. Dist. Loc. Laws Code § 8801.109(c)–(d). The Hearing Examiner's order confined Rule 7.3(c) to "informal or technical proceedings"—a limitation found nowhere in its text. ECF No. 10-2. The Motion responds that contested cases are "governed by Rule 7.5, not Rule 7.3" (Mot. 19), but Rule 7.3 by its terms governs the "General Procedures" for every District hearing, and Rule 7.5(c) itself uses the same word: "representative." A rule that expressly admits engineers and "other representative[s]" is not a rule that silently requires a Texas law license.

Third, the statutory definition the Motion quotes does not reach the conduct alleged. Section 81.101(a) speaks of "the management of the action or proceeding on behalf of a client before a judge in court." Tex. Gov't Code § 81.101(a) (quoted at Mot. 19). A hearings examiner retained by a subsidence district is not a judge, and a District permit hearing is not a court. Texas's

Attorney General long ago concluded that representation before state agencies (there, the State Board of Insurance and the Industrial Accident Board) "does not constitute the unauthorized practice of law so long as such representation is permitted by the agencies and is not prohibited by any act or decision of the Legislature or the courts." Tex. Att'y Gen. Op. No. H-974 (1977). The Motion's own footnote concedes the criminal-law point: the Penal Code's unauthorized-practice provision "does not apply to a person currently licensed to practice law . . . in another state" who is in good standing. Mot. 18 n.5 (quoting Tex. Penal Code § 38.123(b)). Plaintiff is a Florida lawyer in good standing. (FAC ¶ 13.) Whatever the ultimate reach of § 81.101 in this setting, it is a contested merits question—not a premise available for dismissal.[4]

Fourth, the argument is legally beside the point. The FAC pleads expressly: "This action does not ask the Court to decide the licensure question. . . . The wrong is the same whoever had the better of the licensure debate." (FAC ¶ 218.) Plaintiff's claims attack the manner and purpose by which his exclusion was procured—retaliation for protected petitioning, concerted action with the adjudicator, and a stigmatizing alteration of a state-created entitlement without process—not merely its bottom line. Advocacy directed to Plaintiff's own right to appear is self-advocacy, not the representation of a client, and even an exclusion that could lawfully have been entered does not license the means the FAC alleges were used to obtain it. The Motion does not contend that Counts I, II, VI, or VII fail to plead their elements; it rests entirely on immunity, privilege, and the unauthorized-practice narrative.

[4] The Motion's footnote 6 invokes *Railroad Commission of Texas v. Texas Citizens for a Safe Future & Clean Water*, 336 S.W.3d 619, 625 (Tex. 2011), for the proposition that an agency rule cannot contradict a statute. Mot. 20 n.6. That decision concerns judicial deference to an agency's formal construction of its enabling statute; it does not hold that a rule permitting appearance by "counsel, engineer, or other representative" conflicts with § 81.101, and a hearing examiner's one-page ruling entered without notice or hearing is not a "formal opinion[] adopted after formal proceedings." 336 S.W.3d at 625 (quoting *Fiess v. State Farm Lloyds*, 202 S.W.3d 744, 747–48 (Tex. 2006)).

### G. The "Unappealed Order" Premise Is Refuted By The Motion, By The District's Rules, And By The Statute.

As shown in Section IV, the Motion's own pages concede that the October 20, 2025 order was contested repeatedly, and its own Exhibit 3 records the permittee's formal objection. The premise also fails as a matter of law. The District's rules provide for "[r]equests for [r]ehearing" only of "[a]ny decision of the Board," HGSD Rule 7.8(b) (emphasis added), and the Enabling Act affords judicial review to a person aggrieved by a final District action "only after any administrative appeal to the district is finally resolved." Tex. Spec. Dist. Loc. Laws Code § 8801.202(a) (cited at Mot. 9). Neither supplies a vehicle by which an excluded non-party representative may appeal a hearing examiner's interlocutory ruling on representation, and § 1983 requires no exhaustion in any event. *Patsy v. Bd. of Regents*, 457 U.S. 496, 516 (1982). The movants fault Plaintiff for declining to climb a staircase that does not exist.

