UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| KAWA FOAD, Esq., | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | Civil Action 4:26-cv-005348 |
| | § | |
| THE HARRIS-GALVESTON SUBSIDENCE DISTRICT, et al, | § | |
| | § | |
| | § | |
| Defendants. | § | |

**GRAVES, DOUGHERTY, HEARON & MOODY, P.C. DEFENDANTS' REPLY IN SUPPORT OF RULE 12(b)(6) MOTION TO DISMISS FIRST AMENDED COMPLAINT FOR FAILURE TO STATE A CLAIM**

## Table of Contents


Table of Contents ....................2

Table of Citations ....................3

I. Introduction and summary of the GDHM Defendants' reply ....................6

II. Argument in reply ....................6

A. Foad's Amended Complaint repeatedly alleges that Martin and Salehi were acting as attorneys when making the statements on which his claims are based ....................6

B. Foad's federal claims are barred by attorney immunity ....................9

C. Foad's conspiracy allegation does not defeat attorney immunity ....................10

D. Quasi-judicial immunity also defeats Foad's claims ....................11

E. Foad's claims fall directly within the scope of attorney immunity ....................12

F. Foad's conduct – as described in his Amended Complaint – was the unauthorized practice of law in Texas ....................12

G. Foad did not appeal Hearing Examiner Truscott's order ....................14

H. Foad identifies no duty that GDHM owed him ....................15

I. Dismissal with prejudice is warranted ....................16

III. Conclusion and relief sought ....................17

Certificate of Service ....................17

## Table of Citations

**Cases** **Page**

*Adickes v. S.H. Kress & Co.*,
398 U.S. 144 (1970) ........ 11

*Albaugh v. Wind Access Engineering, Inc.*,
No. 1:23-cv-00146, 2025 WL 1699195 (S.D. Tex. May 16, 2025) ........ 16

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009) ........ 10

*Briscoe v. LaHue*,
460 U.S. 325 (1983) ........ 9, 10

*Butz v. Economou*,
438 U.S. 478 (1978) (emphasis added) ........ 9

*Cantey Hanger, LLP v. Byrd*,
467 S.W.3d 477 (Tex. 2015) ........ 15

*Cinel v.* Connick,
15 F.3d 1338 (5th Cir. 1994) ........ 10

*City of Newport v. Fact Concerts, Inc.*,
453 U.S. 247 (1981) ........ 10

*Dennis v. Sparks*,
449 U.S. 24 (1980) ........ 10

*Edionwe v. Bailey*,
860 F.3d 287 (5th Cir. 2017) ........ 16

*Firestone Steel Products Co. v. Barajas*,
927 S.W.2d 608 (Tex. 1996) ........ 10

*Gentilello v. Rege*,
627 F.3d 540 (5th Cir. 2010) ........ 16

*Gulf, C. & S.F. Ry. Co. v. Johnson*,
9 S.W. 602 (Tex. 1888) ........ 14

*Hendricks v. Barker*,
523 S.W.3d 152 (Tex. App. – Houston [14th Dist.] 2016, no pet.) ........ 8, 12

*Imbler v. Pachtman*,
424 U.S. 409 (1976) (White, J., concurring in the judgment) ....9

*Ironshore Europe DAC v. Schiff Hardin, LLP*,
912 F.3d 759 (5th Cir. 2019) ....7

*James v. Brown*,
637 S.W.2d 914 (Tex. 1982) ....11

*Jennings v. Naman Howell Smith & Lee, PLLC*,
No. 25-11284, 2026 WL 2018673 (5th Cir. July 13, 2026) ....8, 16

*King v. Skinner*,
98 Eng. Rep. 529 (K.B. 1772) ....9

*Landry's, Inc. v. Animal Legal Def.* Fund,
631 S.W.3d 40 (Tex. 2021) ....12

*Laub v. Pesikoff*,
979 S.W.2d 686 (Tex. App. – Houston [1st Dist.] 1998, pet. denied) ....11

*Lugar v. Edmondson Oil Co.*,
457 U.S. 922 (1982) ....11

*McCaffety v. Barnstone*,
No. H-23-2639, 2024 WL 709679 (S.D. Tex. Feb. 21, 2024) ....16

