UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| KAWA FOAD, ESQ., *Plaintiff*, | § | |
| v. | § | CIVIL ACTION NO. 4:26-cv-05348 |
| THE HARRIS-GALVESTON SUBSIDENCE DISTRICT, ET AL., *Defendants*. | § | |

**DEFENDANT HELEN STEWART TRUSCOTT'S MOTION TO DISMISS FOR LACK OF SUBJECT MATTER JURISDICTION AND FAILURE TO STATE A CLAIM UPON WHICH RELIEF CAN BE GRANTED**

Defendant Helen Stewart Truscott, Esq., the appointed hearing examiner presiding over administrative proceeding challenged in this suit by plaintiff Kawa Foad, Esq., moves this Court to dismiss Plaintiff's claims against her for lack of subject matter jurisdiction and failure to state a claim upon which relief can be granted pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6).

# TABLE OF CONTENTS

TABLE OF CITATIONS ........ iii

SUMMARY ........ 1

NATURE AND STAGE OF PROCEEDING ........ 1

STATEMENT OF ISSUES ........ 2

FACTUAL BACKGROUND ........ 3

A. Plaintiff Foad ........ 3

B. The Harris-Galveston Subsidence District ........ 3

C. District Hearing Examiners ........ 4

D. Hearing Examiner Truscott ........ 5

E. The October 20, 2025 Representation Order ........ 6

F. Plaintiff's Allegations Regarding Ms. Truscott Are Limited To Judicial Acts Performed In Her Capacity As A Hearing Examiner ........ 8

ARGUMENT ........ 9

I. 42 U.S.C. § 1983 Does Not Apply To Ms. Truscott's Acts As A Hearing Examiner........ 9

II. Ms. Truscott Is Immune From Plaintiff's Individual-Capacity Claims. ........ 12

III. In The Alternative, Plaintiff's Declaratory Judgment Claim Should Be Dismissed For Lack Of Subject Matter Jurisdiction Under *Rooker-Feldman*. ........ 16

IV. In The Alternative, 42 U.S.C. § 1983 Bars Injunctive Relief Of Ms. Truscott's Quasi-Judicial Acts. ........ 19

V. Plaintiff's Claims Against Ms. Truscott Should Be Dismissed With Prejudice. ........ 22

CONCLUSION ........ 23

# TABLE OF CITATIONS

**Cases**

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009) ....................2

*Bauer v. Tex.*,
341 F.3d 352 (5th Cir. 2003) ....................20

*Bell Atl. Corp. v. Twombly*,
550 U.S. 544 (2007)....................2, 15

*B.D.S. v. Southold Union Free Sch. Dist.*,
No. CV-08-1319(SJF)(WDW), 2009 WL 1875942 (E.D.N.Y. June 24, 2009) ....................14

*Bradley v. Fisher*,
80 U.S. (13 Wall.) 335 (1871) ....................13

*Brewster v. Dretke*,
587 F.3d 764 (5th Cir. 2009) ....................22

*Brown v. Harris Cty. Housing Auth.*,
No. H-15-2847, 2018 WL 3080880 (S.D. Tex. Jan. 11, 2018)....................14, 15

*Burdine v. Huffman*,
229 F. Supp. 2d 704 (S.D. Tex. 2002) ....................20

*Burford v. Sun Oil Co.*,
319 U.S. 315 (1943)....................18

*Butz v. Economou*,
438 U.S. 478 (1978)....................13

*Clark v. Tarrant Cty.*,
798 F.2d 736 (5th Cir. 1986) ....................3

*Cleavinger v. Saxner*,
474 U.S. 193 (1985)....................13

*Collins v. Florida Dep't of Revenue*,
No. H-25-1163, 2026 WL 124865 (S.D. Tex. Jan. 16, 2026)....................17

*Collins v. Morgan Stanley Dean Witter*,
224 F.3d 496 (5th Cir. 2000) ....................4, 6

*Colorado River Water Conservation Dist. v. United States*,
424 U.S. 800 (1976)....................18

*D.C. Ct. of Appeals v. Feldman*,
460 U.S. 462 (1983)....16, 17, 18, 19

*De Luna v. Hidalgo Cnty., Tex.*,
No. CV M-10-268, 2011 WL 13282104 (S.D. Tex. June 24, 2011) ....20, 22

*DeMerchant v. Springfield Sch. Dist. & Dan Jerman*,
No. 1:05-CV-316, 2007 WL 495240 (D. Vt. Feb. 9, 2007)....14

*Dennis v. Sparks*,
449 U.S. 24 (1980)....16, 18

*Estes v. Ramirez*,
No. 7:14-CV-69, 2014 WL 11698007 (S.D. Tex. June 13, 2014)....15, 17, 22

*Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*,
544 U.S. 280 (2005)....17, 18

*French v. Rowland*,
No. H-24-03095, 2024 WL 4871500 (S.D. Tex. Nov. 22, 2024)....3

*Garcia v. Copenhaver, Bell & Assocs., M.D.'s P.A.*,
104 F.3d 1256 (11th Cir. 1997) ....3

*Garrett v. Commonwealth Mortg. Corp. of Amer.*,
938 F.2d 591 (5th Cir. 1991) ....2

*Gyadu v. Workers' Comp. Comm'n*,
930 F. Supp. 738 (D. Conn. 1996)....14

*Herrera v. Kazen*,
No. SA-23-CV-01031-XR, 2023 WL 6126249 (W.D. Tex. Sept. 18, 2023) ....21

*Imbler v. Pachtman*,
424 U.S. 409 (1976)....13

*Inclusive Cmtys. Project, Inc. v. Lincoln Prop. Co.*,
920 F.3d 890 (5th Cir. 2019) ....2

*In re FEMA Trailer Formaldehyde Prods. Liab. Litig. (Miss. Plaintiffs)*,
668 F.3d 281 (5th Cir. 2012) ....3

*Jefferson v. Johnson*,
No. 3:25-CV-428-X-BK, 2025 WL 2646846 (N.D. Tex. Mar. 28, 2025)....18, 22

*Jett v. Dallas Indep. Sch. Dist.*,
491 U.S. 701 (1989)....10

*Kentucky v. Graham*,
473 U.S. 159 (1985) ....................................................................................................9

*Khan v. City of Dallas*,
No. 3:15-CV-3254-D-BK, 2017 WL 4221118 (N.D. Texas Sept. 5, 2017)......................17, 18

*Machetta v. Moren*,
726 Fed. App'x. 219 (5th Cir. 2018) .............................................................20, 21, 22

*MacPherson v. Town of Southampton*,
664 F.Supp.2d 203 (E.D.N.Y. 2009) .......................................................................22

*Marshall v. Abbott*,
No. 4:21-CV-384-SDJ-CAN, 2022 WL 660798 (E.D. Tex. Feb. 13, 2022),
report and recommendation adopted, No. 4:21-CV-384, 2022 WL 659180
(E.D. Tex. Mar. 4, 2022)..............................................................................20, 21

*McCormick v. Braverman*,
451 F.3d 382 (6th Cir. 2009) ...................................................................................19

*McMillian v. Monroe County*,
520 U.S. 781 (1997) ..............................................................................................10, 11

*Modelist v. Hernandez*,
No. H-11-387, 2011 WL 13185991 (S.D. Tex. June 22, 2011)................................................3

*Monell v. New York City Dep't of Soc. Servs.*,
436 U.S. 658 (1978)..............................................................................................9, 11

*Moore v. Whitman*,
742 F. App'x. 829, 832 (5th Cir. 2018) ......................................................................19

*Morris v. Am. Home Mortg. Servicing, Inc.*,
443 Fed. App'x. 22 (5th Cir. 2011) ..........................................................................19

*Mosley v. Bowie County*,
275 Fed. App'x. 327 (5th Cir. 2008) .........................................................................19