### H. The Claims Against GDHM Do Not Fall With A Defense That Has Not Been Established.

The Motion's argument as to GDHM is expressly derivative: Plaintiff's claims against the firm "fail because his claims against Martin and Salehi fail." Mot. 20. Because the underlying defenses cannot be resolved on this record, the derivative argument falls with them. Count VIII pleads *respondeat superior* liability, which the Motion does not contend is unavailable against a law firm; its own authority involved a firm sued on that very theory. *Troice*, 921 F.3d at 503. As for GDHM's institutional conduct, the FAC alleges that Plaintiff's April 15, 2026 verified declaration documenting the conduct alleged went to twenty-four named attorneys at GDHM and at Bickerstaff Heath Delgado Acosta LLP, the District's public-information counsel; that the omnibus motion seeking Martin's disqualification by name had been in the firm's hands since November 2025; and that the firm investigated nothing, corrected nothing, and instead continued the representations and retained their benefits. (FAC ¶¶ 108, 267.) Notice followed by continuation

is the stuff of ratification. *Jennings*, where the scope of representation was undisputed, says nothing about a case in which the representation itself is the disputed fact.

**I. Dismissal With Prejudice Would Be Improper; In The Alternative, Leave To Amend Should Be Granted.**

Because each ground of the Motion is either legally foreclosed or fact-bound, the Motion should be denied. At a minimum, dismissal with prejudice would be improper: futility cannot be found where the asserted defects are affirmative defenses that do not appear on the face of the pleadings, and the Motion's lead authority for with-prejudice dismissal, *Troice v. Proskauer Rose*, is the decision in which the en banc Fifth Circuit has now expressly stated it "lack[s] confidence." *Doe*, slip op. at 4. Should the Court find any count deficient, Plaintiff expressly requests leave to amend under Rule 15(a)(2), which provides that "[t]he court should freely give leave when justice so requires," and district courts in this Circuit "often afford plaintiffs at least one opportunity to cure pleading deficiencies before dismissing a case." *Great Plains Tr. Co. v. Morgan Stanley Dean Witter & Co.*, 313 F.3d 305, 329 (5th Cir. 2002). An amended pleading would, among other things, add further detail concerning the District's admissions about the GDHM engagement, each publication on which Count V rests, and Salehi's July 8, 2026 statements to the Board.

## VI. CONCLUSION

To sum things up, the Motion fails for three independent reasons—each dispositive. First, every ground it advances is a creature of Texas common law, and Texas common law cannot defeat a federal cause of action. *Martinez*, 444 U.S. at 284 n.8; *Howlett*, 496 U.S. at 375–76; *Taylor*, 644 S.W.3d at 653. Federal law alone defines the immunities available against Counts I, II, and VII, and it affords none to private lawyers who conspire with an adjudicator. *Tower*, 467 U.S. at 921–23; *Dennis*, 449 U.S. at 28–29. Second, even as to the Texas-law counts, attorney immunity is an affirmative defense the movants must establish on the face of the FAC, *Kelly*, 868 F.3d at 375–

76—and they cannot identify their client, produce an executed engagement, or rebut the District's admission that no Board ever authorized their retention. (FAC ¶¶ 148, 150, 173–79.) Third, the quasi-judicial privilege is a defamation-specific privilege that reaches neither the federal claims nor conduct. *James*, 637 S.W.2d at 917–18; *BancPass*, 863 F.3d at 402–05. And a motion that misdescribes the record, its own exhibits, and its own cases cannot support dismissal, let alone dismissal with prejudice. *See* Section IV, *supra*; *Doe*, slip op. at 3–4.

**WHEREFORE**, Plaintiff respectfully requests that the Court deny the GDHM Defendants' Rule 12(b)(6) Motion to Dismiss (ECF No. 10) in its entirety; in the alternative, deny dismissal with prejudice and grant Plaintiff leave to amend pursuant to Fed. R. Civ. P. 15(a)(2); grant oral argument pursuant to LR 7.5(A); and grant such other and further relief to which Plaintiff may be justly entitled.

Dated: September 14, 2026

Respectfully submitted,
/s/ Kawa Foad
**KAWA FOAD, ESQ.**
Florida Bar No. 1005257
Kawa Foad Law Group, P.A. d/b/a KF Law
1000 Brickell Avenue, Suite 715
Miami, Florida 33131
Telephone: (561) 291-0518
kfoad@kf-law.com
*Plaintiff, pro se*

## CERTIFICATE OF SERVICE

I hereby certify that on September 14, 2026, a true and correct copy of the foregoing Response, together with the accompanying proposed order, was served on all counsel of record via the Court's CM/ECF system, and by electronic mail on all parties who have consented in writing to service by electronic means.

/s/ Kawa Foad, Esq.