*Miller v. Dunn*,
No. 24-10500, 2025 WL 1605023 (5th Cir. April 8, 2025) (per curiam) ....8

*Patsy v. Bd. of Regents*,
457 U.S. 496 (1982) ....15

*Plotkin v. IP Axess Inc.*,
407 F.3d 690 (5th Cir. 2005) ....13

*Troice v. Greenberg Traurig, LLP*,
921 F.3d 501 (5th Cir. 2019) ....7, 16

*Troice v. Proskauer Rose, LLP*,
816 F.3d 341 (5th Cir. 2016) ....16

*United States ex rel. Doe v. Planned Parenthood Federation of America, Inc.*,
No. 23-11184, 2026 WL 2333162 (5th Cir. Aug. 19, 2026) (en banc) ....16

**Statutes and rules**

Tex. Att'n Gen. Op. No. H-974 (1977)....................14

Tex. Gov't Code § 81.101(a)....................13, 14

Tex. Spec. Dist. Loc. Laws Code § 8801.058(a)....................8

Tex. Spec. Dist. Loc. Laws Code § 8801.109(c)....................13

Tex. Spec. Dist. Loc. Laws Code § 8801.202(a)....................14

TO THE HONORABLE LEE H. ROSENTHAL:

Defendants Graves Dougherty, Hearon & Moody, P.C. ("GDHM"), Natasha J. Martin, and Bobby M. Salehi (collectively, "the GDHM Defendants") file this reply in support of their Motion to Dismiss, ECF 10, and would respectfully show:

**I. Introduction and summary of the GDHM Defendants' reply.**

Plaintiff Kawa Foad's response to the GDHM Defendants' motion to dismiss confirms that his claims against them are based on four things: (1) Natasha Martin's two emails sent while representing the Harris-Galveston Subsidence District's General Manager in the Woodloch groundwater permit contested case and her drafting proposed findings at the request of Hearing Examiner Truscott; (2) Bobby Saheli's statements to the District's board during a public meeting; (3) GDHM's failure to take some undefined action in response to Foad's unsolicited email to its lawyers; and (4) a claim that Martin conspired with Hearing Examiner Truscott to produce an order precluding him from representing Woodloch in the contested case. ECF 14 at 1-20.

Each of Foad's arguments are wrong and would require this Court to ignore Foad's own allegations and controlling federal and state law. Foad has already amended his complaint once, and his response proffers no hope that he can allege plausible claims against the GDHM Defendants. His claims should be dismissed with prejudice.

**II. Argument in reply.**

**A. Foad's Amended Complaint repeatedly alleges that Martin and Salehi were acting as attorneys when making the statements on which his claims are based.**

Foad's response tries to argue that Martin and Salehi cannot be immune because their actions were not taken in their capacity as attorneys. ECF 14 at 6-10. But that position contradicts his repeated allegations that Martin and Salehi ***were*** representing clients when they made the statements he is complaining about. *See* ECF 14 at 6-10. Those allegations could not be clearer:

- "On Friday October 17, 2025, Martin, ***representing HGSD's General Manager in the Contested Hearing***, via electronic mail sent to Truscott–the District-appointed hearing examiner presiding over the Contested Hearing–accused Plaintiff of engaging in unlawful practice of law."

- "Paid outside counsel, acting by and through their respective law firm … ***represent the General Manager in contested hearings (such as the one at issue here), like Defendant Martin with Graves Dougherty Hearon & Moody, P.C.***"

- "Defendant Martin is a GDHM attorney ***retained to represent the General Manager in the Contested Hearing*** … ."

- "On April 9, 2025 … the Board acted on the Penalty in Plaintiff's absence, ***with Martin present in the Board-counsel role***."

- "Defendant Bobby Saleh[i] … ***appeared for the General Manager at the Board's July 8, 2026 meeting*** and made the public statements described below."