*O'Connor v. New York Housing Auth.*,
No. 08-CV-3623(CBA)(LB), 2010 WL 1741369 (E.D.N.Y. Mar. 24, 2010) .........................14

*ODonnell v. Harris Co., Texas*,
227 F. Supp.3d 706 (S.D. Tex 2016) ................................................................11, 12, 16

*ODonnell v. Harris Cnty., Texas*,
251 F. Supp.3d 1052 (S.D. Tex. 2017),
aff'd as modified, 882 F.3d 528 (5th Cir. 2018), and
aff'd as modified sub nom. *ODonnell v. Harris Cnty.*, 892 F.3d 147 (5th Cir. 2018) ......20, 21

*O'Neal v. Miss. Bd. of Nursing*,
113 F.3d 62 (5th Cir. 1997) ....................13, 14

*Pembaur v. City of Cincinnati*,
475 U.S. 469 (1986)....................10

*Perez v. ME Alpha I, LLC*,
No. H-25-3178, 2026 WL 1471901 (S.D. Tex. May 26, 2026)....................14

*Pierson v. Ray*,
386 U.S. 547 (1967)....................13, 15

*Price v. Porter*,
351 Fed. App'x. 925 (5th Cir. 2009) ....................18

*Railroad Comm'n of Tex. v. Pullman Co.*,
312 U.S. 496 (1941)....................18

*Ramming v. United States*,
281 F.3d 158 (5th Cir. 2001) ....................3

*Rooker v. Fidelity Trust Co.*,
263 U.S. 413 (1923)....................16, 17, 18, 19

*Sanchez v. Smith*,
8 F.3d 20 (5th Cir. 1993) ....................2, 3, 13, 22

*Scott v. Stansfield*,
L.R. 3 Exch. 220 (1868)....................13

*Smith v. Apffel*,
No. CIV.A. G-06-0446, 2007 WL 4300128 (S.D. Tex. Dec. 5, 2007)....................22

*Smith v. Collier*,
No. CV H-22-3686, 2022 WL 17650597 (S.D. Tex. Dec. 13, 2022)....................21

*Turner v. Houma Mun. Fire & Police Civil Serv. Bd.*,
229 F.3d 478 (5th Cir. 2000) ....................9, 12

*Union Planters Bank Nat'l Ass'n v. Salih*,
367 F.3d 457 (5th Cir. 2004) ....................17

*Vinson v. Benson*,
235 F.3d 1342 (5th Cir. 2000) ....................13

*Williams v. Capital Fund I, LLC*,
No. 4:23-CV-1694, 2023 WL 6797529 (S.D. Tex. Oct. 13, 2023) ....................20, 21

*Williams v. Liberty Mut. Ins. Co.*,
No. 04-30768, 2005 WL 776170 (5th Cir. Apr. 7, 2005) ....................17

*Younger v. Harris*,
401 U.S. 37 (1971) ....................18, 23

**Statutes**

42 U.S.C. § 1983 .................... *passim*

TEX. SP. DIST. LOC. LAWS CODE § 8801.001 ....................3

TEX. SP. DIST. LOC. LAWS CODE § 8801.003(a) ....................3

TEX. SP. DIST. LOC. LAWS CODE § 8801.053(a) ....................3, 12

TEX. SP. DIST. LOC. LAWS CODE § 8801.053(b) ....................3, 12

TEX. SP. DIST. LOC. LAWS CODE § 8801.057 ....................3

TEX. SP. DIST. LOC. LAWS CODE § 8801.109(d) ....................4, 5, 10, 11, 12, 15

TEX. SP. DIST. LOC. LAWS CODE § 8801.155 ....................4

TEX. SP. DIST. LOC. LAWS CODE § 8801.156 ....................4

TEX. SP. DIST. LOC. LAWS CODE § 8801.157 ....................4

TEX. SP. DIST. LOC. LAWS CODE § 8801.158 ....................4

TEX. SP. DIST. LOC. LAWS CODE § 8801.158(e) ....................4

TEX. SP. DIST. LOC. LAWS CODE § 8801.202 ....................7

TEX. SP. DIST. LOC. LAWS CODE § 8801.202(a) ....................5

TEX. GOV'T CODE § 81.101 ....................6

**Rules**

FED. R. CIV. P. 12(b)(1) .................... i, 3

FED. R. CIV. P. 12(b)(6) .................... i, 2

**Other Authorities**

Harris-Galveston Subsidence District Rules, amended Oct. 11, 2023 ....................4, 5, 7, 10, 11, 12, 15

## SUMMARY

This is a *pro se* lawsuit filed by a Florida lawyer, who is not licensed in Texas, complaining that he was disqualified from representing a Texas client in a groundwater well permit proceeding before the Harris-Galveston Subsidence District. Among fifteen named defendants and "John and Jane Does 1–10," plaintiff Kawa Foad, Esq. sued Helen Truscott, Esq., the appointed hearing examiner who issued the disqualification order. Foad asserts claims against Ms. Truscott "in her official and individual capacities." 1st Am. Compl., filed on July 24, 2026 [Dkt. 6] ("FAC") ¶ 22. Foad pleads four of his eight causes of action against Ms. Truscott for alleged civil rights under 42 U.S.C. Section 1983 (Counts I and II), conspiracy to violate Section 1983 (Count VII), and for declaratory and injunctive relief to declare Ms. Truscott's disqualification ruling "unlawful and void" and to enjoin its enforcement (Count III).

All four claims should be dismissed as a matter of law on two grounds:

1. Ms. Truscott cannot be sued in her "official capacity" under Section 1983 because hearing examiners are not final policymakers whose acts or omissions can be the basis for State or, in this instance, a special purpose district liability; and

2. Foad's individual-capacity claims against a judicial officer for acts taken in her judicial capacity are barred by quasi-judicial immunity.

In the event the Court does not dismiss Count III with respect to Ms. Truscott under the first ground, Count III should also be dismissed in its entirety on two additional, alternative grounds:

3. This Court lacks subject-matter jurisdiction to reverse Ms. Truscott's disqualification order under the *Rooker-Feldman* doctrine; and

4. Even if Section 1983 applied to Ms. Truscott, Foad is not entitled to enjoin acts taken in her judicial capacity under Section 1983.

## NATURE AND STAGE OF PROCEEDING

Foad filed this lawsuit on July 7, 2026. *See* Dkt. 1. Ms. Truscott was served by agreement under Rule 4(d) on July 24, 2026. *See* Dkt. 12. This Motion is Ms. Truscott's first appearance.

Ms. Truscott seeks to have all claims against her dismissed for lack of subject matter jurisdiction and failure to state a claim upon which relief can be granted within the time set forth in Rule 12(a).

## STATEMENT OF ISSUES

1. Whether a hearing officer issuing a recommendation to the Harris-Galveston Subsidence District Board of Directors can be sued in her official capacity under 42 U.S.C. § 1983?

2. Whether the doctrine of quasi-judicial immunity bars Plaintiff's claims against Ms. Truscott in her individual capacity?

3. Whether Plaintiff's declaratory relief claim against Ms. Truscott should be dismissed for lack of subject matter jurisdiction under the *Rooker-Feldman* doctrine?

4. Whether Section 1983 bars Plaintiff's claim to enjoin Ms. Truscott's judicial act?

To "state a claim upon which relief can be granted" under Rule 12(b)(6), a complaint must contain "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim has "facial plausibility" when the plaintiff "pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 556). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* A court reviewing a motion to dismiss under Rule 12(b)(6) may consider "(1) the facts set forth in the complaint, (2) documents attached to the complaint, and (3) matters of which judicial notice may be taken under Federal Rule of Evidence 201." *Inclusive Cmtys. Project, Inc. v. Lincoln Prop. Co.*, 920 F.3d 890, 900 (5th Cir. 2019). The Rule 12(b)(6) analysis can include affirmative defenses if they are obvious from the complaint. *See Sanchez v. Smith*, 8 F.3d 20 (5th Cir. 1993) (citing *Garrett v. Commonwealth Mortg. Corp. of Amer.*, 938 F.2d 591, 594 (5th Cir. 1991)). Assertions of immunity are properly analyzed under Rule 12(b)(6). *See, e,g.*, *Sanchez*, 8 F.3d 20.