FAC ¶¶ 4.1, 16.v, 25, 45, 27 (emphasis added).[1] Foad alleges Martin and Salehi were acting as GDHM attorneys at the time. *Id*. ¶¶ 26, 264-67. These are ***Foad's*** allegations, not statements by Martin or Salehi. They must be taken as true under Rule 12(b)(6), even if they defeat his claim. *E.g.*, *Ironshore Europe DAC v. Shiff Hardin,* LLP, 912 F.3d 759, 763-64 (5th Cir. 2019) (dismissing complaint alleging facts demonstrating attorney immunity).

Nor is there any question that Martin and Salehi's actions, as alleged by Foad himself, fall within the scope of attorney immunity, which applies to all conduct "within the scope of the attorney's representation of a client." *Troice v. Greenberg Traurig, LLP*, 921 F.3d 501, 503 (5th Cir. 2019). Foad expressly alleges that Martin was "representing HGSD's General Manager in the Contested Hearing" and that Salehi "appeared for the General Manager" at a District board meeting when they made the statements on which his claims are based. ECF 6 ¶¶ 4.1, 2. It makes no difference that Foad alleges they had ulterior motives; even if they had made knowingly false

[1] *See also* ECF 6-1 at 29, where Foad's "Omnibus Motion" refers to "Outside counsel retained by HGSD *specifically* representing Turco in this Contested Hearing, Natasha Martin, Esq. ("***Martin***" or ***Turco's Counsel***") (emphasis in original).

statements or engaged in criminal conduct (they did not), attorney immunity applies so clearly that to argue otherwise is frivolous. *E.g.*, *Jennings v. Naman Howell Smith & Lee, PLLC*, No. 25-11284, 2026 WL 2018673, at *1 (5th Cir. July 13, 2026) (claim that attorneys were not immune because they alleged made "knowingly false certifications to the court" was frivolous); *Miller v. Dunn*, No. 24-10500, 2025 WL 1605023, at *1 (5th Cir. April 8, 2025) (per curiam) (claim that attorneys were not immune because they "engaged in criminal conduct to have orders signed" was frivolous).

The alleged lack of a District signature on GDHM's retention agreement is irrelevant. No written agreement, let alone a fully countersigned written agreement, is required to form an attorney-client relationship in Texas. *See, e.g.*, *Hendricks v. Barker*, 523 S.W.3d 152, 158 (Tex. App. – Houston [14th Dist.] 2016, no pet.) (even without "a formal contract or engagement letter … an attorney-client relationship" can arise "from the conduct of the parties"). The facts Foad alleges clearly show an attorney-client relationship. *E.g.*, ECF 6 ¶¶ 4.1, 16.v, 25-27, 45, 264-67, ECF 6-1 at 17, 29.

The fact that one District member did not recall GDHM's retention means nothing; the General Manager does not need board permission to retain counsel,[2] and that member did not deny GDHM had been retained; he just did not recognize Salehi, a new face appearing for an unavailable Martin. *See* ECF 6-1 at 120. Chairman Petrov promptly explained why outside counsel is retained for contested cases. *Id*.

Foad posits no plausible theory (or additional facts he could allege) to explain what Martin and Salehi were doing in a contested case and at a District board meeting if they were ***not*** attorneys

[2] Tex. Sp. Dist. Loc. Laws Code § 8801.058(a) ("The general manager may employ attorneys … considered necessary.").

representing their clients. ECF 14 at 6-9. Foad has sued two GDHM lawyers for simply doing their jobs. Such claims are barred by absolute attorney immunity and should be dismissed.

**B. Foad's federal claims are barred by attorney immunity.**

Foad misconstrues the GDHM Defendants' assertion of immunity as based solely in state law, and argues that such immunity applies to state, not federal, claims. ECF 14 at 9-11. He is wrong on both counts.

The Motion to Dismiss clearly states that attorney immunity applies to federal, as well as state, claims. ECF 10 at 14 ("Attorney immunity defeats both federal and state law claims. *E.g.*, *Briscoe v. LaHue*, 460 U.S. 325, 334-35 (1983)."). Federal courts recognize the same common law immunity that protects parties engaged in judicial proceedings. As the Supreme Court explained when it held that trial witnesses have absolute immunity from Section 1983 claims,

> [t]he reasons for this rule are substantial. It is precisely the function of a judicial proceeding to determine where the truth lies. The ability of courts, under carefully developed procedures, to separate truth from falsity, and the importance of accurately resolving factual disputes in criminal (and civil) cases are such that those involved in judicial proceedings should be "given every encouragement to make a full disclosure of all pertinent information within their knowledge."