A case is properly dismissed for lack of subject-matter jurisdiction "when the court lacks the statutory or constitutional power to adjudicate the claim." *In re FEMA Trailer Formaldehyde Prods. Liab. Litig. (Miss. Plaintiffs)*, 668 F.3d 281, 286 (5th Cir. 2012) (quotation omitted). The plaintiff bears the burden of demonstrating that subject-matter jurisdiction exists. *See Ramming v. United States*, 281 F.3d 158, 161 (5th Cir. 2001); *Modelist v. Hernandez*, No. H-11-387, 2011 WL 13185991, at *2 (S.D. Tex. June 22, 2011). When examining a factual challenge to subject-matter jurisdiction under Rule 12(b)(1), the district court has substantial authority "to weigh the evidence and satisfy itself as to the existence of its power to hear the case." *French v. Rowland*, No. H-24-03095, 2024 WL 4871500, at *2 (S.D. Tex. Nov. 22, 2024) (quoting *Garcia v. Copenhaver, Bell & Assocs., M.D.'s P.A.*, 104 F.3d 1256, 1261 (11th Cir. 1997)). Courts may dismiss for lack of subject matter jurisdiction based on the complaint alone. *Clark v. Tarrant Cty.*, 798 F.2d 736, 741 (5th Cir. 1986) (citation omitted).

## FACTUAL BACKGROUND

### A. Plaintiff Foad

Foad is a Florida resident with a Florida law license. FAC ¶ 13. He is not licensed to practice law in Texas. *Id.* ¶ 71. Foad alleges that he was retained to represent Bradley Davis, a Texas resident, and his Texas company Woodloch MPH LLC ("Woodloch"), "in a dispute with the Harris-Galveston Subsidence District over the renewal of Woodloch's aggregate groundwater well permit." *Id.* ¶ 2.

### B. The Harris-Galveston Subsidence District

The Harris-Galveston Subsidence District is a special purpose district created by the Texas legislature. TEX. SP. DIST. LOC. LAWS CODE § 8801.001, *et seq.* The District regulates groundwater withdrawal in Harris and Galveston counties. *Id.* § 8801.003(a). The District is governed by a board of directors endowed with all powers "necessary or convenient to carry out

its responsibilities" (the "Board"). *Id.* § 8801.053(a), (b). The District employs a general manager to serve as its chief administrative officer. *Id.* § 8801.057.

A permit from the District is required to drill, alter, or operate a groundwater well within the District's boundaries. *Id.* § 8801.155. Permit applications are submitted to the Board. *Id.* § 8801.156–58. The Board may require that prior violations be resolved before issuing or renewing a permit, and it may require that an applicant pay a civil penalty or take other steps to resolve a violation. *Id.* § 8801.158(e).

### C. District Hearing Examiners

The Board is authorized to use hearing examiners. *Id.* § 8801.109(d). The District promulgates procedures regarding those hearing examiners. *Id.*; Exh. 1.[1] Hearing examiners are appointed by the District general manager. Exh. 1 at 2 (Rule 1.1(p)). Foad alleges that hearing examiner fees are subject to the general manager's review. FAC ¶ 167. Hearing examiners preside over original permit applications, applications for permit renewals or amendments, permit revocations or suspensions, or other "permit matters." Exh. 1 at 21 (Rule 7.1(a)).

If a hearing examiner determines that a permit matter in controversy may require extensive discovery proceedings, the District Rules direct her to declare the case to be contested and to convene a prehearing conference. Exh. 1 at 25 (Rule 7.4(c)). One of the hearing examiner's duties in a contested case is to determine the parties to a hearing. Exh. 1 at 27 (Rule 7.5(c)). The District Rules provide that the rights of parties to a contested case are "[s]ubject to the direction and orders of the Hearings Examiner." Exh. 1 at 27 (Rule 7.5(d)). In a contested case, hearing examiners

---

[1] Exhibit 1 is a true and correct copy of the Harris-Galveston Subsidence District Rules, amended Oct. 11, 2023. The Court may consider the Rules under Federal Rule of Evidence 201 and because they form the basis of Plaintiff's claims. *See Collins v. Morgan Stanley Dean Witter*, 224 F.3d 496, 498–99 (5th Cir. 2000).

also schedule prehearing conferences; direct discovery terms and conditions; render discovery sanctions; compel testimony and the production of records; administer the oath to witnesses; accept and exclude exhibits; decide whether to hear oral argument or accept written briefs; make a recommendation to the Board about assessment of reporting and transcription costs; and have the discretion to take judicial notice of facts, accept comments and statements from non-parties, and receive evidence in summary form; and close the record. Exh. 1 at 26–30 (Rules 7.5(a)(2), 7.5(b), 7.5(e), 7.5(i), 7.5(j), 7.5(l), 7.5(p), 7.5 (q), 7.5(r), 7.5(s), 7.5(u), 7.6(a)).

The Texas legislature requires the Board itself to "make the decision on the subject" set for hearing. *Id.* § 8801.109(d). Acts by a hearing examiner in prehearing proceedings that may be dispositive of a permit matter require Board approval. *See, e.g.*, Exh. 1 at 28 (Rule 7.5(j)(6) (recommending dismissal due to discovery misconduct)). At the close of evidence in a contested permit case, the hearing examiner prepares a report to the Board with "a summary of the evidence, together with the Hearings Examiner's findings and conclusions and recommendations for action." Exh. 1 at 30 (Rule 7.6(a)). Even in uncontested permit cases, the hearing examiner's duty is to "summarize the evidence, make findings of fact and conclusions of law, and make appropriate recommendations to the Board." Exh. 1 at 26 (Rule 7.4(c)). Appeals from adverse orders or other official action may be made to state district court, but "only after any administrative appeal to the district is finally resolved." *Id.* § 8801.202(a).

### D. Hearing Examiner Truscott

In August 2024, the District's general manager notified Woodloch that it had pumped more groundwater in 2023-2024 than its permit allowed and offered to resolve the permit violation with a payment of $106,901 to cover Woodloch's excess pumping. FAC ¶¶ 32–34. On April 9, 2025, the Board voted to proceed with an enforcement action against Woodloch. FAC ¶ 46. On October 7, 2025, after Foad peppered the District with requests for information under, *inter alia*, the Texas

Public Information Act, the Board designated the Woodloch matter as a contested case. FAC ¶¶ 48–51, 64. Shortly after the hearing, Ms. Truscott was appointed to preside over the Woodloch case as the hearing examiner. *See* FAC ¶¶ 65, 166. She likewise declared the matter contested. FAC ¶ 91. Between October 14, 2025 and May 22, 2026, Ms. Truscott attempted to schedule a prehearing conference, made a determination about party representation, attempted to schedule an evidentiary hearing, accepted written submissions from the parties' authorized representatives, presented findings and recommendations to the Board, and closed the contested case. FAC ¶¶ 67, 73, 93–94, 111–13.