*Briscoe v. LaHue*, 460 U.S. 325, 335 (1983) (quoting *Imbler v. Pachtman*, 424 U.S. 409, 439 (1976) (White, J., concurring in the judgment)). The common law recognized that

> controversies sufficiently intense to erupt in litigation are not easily capped by a judicial decree. The loser in one forum will frequently seek another … . Absolute immunity is thus necessary to assure that judges, *advocates*, and witnesses can perform their respective functions without harassment or intimidation.

*Butz v. Economou*, 438 U.S. 478, 512 (1978) (emphasis added) (citing *King v. Skinner*, 98 Eng. Rep. 529 (K.B. 1772) ("Neither party, witness, counsel, jury, or Judge can be put to answer, civilly or criminally, for words spoken in office.")). The Supreme Court has explained that when Congress created tort liability under Section 1983, it was "familiar with common-law principles,

including defenses previously recognized in ordinary tort litigation," and intended for them to apply "absent specific provisions to the contrary." *Briscoe*, 460 U.S. at 330 (quoting *City of Newport v. Fact Concerts, Inc.*, 453 U.S. 247, 258 (1981)). Nothing in Section 1983 abrogates this immunity, and Foad cites no case so holding. ECF 14 at 9-11.

**C. Foad's conspiracy allegation does not defeat attorney immunity.**

To allege a conspiracy, a plaintiff must allege facts supporting a plausible inference of an agreement to commit an illegal act. *E.g.*, *Cinel v.* Connick, 15 F.3d 1338, 1342 (5th Cir. 1994); *Firestone Steel Products Co. v. Barajas*, 927 S.W.2d 608, 614 (Tex. 1996). Here, Foad simply recites, as he puts it, a "dated sequence" of events that occurred during the contested case hearing: after Foad told Hearing Examiner Truscott that he was not licensed in Texas, Martin responded (copying Foad), by arguing that he could not practice law without a Texas license, and the Hearing Examiner issued a ruling. Later, at the Hearing Examiner's request, Martin prepared draft findings. ECF 14 at 15-16. *See* ECF 10-1, ECF 10-2.[3] That "dated sequence" happens in *every* contested judicial proceeding: an issue is raised; counsel make arguments; the adjudicator rules. Foad alleges no facts to plausibly support a conclusion that Martin and the Hearing Examiner conspired against him. *Ashcroft v.* Iqbal, 556 U.S. 662, 680 (2009) (the "fact of parallel conduct, accepted as true, [does] not plausibly suggest an unlawful agreement"). If simply reciting the facts that led to an adverse court ruling sufficed, every disappointed litigant could state a conspiracy claim.

Foad is also wrong that alleging a conspiracy between a private attorney and a judge defeats attorney immunity. ECF 16 at 11. The case he cites, *Dennis v. Sparks*, 449 U.S. 24 (1980), did not involve an attorney, but rather a non-party surety who had allegedly bribed a state court judge

---

[3] Foad's response suggests these communications were *ex parte*. They were not. *See* ECF 10-1. The Hearing October 14 email Foad references preceded Martin's October 17 email, and it did not address Foad's right to represent Woodloch. *See* ECF 6 ¶ 6.

and then sought "an immunity derived from that of the judge." *Id*. at 29. The GDHM Defendants are not asserting derivative judicial immunity, but rather their independent immunity as attorneys representing clients. *See* Section II.A, above; ECF 10 at 14-16. *Dennis* has no application here, nor the other two cases Foad cites, because they did not involve lawyers invoking absolute attorney immunity after being sued for acts taken while representing clients.[4]