**E. The October 20, 2025 Representation Order**

On October 17, 2025, Foad emailed Ms. Truscott to disclose that he is not licensed in Texas and to assert that he was entitled to appear for Woodloch in a contested case as its "representative." Exh. 2 at 2–3.[2] Counsel for the District responded, copying Foad, and argued to Ms. Truscott that Foad could not appear in a contested case without either a Texas law license, Texas co-counsel, or *pro hac* admission. *Id.* at 1–2. On October 20, 2025, Ms. Truscott issued an order holding that Foad could not appear for Woodloch in the contested case (referred to by Foad as the "Disqualification Ruling"). Exh. 3.[3] The Disqualification Ruling held that "the District's hearing procedures are subject to Texas unauthorized practice of law restrictions under the Texas Government Code section 81.101," and that Texas law does not "authorize nonlawyer

---

[2] Exhibit 2 is a copy of Foad's email and a response by counsel for the District originally submitted as Exhibit 1 to defendant Graves, Dougherty, Hearon & Moody, P.C.'s Rule 12(b)(6) Motion to Dismiss First Amended Complaint for Failure to State a Claim, filed August 24, 2026 [Dkt. 10]. Plaintiff did not object to the Court's consideration of the email "for all purposes." Pl.'s Response in Opp. to the GDHM Defs.' Rule 12(b)(6) Motion to Dismiss, filed Sept. 14, 2026 [Dkt. 14], at 2. The Court can also consider the email because it forms the basis of Foad's claim. *See Collins*, 224 F.3d at 498–99.

[3] Exhibit 3 is a true and correct copy of the October 20, 2025 Order, which was also attached and incorporated into the First Amended Complaint. *See* Dkt. 6-1 at 64.

representation in a contested hearing" before the District. *Id*.

Foad and Woodloch sought review of the Disqualification Ruling both before the District and elsewhere. On April 7, 2026, Foad "argued that the Hearing Examiner had erred in requiring Texas licensure." FAC ¶ 90. According to the First Amended Complaint, Ms. Truscott "reiterated" her previous ruling, and the ruling "stood" after his argument. FAC ¶¶ 90, 98. On May 22, 2026, Ms. Truscott formalized a permit recommendation, which Foad construes as a further enforcement of the Disqualification Ruling. FAC ¶ 113. On July 8, 2026, Foad "addressed the Board" to protest the Disqualification Ruling again. FAC ¶ 149. According to the First Amended Complaint, "[t]he Board did not vacate or modify the Disqualification Ruling." FAC ¶ 165. The record attached to Foad's pleading specifically shows that the Board conditioned further proceedings related to Woodloch on, *inter alia*, "Woodloch having retained local counsel licensed to practice law in the State of Texas, and/or an admission of its current counsel, pursuant to applicable Texas law and rules, in a pro hac vice manner." Dkt. 6-1 at 128. Foad interprets this Board action to mean the Disqualification Ruling is "completed" and cannot be undone through "any future permit ruling." FAC ¶ 210. Foad also reported the Order to "the Assistant Attorney General who issued the OAG Ruling" regarding Foad's record requests under the TPIA in August 2025, but he received no response. FAC ¶ 207.

Under the District Rules, Woodloch and Foad had 20 calendar days to request a rehearing of the Board decision on the Disqualification Ruling. Exh. 1 at 32 (Rule 7.8(b)). The Board's decision is final if no timely request is made. *Id.* A party may subsequently appeal Board action to a Texas county district court, but only if it exhausts the rehearing process first. *See id.*; TEX. SP. DIST. LOC. LAWS CODE § 8801.202. The deadline for such an appeal is 45 days. TEX. SP. DIST. LOC. LAWS CODE § 8801.202. Foad has not alleged that he sought rehearing of the July 8, 2026

Board action by or before July 28, 2026 (within 20 days), or that he filed any appeal in Texas state court by or before September 11, 2026 (45 days later).

### F. Plaintiff's Allegations Regarding Ms. Truscott Are Limited To Judicial Acts Performed In Her Capacity As A Hearing Examiner

Although Foad's grievances with the permit proceedings are lengthy and expansive, his complaints about Ms. Truscott are fairly narrow. Foad pleads four of eight causes of action against Ms. Truscott. In Counts I, II, III, and VII, Foad essentially, and in various forms, complains that, in her role as a District hearing examiner, Ms. Truscott:

- Issued and declined to rescind the October 20, 2025 Disqualification Ruling (FAC ¶¶ 22, 73, 221, 227, 230, 257);
- So ruled without a hearing (FAC ¶¶ 22, 73, 227, 230, 237);
- So ruled without notice (FAC ¶¶ 73, 227, 230, 237); and
- So ruled without a formal motion being filed (FAC ¶¶ 73, 237).

In Count I ("First Amendment Retaliation" in alleged violation of Section 1983), Foad specifically complains that Ms. Truscott "took or is responsible for" the "adverse action" of "the Disqualification Ruling and its reaffirmation." FAC ¶ 221. In Count II ("Procedural Due Process: Stigma-Plus" in alleged violation of Section 1983), Foad specifically complains that Ms. Truscott "entered the Disqualification Ruling without notice or hearing, reaffirmed it on April 7, 2026, and adopted those findings on May 21–26, 2026." FAC ¶ 230.[4] In Count III ("Declaratory and Injunctive Relief"), Foad sues Ms. Truscott in her "official capacit[y]" for a declaration that the

[4] In Count II, Foad also complains that "Defendants" "publicly charged Plaintiff with unauthorized practice of law . . . [in] the Disqualification Ruling . . . before a tribunal with an institutional pecuniary interest in the outcome." FAC ¶ 227. Ms. Truscott interprets this allegation to relate to other Defendants because Foad nowhere else charges Ms. Truscott of having a "pecuniary interest in the outcome" and because the phrase "before a tribunal" would not make sense if Foad were referring to the hearing examiner/tribunal itself.

Disqualification Ruling was "unlawful and void." FAC ¶ 237. And in Count VII ("Conspiracy" to allegedly violate Section 1983), Foad specifically complains that, in "the five-day arc of mid-October 2025," Ms. Truscott committed the following "overt act[s]:" "[entering] the Disqualification Ruling, its April 7, 2026 reaffirmation, and the closure 'by submission' on adopted findings." FAC ¶¶ 256–57.

Foad alleges several other criticisms about Ms. Truscott in the First Amended Complaint—including that she "engaged in ex parte communications" (FAC ¶¶ 3, 67, 167, 202); made errors in the Disqualification Ruling (FAC ¶¶ 4(ii), 70, 74, 90); allegedly "ignored" a "Motion" filed by Foad in the permit proceeding after his disqualification (FAC at 25 n.14), used a private email address and personal post-office box to "conduct[] official business" (FAC ¶¶ 71, 124, 202, 261); acted while "on HGSD's payroll" (FAC ¶¶ 3, 166, 167); and was appointed without prior approval by Woodloch (FAC ¶¶ 3, 167)—but none of the criticisms were included as grounds in Foad's causes of action. This is presumably because such acts, even if true, are consistent with the District's Rules or otherwise fail to state a claim upon which relief could be granted.

## ARGUMENT

### I. 42 U.S.C. § 1983 Does Not Apply To Ms. Truscott's Acts As A Hearing Examiner.

Foad purports to sue Ms. Truscott "in her official and individual capacities." FAC ¶ 22. This allegation flows from the fact that, for the purposes of a civil rights action brought under Section 1983, "[t]he performance of official duties creates two potential liabilities, individual-capacity liability for the person and official-capacity liability for the municipality." *Turner v. Houma Mun. Fire & Police Civil Serv. Bd.*, 229 F.3d 478, 484 (5th Cir. 2000). "Official-capacity suits generally represent only another way of pleading an action against an entity of which an officer is an agent." *Kentucky v. Graham*, 473 U.S. 159, 165 (1985) (quoting *Monell v. New York City Dep't of Soc. Servs.*, 436 U.S. 658, 690 n.55 (1978)). But some officials are incapable of

creating such liability as an agent. "[M]unicipal liability under § 1983 attaches where—and only where—a deliberate choice to follow a course of action is made . . . by the official or officials responsible for establishing the final policy with respect to the subject matter in question." *Pembaur v. City of Cincinnati*, 475 U.S. 469, 483 (1986). An important "task" for the Court is to identify whether a defendant official "speak[s] with final policymaking authority for the local government actor concerning the action alleged to have caused the particular constitutional or statutory violation at issue." *McMillian v. Monroe County*, 520 U.S. 781, 784–85 (1997) (quoting *Jett v. Dallas Indep. Sch. Dist.*, 491 U.S. 701, 737 (1989)).