**D. Quasi-judicial immunity also defeats Foad's claims.**

Foad argues that the absolute immunity for communications made during judicial and quasi-judicial proceedings only applies to libel claims, suggesting that other causes of action can be asserted based on such communications. ECF 14 at 16-18. Foad does not contest this immunity's application to his defamation claim (Count V), and he is wrong on its scope. When the Supreme Court held that a doctor's statements to a probate judge were absolutely privileged from libel claims in *James v. Brown*, 637 S.W.2d 914 (Tex. 1982), the Court did not limit that immunity to defamation; the "other remedies at law" the Court said the plaintiff might pursue were for "negligent misdiagnosis-medical malpractice," claims not based on those diagnoses being "communicated to a court in the due course of judicial proceedings." *Id*. at 917-18. Foad's argument that the privilege applies only to defamation claims was expressly rejected in *Laub v. Pesikoff*, 979 S.W.2d 686 (Tex. App. – Houston [1st Dist.] 1998, pet. denied), which held that "*James* does not limit the privilege in the manner suggested," but instead applies "whenever the essence of a claim is damages that flow from communications made in the course of a judicial proceeding," regardless of how the claim is labelled. *Id*. at 691. Any uncertainty about the

[4] *See Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 151-52 (1970) (restaurant employee who allegedly conspired with police officer to deny civil rights activist service); *Lugar v. Edmondson Oil Co.*, 457 U.S. 922, 941 (1982) (creditor who used allegedly unconstitutional state law to deprive debtor of property without due process).

immunity's scope expressed by the Fifth Circuit in a footnote twenty-seven years ago, *see* ECF 14 at 17, has been resolved by the Texas Supreme Court's explanation that "the privilege prohibits ***any*** tort litigation based on the content of the communication at issue." *Landry's, Inc. v. Animal Legal Def.* Fund, 631 S.W.3d 40, 46 (Tex. 2021) (emphasis added). Foad's claims based on Martin's communications during the contested case hearing are barred by quasi-judicial immunity.

**E. Foad's claims fall directly within the scope of attorney immunity.**

Foad's response tries, for a second time, to argue that Martin's challenged actions fall outside the absolute attorney privilege, ECF 14 at 18-19, but as noted above, Foad himself alleges Martin was "representing HGSD's General Manager in the Contested Hearing" and appeared before the District "in the Board-counsel role." ECF 6 ¶¶ 4.1, 45. Foad does not even try to make this argument as to Salehi, and he cannot because Foad alleges that Salehi "appeared for the General Manager at the Board's July 8, 2026 meeting. *Id*. ¶ 27.

Foad's response again tries to argue with his Amended Complaint's allegations, claiming it is "disputed" whether the GDHM Defendants were actually representing clients, ECF 14 at 19, but he is wrong that a written, countersigned retention agreement is a prerequisite to an attorney-client relationship, *Hendricks*, 523 S.W.3d at 158, and he alleges no facts supporting a plausible conclusion that Martin and Salehi were doing anything ***other than*** representing clients. ECF 14 at 18-19. Instead, as quoted above, his pleading repeatedly admits they ***were*** representing clients.

**F. Foad's conduct – as described in his Amended Complaint – was the unauthorized practice of law in Texas.**

Foad argues, illogically, that "fact-finding" is needed to determine whether his own allegations, taken as true, show that he was engaged in the unauthorized practice of law in Texas as defined by Texas' UPL statute. ECF 14 at 19-17. The GDHM Defendants' motion to dismiss simply asks this Court to take Foad at his word and determine if the conduct he admits engaging

in – advising and representing a Texas client in a Texas proceeding – falls within Texas' definition of the practice of law. It clearly does. *See* Tex. Gov't Code § 81.101(a); ECF 10 at 18-20.

Foad argues that this Court must accept as true his allegation that he "permissibly represented his Clients," ECF 14 at 19, but that is a legal conclusion, not a fact. *Plotkin v. IP Axess Inc.*, 407 F.3d 690, 696 (5th Cir. 2005) ("We do not accept as true conclusory allegations, unwarranted factual inferences, or legal conclusions.").

Next, Foad claims that the GDHM Defendants rely on the Hearing Examiner's order as proof that he engaged in UPL. ECF 14 at 20. They do no such thing. Their motion applies the facts Foad pled in his Amended Complaint to Texas law to show that Foad has admitted engaging in UPL. ECF 10 at 18-20.