The First Amended Complaint simplifies the Court's task here. Foad expressly alleges, "HGSD's Board is its final policymaker . . . ." FAC ¶ 213. Settled law supports this allegation. In cases where the role of a defendant is in dispute, courts look to factors considered by the U.S. Supreme Court in *McMillian* to determine whether a defendant qualifies as an official policymaker under Section 1983. The *McMillian* factors include: (a) how state statutes define the defendant's office; (b) how state statutes describe the defendant's duties; (c) who has the power to remove the defendant from office; (d) whether the defendant is supervised by a different official; (e) whether another official has the power to direct the defendant's actions; (f) how the official is paid; (g) the scope of the defendant's discretion; (h) whether the defendant's expenses and office environment befit a final policymaker, and (i) whether the defendant is an elected official. *Id.* at 787–91.

The *McMillian* factors support a finding that Ms. Truscott could not bind the District when she disqualified Foad. Hearing examiners are not elected. *See* TEX. SP. DIST. LOC. LAWS CODE § 8801.109(d). They are appointed by, and serve at the pleasure of, the District's general manager. Exh. 1 at 2 (Rule 1.1(p)). Foad alleges that hearing examiner fees are subject to the general manager's review. FAC ¶ 167. Foad also alleges that Ms. Truscott used a private email address

and personal post-office box to "conduct[] official business," rather than hold herself out as a spokesperson for the District. FAC ¶¶ 71, 124, 202, 261. The only reference to hearing examiners in the District's enabling statute provides that "the board must make the decision on" any subject delegated to a hearing examiner. TEX. SP. DIST. LOC. LAWS CODE § 8801.109(d). The District's Rules further provide that acts by a hearing examiner require Board approval. *See, e.g.*, Exh. 1 at 28 (Rule 7.5(j)(6)). At the close of evidence in a contested permit case, the hearing examiner prepares a report to the Board with "recommendations for action." Exh. 1 at 30 (Rule 7.6(a)). Even in uncontested permit cases, the hearing examiner's duty is to "make appropriate recommendations to the Board." Exh. 1 at 26 (Rule 7.4(c)).

This Court's decision in *ODonnell v. Harris Co., Texas*, 227 F. Supp.3d 706 (S.D. Tex 2016), is instructive here. In *ODonnell*, plaintiffs sued a number of defendants under Section 1983, including five hearing officers, challenging Harris County's postarrest detention and bail policies. At the time, the role of hearing officer defendants in the postarrest detention and bail process was to preside over pretrial detainees within 24 hours of their arrest, make a probable cause determination, set the amount of bail required for release, determine the eligibility of an accused for release on personal bond or other alternative conditions, and sign an order remanding the defendant to the custody of the Harris County sheriff. *Id.* at 717 (citation omitted). The Court dismissed the official-capacity claims against the hearing officers. *Id.* at 715, 752–54. After applying the *McMillian* factors, the Court found that the hearing officer defendants were "not final policymakers whose acts or omissions could be the basis for Harris County liability under *Monell*." *Id.* at 752. Among other reasons, the hearing officers in *Odonnell* did not "have policymaking authority under state law" and were "directly supervised by a board." *Id.* at 752–53.

Foad's official capacity claims against Ms. Truscott should be treated like the official capacity claims against the Harris County hearing officers in *ODonnell*. Like the hearing officers in *ODonnell*, Ms. Truscott did not "have policymaking authority under state law." *Id.* at 753. The Board has exclusive policymaking authority for the District. TEX. SP. DIST. LOC. LAWS CODE § 8801.053(a), (b). Like the hearing officers in *ODonnell*, Ms. Truscott is also "directly supervised" by the Board. *Id.* § 8801.109(d); Exh. 1 at 2 (Rule 1.1.(p)). Her decisions are "subject to review" by the Board. *ODonnell*, 227 F. Supp.3d at 752; TEX. SP. DIST. LOC. LAWS CODE § 8801.109(d); *see also, e.g.*, Exh. 1 at 26 (Rule 7.4(c)), 28 (Rule 7.5(j)(6)), 30 (Rule 7.6(a)). Indeed, the acts by Ms. Truscott about which Foad complains were either explicitly or functionally characterized as a "recommendation" to the Board, including the Representation Ruling. *See* FAC ¶¶ 8, 111, 113, 214 ("[T]he Board ratified the Disqualification Ruling . . . .").

Accordingly, because Ms. Truscott cannot be held liable for "official acts" under Section 1983, Plaintiff's three Section 1983 counts against her (Counts I, II, and VII) should be dismissed to the extent that she is "sued in her official . . . capacity[y]." FAC ¶ 22. The Court should also dismiss Plaintiff's claim for "Declaratory and Injunctive Relief" (Count III) against Ms. Truscott because Foad expressly pleaded that claim "*[a]gainst Defendants Turco and Truscott in their official capacities* . . . ." FAC at 61 (emphasis in original).

## II. Ms. Truscott Is Immune From Plaintiff's Individual-Capacity Claims.

Foad purports to sue and seek compensatory damages from Ms. Truscott in her "individual capacit[y]" as well as in her (unfounded) official capacity. *See* FAC at 1, 70 and ¶¶ 11, 22. Cases applying Section 1983 permit plaintiffs to assert such "overlapping" claims against an individual defendant. *Turner*, 229 F.3d at 485. But such defendants may also invoke defenses in their individual capacities, including absolute quasi-judicial immunity. *Id.* at 483 (citations omitted).

Judicial immunity is a long-standing doctrine. *See, e.g.*, *Bradley v. Fisher*, 80 U.S. (13 Wall.) 335 (1871); *Pierson v. Ray*, 386 U.S. 547 (1967); *Imbler v. Pachtman*, 424 U.S. 409 (1976); *Butz v. Economou*, 438 U.S. 478 (1978). "Few doctrines were more solidly established at common law that the immunity of judges from liability for damages for acts committed within their judicial discretion." *Pierson*, 386 U.S. at 553–54 (citing *Bradley*, 80 U.S. (13 Wall.) 335)). "This immunity applies even when the judge is accused of acting maliciously and corruptly," as the immunity inures "for the benefit of the public, whose interest it is that the judges should be at liberty to exercise their functions with independence and without fear of consequences." *Id.* at 554 (quoting *Scott v. Stansfield*, L.R. 3 Exch. 220, 223 (1868)). Judicial immunity protects adjudicators from "fear that unsatisfied litigants may hound him with litigation charging malice or corruption," as "[i]mposing such a burden on judges would contribute not to principled and fearless decisionmaking but to intimidation." *Id.*