Foad's interpretation of the District's rules is wrong. Rule 7.5(c) does not define "representative," and it would be nonsensical for the rules to require a party to appear *pro se* or by attorney at District hearings while allowing anybody to engage in the detailed contested case litigation practices defined by Rule 7.5. Foad himself admits that "the Enabling Act provides that interested parties may appear 'in person or by counsel, or both,' including before a hearings examiner," ECF 14 at 20 (quoting Tex. Spec. Dist. Loc. Law Code § 8801.109(c)), which excludes non-lawyer representation in those proceedings. The statute simply does not permit non-lawyers (and Foad is not a lawyer in Texas) to represent parties in contested cases or District hearings.

Foad wrongly claims the Texas UPL statute is limited to "the management of [an] action or proceeding on behalf of a client before a judge in court," ECF at 20, but he omits the part that defines the practice of law as "the preparation of a pleading or other document incident to an action or special proceeding," not just a court proceeding, "as well as a service rendered out of court, including the giving of advice or the rendering of any service requiring the use of legal skill or

knowledge … the legal effect of which under the facts and conclusions involved must be carefully determined." Tex. Gov't Code § 81.101(a). The Attorney General opinion Foad cites is not binding on this Court, and it provides Foad no help, anyway, because it recognizes that non-lawyer representation is permitted in administrative proceedings only "if not prohibited by any act or decision of the Legislature or the courts." Tex. Att'n Gen. Op. No. H-974 (1977). As Foad admits, Section 8801.109(c) restricts appearances at District hearings and in contested cases to parties themselves or counsel, not by unlicensed persons like Foad.

Finally, Foad argues that whether he engaged in UPL is irrelevant. ECF 14 at 20-21. But Foad claims Martin libeled him by accusing him of UPL, which puts the UPL question directly at issue. Moreover, if Foad ***was*** engaged in UPL, as the GDHM Defendants contend, that provides a complete defense to his state law claims because in Texas "no action will lie to recover a claim for damages, if to establish it the plaintiff requires aid from an illegal transaction, or is under the necessity of showing or in any manner depending upon an illegal act to which he is a party." *Gulf, C. & S.F. Ry. Co. v. Johnson*, 9 S.W. 602, 603 (Tex. 1888).

**G. Foad did not appeal Hearing Examiner Truscott's order.**

Hearing Examiner Truscott's order precluding Foad from representing a Texas party in a Texas contested case proceeding was incorporated into her report to the Board and was therefore subject to exceptions. *See* District Rule 7.6(b) ("Prior to Board action any party in a contested case may file written exceptions to the Hearings Examiner's report … ."). Woodloch, if it wanted Foad to represent it, could have filed an exception to the Hearing Examiner's report with the Board. Had the Board then affirmed the ruling, any "adversely affected" party, including presumably Foad, could have appealed to state district court. Tex. Spec. Dist. Loc. Laws Code § 8801.202(a) ("A person who is adversely affected by a rule, order, or other official action of the district … may

appeal the action in a district court … after any administrative appeal to the district is finally resolved.”).

Neither Foad nor Woodloch took a single step up this “staircase,” to use his term. ECF 14 at 18. Instead, Foad claims his “omnibus motion,” presented during the contested case proceeding (itself unauthorized by any applicable rule), somehow makes the GDHM Defendants’ use of the term “unappealed order” incorrect. ECF at 18. This is nonsense. State appellate remedies were available, but Foad filed this lawsuit instead - the Hearing Examiner’s order was “unappealed.”

Foad claims he did not need to exhaust state remedies, citing *Patsy v. Bd. of Regents*, 457 U.S. 496, 516 (1982), but the GDHM Defendants have not argued that his failure to appeal Hearing Examiner Truscott’s order is, standing alone, grounds for dismissal. The point is that Foad’s failure to use readily available procedures – affiliating with Texas counsel; seeking *pro hac* permission; excepting to the report; appealing the Board’s decision, if adverse – shows his unfamiliarity with Texas administrative law and a perplexing desire to make a federal case out of a simple, easily challenged, ruling in a small-dollar, obscure state administrative proceeding in a foreign state.