The Supreme Court has expanded judicial immunity to "others who perform functions closely associated with the judicial process." *Cleavinger v. Saxner*, 474 U.S. 193, 200 (1985). "[C]ertain 'quasi judicial' agency officials, who, irrespective of their title, perform functions essentially similar to those of judges or prosecutors, in a setting similar to court" are also entitled to "a full exemption from liability." *O'Neal v. Miss. Bd. of Nursing*, 113 F.3d 62, 65 (5th Cir. 1997). The Supreme Court has held that a "hearing examiner" can be "functionally comparable" to a judge for immunity purposes. *Butz*, 438 U.S. at 513. Courts have therefore dismissed individual-capacity claims against administrative hearing officials like Ms. Truscott under Rule 12(b)(b) based on quasi-judicial immunity. *See, e.g.*, *Vinson v. Benson*, 235 F.3d 1342 (5th Cir. 2000) (slip op.) (affirming Rule 12(b)(6) dismissal of Section 1983 claims against clerk acting under legal authority); *Sanchez*, 8 F.3d 20 (affirming Rule 12(b)(6) dismissal of claims against

parole hearing officer); *Perez v. ME Alpha I, LLC*, No. H-25-3178, 2026 WL 1471901, at *4 (S.D. Tex. May 26, 2026) (dismissing claims against deputy constable under quasi-judicial immunity); *see also B.D.S. v. Southold Union Free Sch. Dist.*, No. CV-08-1319(SJF)(WDW), 2009 WL 1875942, at **18-19 (E.D.N.Y. June 24, 2009) (granting absolute immunity to a hearing officer at the state's department of education under Rule 12(b)(6)); *DeMerchant v. Springfield Sch. Dist. & Dan Jerman*, No. 1:05-CV-316, 2007 WL 495240, at *3 (D. Vt. Feb. 9, 2007) (granting an educational hearing officer absolute immunity under Rule 12(b)(6)); *Gyadu v. Workers' Comp. Comm'n*, 930 F. Supp. 738, 748 (D. Conn. 1996) (granting absolute immunity to a worker's compensation commissioner under Rule 12(b)(6)).

The Fifth Circuit has articulated six factors to help courts determine whether absolute immunity apples to a "quasi-judicial" defendant. *O'Neal*, 113 F.3d at 65. In a Section 1983 case brought against a hearing officer like Ms. Truscott, this Court focused these factors on whether "procedural protections" were provided for the plaintiff during proceedings before the defendant, including representation by counsel, "the presentation of testimony and evidence," and the "possibility of appeal." *Brown v. Harris Cty. Housing Auth.*, No. H-15-2847, 2018 WL 3080880, at *6 (S.D. Tex. Jan. 11, 2018) (citing *O'Connor v. New York Housing Auth.*, No. 08-CV-3623(CBA)(LB), 2010 WL 1741369 (E.D.N.Y. Mar. 24, 2010)). In *Brown*, this Court held that a hearing officer was acting in a quasi-judicial capacity, and was therefore entitled to absolute immunity, because "the decision of the hearing officer [was] in writing," the plaintiff "was afforded the opportunity for multiple hearings" regarding the challenged ruling, and the hearing officer's rulings were "reviewed by HUD," which served as an appeal. 2018 WL 3080880, at *7.

Quasi-judicial immunity applies to Ms. Truscott in this case. Foad's Section 1983 claims against Ms. Truscott are grounded exclusively on her issuance of the October 20, 2025

Disqualification Ruling and subsequent decision not to reconsider the ruling. FAC ¶¶ 22, 73, 221, 227, 230, 257. Although Foad complains about the circumstances of Ms. Truscott's ruling in Count II, namely that she purportedly ruled "without notice or hearing," FAC ¶ 230; *see also id.* ¶ 237, such allegations still relate to the quasi-judicial ruling itself. Quasi-judicial immunity also extends to conspiracy claims when the allegations about a defendant are aimed at her "judicial decisions." *See Pierson*, 386 U.S. at 553 n. 8. Count III solidly qualifies. *See* FAC ¶ 257 ("Each Defendant named in this Court committed at least one overt act in furtherance [of a purported conspiracy]: . . . Truscott—the Disqualification Ruling, its April 7, 2026 reaffirmation, and the closure "by submission" on adopted findings.").[5] In addition, like in *Brown*, Ms. Truscott's challenged action was "in writing," *see* Exh. 3; Dkt. 6-1 at 64, Foad had "multiple" opportunities to attack the Disqualification Ruling before the Board, FAC ¶¶ 86–87, and the Disqualification Ruling was "reviewed" by the Board. *See* FAC ¶¶ 112–13, 165. Dismissal of Counts I and II against Ms. Truscott is therefore appropriate because, like the plaintiff in *Brown*, Foad "does not provide any allegations about [Ms. Truscott] outside of [her] role as the hearing officer in [his] case." 2018 WL 3080880, at *7.

Foad acknowledges that dismissal may be appropriate on immunity grounds. For example, Foad pleads, "Damages are sought [against Defendant Truscott] only for conduct to which judicial immunity does not attach." FAC ¶ 22; *see also id.* at 70 (prayer for an award of compensatory

---

[5] The Court can also dismiss Foad's conspiracy claim against Ms. Truscott as a matter of law under Rule 12(b)(6) because "lawful parallel conduct does not prove conspiracy." *See Estes v. Ramirez*, No. 7:14-CV-69, 2014 WL 11698007, at *9 (S.D. Tex. June 13, 2014). The "overt acts" pleaded for Ms. Truscott are limited to "the Disqualification Ruling, its April 7, 2026 reaffirmation, and the closure [of a contested hearing] 'by submission' on adopted findings." FAC ¶ 257. Texas law expressly allows Ms. Truscott to perform such acts. *See* TEX. SP. DIST. LOC. LAWS CODE § 8801.109(d); Exh. 1 at 21 (Rule 7.1(a)). "[A]n allegation of parallel conduct and a bare assertion of conspiracy will not suffice" where the complaint "does not supply facts adequate to show illegality." *Twombly*, 550 U.S. at 556–57.

damages "as to Defendant Truscott, only to the extent immunity does not attach").[6] Foad also pleads that "[d]amages are sought against Truscott only for non-adjudicative conduct," FAC ¶ 202, but the conduct specified—"the ex parte communication, the private-channel practice, and her participation, on information and belief, in the coordinated removal" of Foad from Woodloch's permit case—all relate to acts and omissions taken by Ms. Truscott in her official judicial capacity. Because judicial immunity *does* attach to Ms. Truscott's challenged actions as a matter of law, the Court should dismiss Foad's claims against her in full.

Finally, finding that Ms. Truscott was not a final policymaker for the District—and therefore dismissing official-capacity claims against her for the reasons discussed more fully in Point I above—is not inconsistent with finding that her conduct was judicial in nature. In *ODonnell*, the Court explained that, to the extent the Harris County hearing officers in that case exercised discretion, such adjudication was "inextricable from the exercise of judicial functions in individual cases." *ODonnell*, 227 F. Supp.3d at 753. In sum, the Court should dismiss all counts in the First Amended Complaint against Ms. Truscott, both in her official and individual capacities.

## III. In The Alternative, Plaintiff's Declaratory Judgment Claim Should Be Dismissed For Lack Of Subject Matter Jurisdiction Under *Rooker-Feldman*.

In the event the Court does not dismiss Count III with respect to Ms. Truscott, which Foad expressly pleaded against Ms. Truscott in her "official capacity[y]," *see* FAC at 61, Ms. Truscott challenges subject matter jurisdiction over that claim under the *Rooker-Feldman* doctrine. *See Rooker v. Fidelity Trust Co.*, 263 U.S. 413 (1923); *D.C. Ct. of Appeals v. Feldman*, 460 U.S. 462 (1983). Under that doctrine,

---

6 In a recent pleading, Foad further characterized Ms. Truscott as "an immune adjudicator." *See* Pl.'s Response in Opp. to the GDHM Defs.' Rule 12(b)(6) Motion to Dismiss, filed Sept. 14, 2026 [Dkt. 14], at 11 ("There [in *Dennis v. Sparks*, 449 U.S. 24 (1980)], as here, private parties were alleged to have conspired with an immune adjudicator to procure an order.")

> "[F]ederal district courts lack subject-matter jurisdiction over cases brought by state-court losers complaining of injuries caused by state-court judgment rendered before the district court proceedings commenced and inviting district court review and rejection of those judgments."