**H. Foad identifies no duty that GDHM owed him.**

Because Foad’s claims against Martin and Salehi fail, his *respondeat superior* claim against GDHM fails as well. *See* ECF 10 at 20. As for his direct liability claim, Foad’s response identifies no legal duty that GDHM owed him, under state or federal law, to take any action in response to the email he sent to other GDHM lawyers. ECF 14 at 18-19. Foad does not, and cannot, allege that he was GDHM’s client, so the firm owed him no legal duty. *E.g.*, *Cantey Hanger, LLP v. Byrd*, 467 S.W.3d 447, 481 (Tex. 2015). Foad cites no exception to the no-duty rule that would apply here, such as a justified reliance on an affirmative misrepresentation made

by the firm. ECF 14 at 18-19. Foad, therefore, fails to state either a *respondeat superior* or direct claim against GDHM.

**I. Dismissal with prejudice is warranted.**

Foad has already amended his complaint. His claims are based on events in which he participated. His request to replead claims only that another amendment would "add further detail," without specifying any additional, material facts that could support his effort to state a claim against the GDHM Defendants. ECF 14 at 23. Denying leave to amend is proper when, as here, the plaintiff contends his current pleading is sufficient and "fail[s] to apprise the district court of the facts he would plead in an amended complaint, if necessary, to cure any deficiencies." *Edionwe v. Bailey*, 860 F.3d 287, 294-95 (5th Cir. 2017) (quoting *Gentilello v. Rege*, 627 F.3d 540, 546 (5th Cir. 2010)). *E.g.*, *Albaugh v. Wind Access Engineering, Inc.*, No. 1:23-cv-00146, 2025 WL 1699195, at *16 (S.D. Tex. May 16, 2025) (denying leave to amend where plaintiff does not "identify any new facts he would plead that would address present deficiencies").

Lawsuits filed against opposing counsel by disappointed litigants, like this one, are routinely dismissed as frivolous and with prejudice. *E.g.*, *Troice v. Greenberg Traurig*, 921 F.3d at 506-07 (affirming dismissal with prejudice); *Troice v. Proskauer Rose*, 816 F.3d at 343, 350 (reversing and rendering judgment dismissing with prejudice);[5] *Jennings*, 2026 WL 2018673, at *1 (affirming dismissal with prejudice without granting leave to replead); *McCaffety*, 2024 WL 709679, at *2 (dismissing claims with prejudice). This Court should do the same.

[5] Foad wrongly suggests that the Fifth Circuit "lacks confidence" in the merits holding in *Troice v. Greenberg Traurig*, citing *United States ex rel. Doe v. Planned Parenthood Federation of America, Inc.*, No. 23-11184, 2026 WL 2333162 (5th Cir. Aug. 19, 2026) (en banc). ECF 14 at 18. In fact, in *Doe*, the Fifth Circuit only revisited that case's *procedural* holding that the denial of a motion to dismiss based on attorney immunity was a collateral order subject to interlocutory appellate review. Because it dismissed for lack of appellate jurisdiction, it said nothing about the scope of attorney immunity. *Id.* at *1-2.

## III. Conclusion and relief sought.

For these reasons, and those stated in the GDHM Defendants' motion to dismiss, the Court should dismiss all of Plaintiff's claims against them with prejudice and grant such other and further relief to which they may be entitled.

Respectfully submitted,

By: */s/ Peter D. Kennedy*
Peter D. Kennedy
Attorney-in-Charge
Texas Bar No. 11296650
SDTX Bar Number 17987
pkennedy@gdhm.com
Graves, Dougherty, Hearon & Moody, P.C.
401 Congress Avenue, Suite 2700
Austin, Texas 78701
(512) 480-5764
(512) 480-9908 (Fax)

**Attorneys for Defendants Graves, Dougherty, Hearon & Moody, P.C., Natasha J. Martin and Bobby M. Salehi**

## CERTIFICATE OF SERVICE

I hereby certify that on September 21, 2026, a true and correct copy of the foregoing document was served via the Court's CM/ECF electronic filing system on the following:

Kawa Foad
KF Law
1000 Brickell Ave., Suite 715
Miami, Florida 33131
***Plaintiff pro se***

*/s/ Peter D. Kennedy*
Peter D. Kennedy