*Collins v. Florida Dep't of Revenue*, No. H-25-1163, 2026 WL 124865, at *1 (S.D. Tex. Jan. 16, 2026) (quoting *Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280, 284 (2005)). The doctrine applies when a plaintiff effectively asks a federal court to "modify or reverse state court judgments" without Congressional authorization. *Id.* (quoting *Union Planters Bank Nat'l Ass'n v. Salih*, 367 F.3d 457, 462 (5th Cir. 2004)). The Fifth Circuit has applied the doctrine where (a) the plaintiff in a federal court has been a party to a final judgment, (b) the judgment was rendered in a state-court proceeding, (c) the federal complaint was filed after the state court judgment, and (d) the federal complaint is seeking, in substance, an appellate review of the previous judgment. *Williams v. Liberty Mut. Ins. Co.*, No. 04-30768, 2005 WL 776170 (5th Cir. Apr. 7, 2005).

Foad's request for a declaration in Count III "that the October 20, 2025 Disqualification Ruling" issued by Ms. Truscott is "unlawful and void" satisfies the requirements for dismissal under *Rooker-Feldman*. First, the "dismissal of Plaintiff's counsel in the state court system" constitutes a judgment for purposes of the doctrine. *See Estes*, 2014 WL 11698007, at *7. According to Foad, the Disqualification Ruling was "completed" and final no later than July 8, 2026, when the Board conditioned any further permit proceedings by Woodloch on compliance with Ms. Truscott's October 20, 2025 ruling. FAC ¶ 210. A litigant's declaration that he "no longer wishes to pursue" a claim satisfies the finality requirement in *Rooker-Feldman*. *See, e.g.*, *Khan v. City of Dallas*, No. 3:15-CV-3254-D-BK, 2017 WL 4221118, at *4 (N.D. Texas Sept. 5, 2017).

Second, courts have applied the "state court judgments" requirement in *Rooker-Feldman* to include municipal or special district rulings issued under color of state law. For example, in

*Khan v. City of Dallas*, a homeowner served with a notice of city ordinance violation and subsequent fine filed a Section 1983 claim "[r]ather than appealing" a decision by an administrative hearing officer upholding the notice and citation. 2017 WL 4221118, at **1–2. The Court found, and later reaffirmed, that Khan's suit "invited[d] reconsideration of the state court judgment that found Plaintiff violated the Ordinance," and, thus, should be dismissed "pursuant to the *Rooker-Feldman* doctrine." *Id.* at **2, 4. The same analysis applies here.

Third, Foad filed this suit long after Ms. Truscott issued the October 20, 2025 Disqualification Ruling. *See* FAC ¶ 73; Exh. 3. He effectively sought reconsideration "on numerous occasions" through an "Omnibus Motion" seeking, *inter alia*, vacatur of the Disqualification Ruling, *see* FAC at 25 n.14, but that "Motion" was first filed no later than November 2025, and was effectively denied. *See id.* ¶¶ 80, 210.[7]

Fourth, Foad's complaint expressly seeks a declaration that the Disqualification Ruling is "void," *see, e.g.*, FAC ¶ 237, which is the equivalent of seeking appellate review from this Court. This same prayer motivated the Supreme Court to dismiss plaintiff's claims in *Rooker*. *Compare* FAC ¶ 237 *and Rooker*, 263 U.S. at 414–15. The *Rooker-Feldman* doctrine also bars Foad's ancillary allegations attempting to undermine confidence in the Representation Order. *See, e.g.*, *Price v. Porter*, 351 Fed. App'x. 925, 926–27 (5th Cir. 2009) (*Rooker-Feldman* bars due process

---

7 At the latest, Foad alleges finality when the Board held a hearing on June 8, 2026, "ratif[ying]" the Disqualification Order. FAC ¶¶ 210, 214. Foad filed this lawsuit on July 7, 2026, though he already anticipated "the Board ratif[ying] the Disqualification Ruling" as of that date. *See* Original Compl., filed July 7, 2026 [Dkt. 1], ¶ 147. If the Court gives legal significance to this one-day difference, Foad revises his clear allegations of finality, or the Court finds that the Board's continued consideration of Woodloch's permit application means that Foad's disqualification proceeding is still pending, then the Court should still dismiss Foad's action in favor of the District litigation on comity or abstention grounds. *See Exxon Mobil*, 544 U.S. at 292 (citing *Colorado River Water Conservation Dist. v. United States*, 424 U.S. 800 (1976); *Younger v. Harris*, 401 U.S. 37 (1971); *Burford v. Sun Oil Co.*, 319 U.S. 315 (1943); *Railroad Comm'n of Tex. v. Pullman Co.*, 312 U.S. 496 (1941)).

and equal protection claims that a state-court judge should have recused himself due to a conflict of interest). "A plaintiff cannot circumvent the *Rooker-Feldman* doctrine merely by recasting a complaint in the form of a federal civil rights action." *Jefferson v. Johnson*, No. 3:25-CV-428-X-BK, 2025 WL 2646846, at *2 (N.D. Tex. Mar. 28, 2025) (citing *Moore v. Whitman*, 742 F. App'x. 829, 832 (5th Cir. 2018). Therefore, Count III should be dismissed in full with respect to Ms. Truscott and her Disqualification Ruling.

The substance of the challenged ruling here is remarkably similar to the underlying ruling in *Feldman*. In that case, two plaintiffs filed suit in the U.S. District Court for the District of Columbia after the District of Columbia Court of Appeals denied their petition to waive a local rule that required D.C. bar applicants to have graduated from a law school approved by the American Bar Association. 460 U.S. at 465–73. Because the plaintiffs in *Feldman* sought federal review of the attorney qualification rule in their particular case (as opposed to the validity of that rule in general), the Supreme Court held that the federal district court lacked jurisdiction to proceed. *Id.* at 485–86. Courts have consistently dismissed similar prayers for relief. *See, e.g.*, *Morris v. Am. Home Mortg. Servicing, Inc.*, 443 Fed. App'x. 22, 24 (5th Cir. 2011) (*Rooker-Feldman* bars a claim that a foreclosure judgment is unlawful); *Mosley v. Bowie County*, 275 Fed. App'x. 327, 328–29 (5th Cir. 2008) (*Rooker-Feldman* bars a claim that a state child-support order is void); *see also, e.g.*, *McCormick v. Braverman*, 451 F.3d 382, 395–96 (6th Cir. 2009) (*Rooker-Feldman* bars a claim that an adverse receivership order was illegal). The same outcome is warranted here.

## IV. In The Alternative, 42 U.S.C. § 1983 Bars Injunctive Relief Of Ms. Truscott's Quasi-Judicial Acts.

In the event the Court does not dismiss Count III with respect to Ms. Truscott, Section 1983 also expressly bars Foad's request for injunctive relief against Ms. Truscott. Congress amended

the statute in 1996 to limit actions seeking prospective injunctive relief against judicial officers by enacting an express carve-out: "[I]n any action brought against a judicial officer for an act or omission taken in such officer's judicial capacity, injunctive relief shall not be granted unless a declaratory decree was violated or declaratory relief was unavailable." 42 U.S.C. § 1983; *Bauer v. Tex.*, 341 F.3d 352, 357 (5th Cir. 2003); *see also Marshall v. Abbott*, No. 4:21-CV-384-SDJ-CAN, 2022 WL 660798, at *9 (E.D. Tex. Feb. 13, 2022), report and recommendation adopted, No. 4:21-CV-384, 2022 WL 659180 (E.D. Tex. Mar. 4, 2022) (describing "explicit carve out" for actions seeking injunctive relief against judicial officers). To request injunctive relief against a judicial officer under the amended statute, a plaintiff must allege that (a) a declaratory decree was violated or (b) that declaratory relief is unavailable. *Machetta v. Moren*, 726 Fed. App'x. 219, 220 (5th Cir. 2018); *see also Burdine v. Huffman*, 229 F. Supp. 2d 704, 707 (S.D. Tex. 2002). Absent this showing, a plaintiff may "not state a cause of action under § 1983 as to the requested injunctive relief." *Williams v. Capital Fund I, LLC*, No. 4:23-CV-1694, 2023 WL 6797529, at *2 (S.D. Tex. Oct. 13, 2023); *Bauer,* 341 F.3d at 357; *De Luna v. Hidalgo Cnty., Tex.*, No. CV M-10-268, 2011 WL 13282104, at *2 (S.D. Tex. June 24, 2011).

The judicial-officer exception in Section 1983 applies to Foad's claim for injunctive relief against Ms. Truscott. First, Foad seeks injunctive relief for acts and omissions taken in Ms. Truscott's judicial capacity. Foad pleads Count III for "Declaratory and Injunctive Relief" against Ms. Truscott in her "official capacity[y]" and specifically requests an injunction to prohibit enforcement of the Disqualification Ruling, which is an act taken in Ms. Truscott's capacity as a District hearing examiner. FAC ¶ 237. Indeed, Foad explicitly pleads that he seeks injunctive relief "[a]s to adjudicative acts." FAC ¶ 202. Because the First Amended Complaint seeks injunctive relief against Ms. Truscott in her judicial capacity, Section 1983 bars Foad's request for

relief unless one of the statutory exceptions applies. *See ODonnell v. Harris Cnty., Tex.*, 251 F. Supp.3d 1052, 1155–56 (S.D. Tex. 2017), aff'd as modified, 882 F.3d 528 (5th Cir. 2018), and aff'd as modified sub nom. *ODonnell v. Harris Cnty*., 892 F.3d 147 (5th Cir. 2018) ("*ODonnell II*").[8]

Second, the First Amended Complaint does not allege that Truscott violated a declaratory decree. Foad acknowledges that Section 1983 limits the availability of injunctive relief against judicial officers. FAC ¶ 202 (pleading for injunctive relief against Ms. Truscott "only as § 1983 permits"). The First Amended Complaint also accurately notes that "Section 1983 permits injunctive relief against a judicial officer where a declaratory decree is violated or declaratory relief is unavailable." FAC at 53 n.23. But Foad does not then plead that this recognized exception applies. To the contrary, the First Amended Complaint alleges that the Disqualification Ruling was "issued without motion, notice, or hearing, on relief no party requested." FAC ¶ 237. The first exception to the judicial-officer exception does not apply. *See Machetta*, 726 Fed. App'x. at 220 (affirming dismissal of claim seeking injunctive relief when plaintiff failed to allege exception applied); *Herrera v. Kazen*, No. SA-23-CV-01031-XR, 2023 WL 6126249, at **2, 2 n.1 (W.D. Tex. Sept. 18, 2023) (same); *Marshall*, 2022 WL 660798, at *9 (same); *Williams v. Capital Fund*, 2023 WL 6797529, at *2 (same).

Third, by requesting declaratory relief in Count III, Foad implicitly acknowledges that the second exception—that "declaratory relief is unavailable"—does not apply here. FAC ¶ 237.

[8] Foad alleges that he seeks "a prospective injunction" against enforcement of the Disqualification Ruling. FAC ¶ 237. Merely labeling Foad's request as "prospective" does not make it so. Count III's requested injunctive relief is not prospective in nature because Foad seeks relief from an earlier judicial ruling. *See Smith v. Collier*, No. CV H-22-3686, 2022 WL 17650597, at *3 (S.D. Tex. Dec. 13, 2022) (construing request to enjoin or reverse earlier court ruling as a request for redress of past wrongs and no prospective relief).

Foad cannot plausibly allege that declaratory relief is unavailable when he has simultaneously pursued a such a claim. *See ODonnell II*, 251 F. Supp. 3d at 1156 (citing *MacPherson v. Town of Southampton*, 664 F.Supp.2d 203, 211–12 (E.D.N.Y. 2009)). Courts regularly dismiss claims seeking injunctive relief against officers acting in their judicial capacity when a plaintiff fails to allege that either statutory exception applies. *See, e.g.*, *Machetta*, 726 Fed. Appx. at 220; *Smith v. Apffel,* No. CIV.A. G-06-0446, 2007 WL 4300128, at *4 (S.D. Tex. Dec. 5, 2007); *De Luna*, 2011 WL 13282104, at *2 (dismissing request for injunctive relief when plaintiffs failed to allege exceptions applied). This Court should follow suit and dismiss Foad's request for injunctive relief here.

## V. Plaintiff's Claims Against Ms. Truscott Should Be Dismissed With Prejudice.

While this Court may ordinarily be inclined to grant a *pro se* plaintiff leave to amend a flawed complaint before dismissal, leave is not required when the plaintiff has already pleaded his "best case." *Brewster v. Dretke*, 587 F.3d 764, 767–68 (5th Cir. 2009); *Jefferson*, 2025 WL 2646846, at *3. This is particularly true where a complaint runs headlong into foundational defects, such as absolute quasi-judicial immunity and lack of subject matter jurisdiction. *E.g.*, *Sanchez*, 8 F.3d 20 (dismissing Section 1983 claims with prejudice because defendant was "entitled to absolute quasi-judicial immunity for her exercise of decision-making power as a hearing officer"); *Jefferson*, 2025 WL 2646846, at *3 (dismissing plaintiff's claim challenging election disqualification for lack of jurisdiction under *Rooker-Feldman* doctrine and finding that "granting leave to amend would be futile"); *Estes*, 2014 WL 11698007, at *10 (same).

Foad's claims against Ms. Truscott should be dismissed with prejudice. Foad is not a typical *pro se* plaintiff. He is a licensed attorney with an alleged customary hourly rate of $1,200. FAC ¶ 199(i). His verified, 71-page First Amended Complaint asserts eight causes of action, attaches 135 pages of appended exhibits, and attempts to preemptively argue against sophisticated

"Anticipated Defenses," such as qualified immunity, exhaustion of administrative remedies, ripeness, and abstention under *Younger*. FAC ¶¶ 202–212. Foad has already amended his pleading once, and he filed a "Notice of Errata" with additional amendments to the First Amended Complaint. Dkt. 13. Moreover, the grounds for dismissal of Ms. Truscott—including her non-policymaker role under Section 1983, status as a quasi-judicial officer, and finality of the Disqualification Ruling under Texas state law—are based on statutory language and settled facts unsusceptible to amendment in a further pleading. Under these circumstances, the Court can and should conclude that Foad has already pleaded his "best case" and that granting leave to amend would be futile and cause needless delay.

## CONCLUSION

For the foregoing reasons, defendant Helen Stewart Truscott, Esq. respectfully requests the Court to dismiss Plaintiff's claims against her for lack of subject matter jurisdiction and failure to state a claim upon which relief can be granted.

Respectfully submitted,

**DRUMHELLER, HOLLINGSWORTH & MONTHY, LLP**

/s/ *Jeremy T. Monthy*
Jeremy T. Monthy, *Attorney-in-Charge*
State Bar No. 24073240
Federal I.D. No. 1115582
Kathleen C. Laird
State Bar No. 24132063
Federal I.D. No. 3844989
712 Main Street, Suite 1705
Houston, Texas 77002
Telephone: (713) 751-2300
Facsimile: (713) 751-2310
Emails: jmonthy@dhmlaw.com
klaird@dhmlaw.com

**ATTORNEYS FOR DEFENDANT HELEN STEWART TRUSCOTT, ESQ.**

**CERTIFICATE OF SERVICE**

I hereby certify that on September 22, 2026, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to all registered parties, including:

Kawa Foad, Esq.
KF Law
1000 Brickell Ave., Suite 715
Miami, FL 33131
Email: kfoad@kf-law.com

*Pro se Plaintiff*

*/s/ Jeremy T. Monthy*
Jeremy T. Monthy