# EXHIBIT 1

# Harris-Galveston Subsidence District

# Rules

Amended October 11, 2023

# Table of Contents

**SECTION 1. DEFINITIONS AND CONCEPTS .......... 1**

RULE 1.1 DEFINITIONS OF TERMS .......... 1
RULE 1.2 PURPOSE OF RULES .......... 6
RULE 1.3 USE AND EFFECT OF RULES .......... 6
RULE 1.4 AMENDING OF RULES .......... 6
RULE 1.5 HEADINGS AND CAPTIONS .......... 6
RULE 1.6 CONSTRUCTION .......... 6
RULE 1.7 METHODS OF SERVICE UNDER THE RULES .......... 6
RULE 1.8 SEVERABILITY .......... 7

**SECTION 2. BOARD .......... 7**

RULE 2.1 PURPOSE OF BOARD .......... 7
RULE 2.2 BOARD STRUCTURE, OFFICERS .......... 7
RULE 2.3 MEETINGS .......... 7
RULE 2.4 COMMITTEES .......... 7
RULE 2.5 EX PARTE COMMUNICATIONS .......... 8
RULE 2.6 RULES OF PROCEDURE, CONDUCT, AND DECORUM AT MEETINGS OF THE BOARD OF DIRECTORS .......... 8

**SECTION 3. GENERAL MANAGER .......... 9**

RULE 3.1 GENERAL MANAGER .......... 9
RULE 3.2 DELEGATION OF AUTHORITY .......... 9

**SECTION 4. DISTRICT .......... 9**

RULE 4.1 DISTRICT ADDRESS .......... 9
RULE 4.2 MINUTES AND RECORDS OF THE DISTRICT .......... 9
RULE 4.3 CERTIFIED COPIES .......... 9

**SECTION 5. PERMITS .......... 10**

RULE 5.1 REGISTRATION OF NEW WELLS .......... 10
RULE 5.2 GENERAL PERMITTING POLICIES AND PROCEDURES .......... 10
RULE 5.3 STANDARD PERMIT PROVISIONS .......... 13
RULE 5.4 PERMIT AMENDMENTS .......... 14
RULE 5.5 EMERGENCY PERMITS .......... 15
RULE 5.6 FEES AND PAYMENT OF FEES .......... 16
RULE 5.7 PERMIT FEE REBATES .......... 17
RULE 5.8 EXCLUSIONS AND EXEMPTIONS .......... 17
RULE 5.9 OVER-CONVERSION CREDITS .......... 18
RULE 5.10 PERMIT RECONCILIATION PROCESS .......... 19

**SECTION 6: OTHER DISTRICT ACTIONS AND DUTIES ........ 20**

RULE 6.1 DISTRICT REGULATORY PLAN ........ 20
RULE 6.2 ANNUAL GROUNDWATER PUMPAGE REPORTS ........ 20

**SECTION 7: HEARINGS ........ 21**

RULE 7.1 TYPES OF HEARINGS ........ 21
RULE 7.2 NOTICE AND SCHEDULING OF HEARINGS ........ 21
RULE 7.3 GENERAL PROCEDURES ........ 22
RULE 7.4 UNCONTESTED PERMIT HEARINGS PROCEDURES ........ 25
RULE 7.5 CONTESTED PERMIT HEARINGS PROCEDURES ........ 26
RULE 7.6 CONCLUSION OF THE HEARING; REPORT ........ 30
RULE 7.7 RULEMAKING HEARINGS PROCEDURES ........ 31
RULE 7.8 FINAL DECISION; APPEAL ........ 31

**SECTION 8: METERING ........ 32**

RULE 8.1 WATER METER REQUIRED ........ 32
RULE 8.2 WATER METER EXCEPTIONS ........ 33
RULE 8.3 VERIFICATION OF WELL SIZE ........ 33
RULE 8.4 METERING AGGREGATE WITHDRAWAL ........ 33
RULE 8.5 ACCURACY VERIFICATION ........ 33
RULE 8.6: REMOVAL OF METER FOR REPAIRS ........ 34
RULE 8.7 WATER METER READINGS ........ 34

**SECTION 9: INVESTIGATIONS AND ENFORCEMENT ........ 35**

RULE 9.1 NOTICE AND ACCESS TO PROPERTY ........ 35
RULE 9.2 CONDUCT OF INVESTIGATION ........ 35
RULE 9.3 REQUEST FOR INJUNCTIVE RELIEF AND ASSESSMENT OF PENALTIES ........ 35

# Harris-Galveston Subsidence District

# Rules

## SECTION 1. DEFINITIONS AND CONCEPTS

### Rule 1.1 Definitions of Terms:

In the administration of its duties, the Harris-Galveston Subsidence District follows the definitions of terms set forth in Chapter 8801, Special District Local Laws Code (hereinafter "Chapter 8801"), and other definitions as follows:

a. "**Agricultural crop**" means:

   1. food or fiber commodities that are grown for resale or commercial purposes and that are to be used for food, clothing, or animal feed; and

   2. includes nursery products and florist items that are in the possession of a nursery grower.

b. "**Alternative Water Supply**" means metered water from any source that meets the regulatory requirements of the Regulatory Plan including but not limited to: surface water, reuse water, treated effluent, desalinated seawater, or water from a retail public utility. Water obtained from any supplier that is in compliance with an approved groundwater reduction plan shall be considered an alternative water supply. Groundwater may only be utilized as an alternative water supply when it is provided as part of an approved groundwater reduction plan. Groundwater withdrawn from any county outside the District does not qualify as an alternative water supply unless the permittee can demonstrate with clear and convincing evidence that the groundwater withdrawals will not cause groundwater level declines or subsidence within the District.

c. "**Available Alternative Water Supply**" or "**Availability of Alternative Water**" means alternative water supply that can be utilized with the exercise of reasonable diligence within a reasonable time.

d. "**Beneficial use**" means any use that is useful or beneficial to the user, including:

   1. an agricultural, gardening, domestic, stock raising, municipal, mining, manufacturing, industrial, commercial, or recreational use, or a use for pleasure purposes; or

   2. exploring for, producing, handling, or treating oil, gas, sulfur, or other minerals.

e. “**Board**” means the Board of Directors of the District.

f. "**Commission**" means the Texas Commission on Environmental Quality.

g. “**Dewatering well**” means a well used to remove water from a construction site or excavation, or to relieve hydrostatic uplift on permanent structures.

h. “**District**” means the Harris-Galveston Subsidence District.

i. “**District office**” means the office of the District at 1660 West Bay Area Boulevard, Houston, in Harris County, Texas. The District office may be changed from time to time by resolution of the Board.

j. “**Extraction well**” means a well used to extract contaminated fluids from the subsurface for the purpose of conducting an environmental remediation.

k. “**Florist item**” means a cut flower, potted plant, blooming plant, inside foliage plant, bedding plant, corsage flower, cut foliage, floral decoration, or live decorative material.

l. “**Groundwater**” means water located beneath the earth’s surface. The term does not include water produced with oil in the production of oil and gas.

m. “**Groundwater credit**” means a credit issued by the District for participation in the District’s Water Conservation program.

n. “**Groundwater reduction plan**” means a document created by a permittee and certified by the District that details the strategies and steps necessary for achieving the groundwater reduction requirements outlined for the regulatory area within which the permittee is located.

o. “**Hearing body**” means the Board, any committee of the Board, or a Hearing Examiner at any hearing held under the authority of Chapter 8801.

p. “**Hearings Examiner**” means a person appointed by the General Manager to conduct a hearing or other proceeding.

q. "**Injection well**" means an artificial excavation or opening in the ground made by digging, boring, drilling, jetting, driving, or some other method, and used to inject, transmit, or dispose of industrial and municipal waste or oil and gas waste into a subsurface stratum; or a well initially drilled to produce oil and gas which is used to transmit, inject, or dispose of industrial and municipal waste or oil and gas waste into a subsurface stratum; or a well used for the injection of any other fluid; but the term does not include any surface pit, surface excavation, or natural depression used to dispose of industrial and municipal waste or oil and gas waste.

r. "**Leachate well**" means a well used to remove contaminants from soil or groundwater. For the purposes of this definition, "contaminants" means a liquid that has percolated through or drained from solid waste and contains soluble, suspended, or miscible materials removed from such waste.

s. "**Monitoring well**" means a well installed to measure some property of the groundwater or aquifer it penetrates, and does not produce more than 5,000 gallons per year.

t. "**New well application**" means an application for a permit for a well that has not been drilled.

u. "**Nursery grower**" means a person who grows in any medium more than 50 percent of the nursery products or florist items that the person sells or leases. A person grows a nursery product or florist item if the person cultivates or propagates the product or item by engaging in activities associated with the production or multiplying of stock, including the development of new plants from cuttings, grafts, plugs, or seedlings. The term does not include a person who merely holds or maintains a nursery product or florist item before sale or lease.

v. "**Nursery product**" includes a tree, shrub, vine, cutting, graft, scion, grass, bulb, or bud that is grown for, kept for, or is capable of, propagation and distribution for sale or lease.

w. "**Open Meetings Act**" means Chapter 551, Government Code.

x. "**Over-conversion credits**" means a credit issued to a permittee located in Regulatory Area Three who reduces groundwater pumpage beyond District requirements, awarded and redeemable pursuant to District Policy.

y. "**Permit**" means a permit for a water well issued or to be issued by the District allowing the withdrawal of groundwater for a designated period.

z. "**Person**" includes corporation, individual, organization, government or governmental subdivision or agency, business trust, estate, trust, partnership, association, or any other legal entity.

aa. "**Platted Subdivision**" means a tract of land divided in two or more parts to lay out lots of less than five acres where:

1. a written depiction of the lots, blocks, and reserves created by the division of the property has been approved and recorded in the Official Public Records of Real Property of either Harris County or Galveston County; and

2. the written depiction includes streets, alleys, squares, parks, or other parts of the tract intended to be dedicated to public use or for the use of purchasers or

owners of lots fronting on or adjacent to the streets, alleys, squares, parks, or other parts.

bb. "**Presiding officer**" means the Chair, Vice-Chair, Secretary, or other Board member presiding at any hearing or other proceeding or a Hearings Examiner conducting any hearing or other proceeding.

cc. **"Public Information Act**" means Chapter 552, Government Code.

dd. "**Regional water supplier**" means a political subdivision of this State that has:

1. the authority to conserve, store, treat and purify water and to transport, distribute, sell, and deliver water to any person in this State; and

2. an approved groundwater reduction plan.

ee. "**Regulatory Area**" means a geographic subdivision of the District in which goals are established to reduce groundwater withdrawals by specific deadlines.

ff. "**Retail public utility**" has the meaning assigned by Section 13.002, Water Code.

gg. "**Rules**" means the rules and regulations of the District compiled in this document and as may be supplemented or amended from time to time.

hh. "**Subsidence**" means the lowering in elevation of the surface of land by groundwater withdrawal.

ii. "**Texas Rules of Civil Procedure**" and "**Texas Rules of Civil Evidence**" mean the civil procedure and evidence rules as amended and in effect at the time of the action or proceeding. Except as modified by the Rules of the District, the rights, duties, and responsibilities of the presiding officer acting under the Texas Rules of Civil Procedure or the Texas Rules of Evidence shall be the same as a court acting under those rules.

jj. "**Total Water Demand**" means the aggregate amount of alternative water supply and groundwater being utilized by a permittee to meet current or projected water needs.

kk. "**Waste**" means:

1. the withdrawal of groundwater from a groundwater reservoir at a rate and in an amount that causes or threatens to cause intrusion into the reservoir of water unsuitable for agricultural, gardening, domestic, or stock raising purposes;

2. the flowing or producing of wells from a groundwater reservoir if the water produced is not used for a beneficial use or if the amount used is more than is reasonably required for a beneficial use;

3. the escape of groundwater from a groundwater reservoir to any other reservoir or geologic strata that does not contain groundwater;

4. the pollution or harmful alteration of groundwater in a groundwater reservoir by saltwater or other harmful matter admitted from another stratum or from the surface of the ground;

5. wilfully or negligently causing, suffering, or allowing groundwater to escape or flow into a river, creek, natural watercourse, depression, lake, reservoir, drain, sewer, street, highway, road, or road ditch, or onto land that does not belong to the owner of the well unless the discharge is authorized by a permit, rule, or order issued by the commission under Chapter 26, Water Code;

6. the escape of groundwater pumped for irrigation as irrigation tailwater onto land that does not belong to the owner of the well unless the occupant of the land receiving the discharge granted permission for the discharge; or

7. wilfully causing or knowingly permitting the water produced from an artesian well to run off the owner's land or to percolate through the stratum above which the water is found, as prescribed by Section 11.205, Water Code.

ll. "**Water conservation**" means a measure that seeks to make a water supply available for alternative or future use. The term includes best management practices, improved efficiency or accountability, recycling, reuse, pollution prevention, and reduction in consumption, loss, or waste.

mm. "**Water meter**" means a water flow measuring device capable of recording the actual volume of groundwater produced during a measured time period, and which meets the requirements of Section 8 of these Rules.

nn. "**Well**" means any facility, device, or method used to withdraw groundwater from the groundwater supply within the District.

oo. "**Well owner**" means the person who owns the land upon which a well is located or is to be located, or a person who owns an easement that allows that person to drill or operate a well.

pp. "**Well operator**" means the person who operates a well or a water distribution system supplied by a well.

qq. "**Withdraw**" means the act of extracting groundwater by pumping or some other method.

rr. "**Windmill**" means a wind-driven or hand-driven device that uses a piston pump to remove groundwater.

**Rule 1.2 Purpose of Rules:**

These Rules are adopted pursuant to the directive of Section 8801.108, Special District Local Laws Code, to effectuate the provisions of Chapter 8801 and accomplish its purposes.

**Rule 1.3 Use and Effect of Rules:**

These Rules are used by the District as guides in the exercise of the powers conferred by law and in the accomplishment of the purposes of Chapter 8801. They shall not be construed as a limitation or restriction on the exercise of any discretion nor shall they be construed to deprive the District or Board of the exercise of any powers, duties, or jurisdiction conferred by law, nor shall they be construed to limit or restrict the amount and character of data or information that may be required to be collected for the proper administration of Chapter 8801.

**Rule 1.4 Amending of Rules:**

The Board may, following notice and hearing, amend these Rules or adopt new Rules from time to time.

**Rule 1.5 Headings and Captions:**

The section and other headings and captions contained in these Rules are for reference purposes only and shall not affect in any way the meaning or interpretation of these Rules.

**Rule 1.6 Construction:**

A reference to a title, chapter, or section without further identification is a reference to a title, chapter, or section of the Special District Local Laws Code. Construction of words and phrases shall be governed by the Code Construction Act, Subchapter B, Chapter 311, Government Code.

**Rule 1.7 Methods of Service Under the Rules:**

Except as otherwise expressly provided in these Rules, any notice or document required by these Rules to be served or delivered may be delivered to the recipient, or recipient's authorized representative, in person, by agent, by courier receipted delivery, by certified mail sent to the recipient's last known address, or by telephonic document transfer to the recipient's current telecopier number. Service by mail is complete upon deposit in a post office or other official depository of the United States Postal Service. Service by telephonic document transfer is complete upon transfer, except that any transfer occurring after 5:00 P.M. shall be deemed complete the following business day. If service or delivery is by mail, and the recipient has the right, or is required, to do some act within a prescribed period of time after service, three days shall be added to the prescribed period. Where service by other methods has proved

unsuccessful, the service shall be complete upon publication of the notice in a newspaper with general circulation in Harris and Galveston counties.

**Rule 1.8 Severability:**

If any one or more of the provisions contained in these Rules is for any reason held to be invalid, illegal, or unenforceable in any respect, the invalidity, illegality, or unenforceability shall not affect any other rules or provisions of these Rules, and these Rules shall be construed as if such invalid, illegal, or unenforceable rule or provision had never been contained in these Rules.

## SECTION 2. BOARD

**Rule 2.1 Purpose of Board:**

The Board was created to determine policy and regulate the withdrawal of groundwater within the boundaries of the District for the purpose of ending subsidence, which contributes to or precipitates flooding, inundation, or overflow in any area within the District, including, without limitation, rising water resulting from storms or hurricanes, and to exercise its rights, powers, and duties in a manner that will effectively and expeditiously accomplish the purposes of Chapter 8801. The Board's responsibilities include, but are not limited to, the adoption and enforcement of reasonable rules, regulations, and other orders.

**Rule 2.2 Board Structure, Officers:**

The Board consists of the members appointed and qualified as required by Chapter 8801. Each year at its regular February meeting, and if there is no February meeting, at its next regular meeting, the Board shall select one of its members to serve as Chair to preside over Board meetings and proceedings, one to serve as Vice-Chair to preside in the absence of the Chair, and one to serve as Secretary to keep a true and complete account of all meetings and proceedings of the Board. Members and officers shall serve until their successors are appointed and sworn in accordance with Chapter 8801 and these Rules.

**Rule 2.3 Meetings:**

The Board shall hold a regular meeting on the second Wednesday of each month or as the Board may establish from time to time by resolution. At the request of the Chair, or by written request of at least three members, the Board may hold special meetings. All Board meetings shall be held in accordance with the Texas Open Meetings Act. To the extent necessary for orderly conduct of proceedings, the guidelines of Parliamentary Procedure at a Glance, New Edition, by O. Garfield Jones, 1971 revised edition, or as amended, may be followed.

**Rule 2.4 Committees:**

The Chair may establish committees for formulation of policy recommendations to the Board, and appoint the chair and membership of the committees. To the extent necessary for orderly

conduct of proceedings, the guidelines of Parliamentary Procedure at a Glance, New Edition, by O. Garfield Jones, 1971 revised edition, or as amended, may be followed.

**Rule 2.5 Ex Parte Communications:**

Board members may not communicate, directly or indirectly, in connection with any issue of fact or law in any contested case before the Board, with any agency, person, party, or their representatives, except on notice and opportunity for all parties to participate. A Board member may communicate ex parte with other members of the Board but may not communicate with a quorum of the Board in violation of the Open Meetings Act. This rule does not apply to a Board member who abstains from voting on any matter in which ex parte communications have occurred.

**Rule 2.6 Rules of Procedure, Conduct, and Decorum at Meetings of the Board of Directors:**

a. All Regular, Special, and Emergency Board Meetings will be called and conducted in accordance with the provisions of the Texas Open Meetings Act, Chapter 551, Government Code.

b. Regular, Special and Emergency Board Meetings are open to the public and to representatives of the press and media. Closed Board meetings ("Executive Sessions") are not open to the public or the press and only those individuals expressly requested or ordered to be present are allowed to attend Executive Sessions.

c. Public participation at Board meetings is limited to that of observers unless the Board requests that a member of the public to address the Board or unless the person who wishes to address the Board submits a completed Public Participation Form prior to the beginning of the meeting. The Public Participation Form must list each agenda item the person wishes to address or any item the person would like the Board to consider adding to a future agenda. A sample of the Public Participation Form is attached hereto as Exhibit "A."

d. The Presiding Officer of the meeting may limit the total amount of time each member of the public has to address the Board. The time limit, if any, must be announced at the beginning of the meeting.

e. Profane, insulting or threatening language directed toward any person or racial, ethnic, or gender slurs or epithets will not be tolerated during public comments. These Rules do not prohibit public criticism of the District, including criticism of any act, omission, policy, procedure, program, or service. Violation of these rules may result in the following sanctions:

   1. cancellation of a speaker's remaining time;

   2. removal from the Board meeting;

3. such other civil or criminal sanctions as may be authorized under the Constitution, Statutes and Codes of the State of Texas.

f. These rules of procedure, conduct and decorum shall also apply to public hearings.

## SECTION 3. GENERAL MANAGER

**Rule 3.1 General Manager:**

The person employed by the Board as General Manager shall be the chief administrative officer of the District, pursuant to Chapter 8801, and shall have full authority to manage and operate the affairs of the District, subject only to Board orders. The General Manager is responsible for employing all persons necessary for the proper handling of the business and operation of the District and determining their compensation.

**Rule 3.2 Delegation of Authority:**

The General Manager may delegate duties as may be necessary to effectively and expeditiously accomplish those duties, provided, that no such delegation shall ever relieve the General Manager from responsibilities under Chapter 8801 or Board orders.

## SECTION 4. DISTRICT

**Rule 4.1 District Address:**

The District's mailing address is 1660 West Bay Area Boulevard, Friendswood, Texas 77546. The District's Office is located at 1660 West Bay Area Boulevard, within the corporate limits of the City of Houston, Harris County, Texas. Such address and office may be changed from time to time by resolution of the Board.

**Rule 4.2 Minutes and Records of the District:**

All documents, reports, records, and minutes of the District shall be available for public inspection and copying in accordance with the Texas Public Information Act. Upon written application of any person, the District will furnish copies of its public records. Persons who are furnished copies may be assessed a copying charge, pursuant to policies established by the General Manager. A list of the charges for copies will be furnished by the District.

**Rule 4.3 Certified Copies:**

Requests for certified copies must be in writing. Certified copies shall be made under the direction of the General Manager and shall be affixed with the seal of the District. Persons who

are furnished certified copies may be assessed a certification charge, in addition to the copying charge, pursuant to policies established by the General Manager.

## SECTION 5. PERMITS

### Rule 5.1 Registration of New Wells:

a. All new wells, except leachate wells, extraction wells, injection wells, monitoring wells, and dewatering wells, must be registered by the well owner, well operator, or water well driller prior to being drilled. Registration may be submitted by mail or electronically using a form provided by the District. The District staff shall review the registration and make a preliminary determination on whether the well meets the exclusions or exemptions provided in Rule 5.8, and shall inform the registrant of their determination within five business days. If the preliminary determination is that the well is excluded or exempt, the registrant may begin drilling immediately upon receiving the approved registration.

b. It shall be a violation of these Rules for a well owner, well operator, or water well driller to drill any well without the approved registration form filed with the District.

### Rule 5.2 General Permitting Policies and Procedures:

a. **Permit Requirement:** Except as provided in Rule 5.1, the well owner, well operator, or any other person acting on behalf of the well owner, must obtain a permit before a well may be drilled or operated. A well must be permitted prior to drilling and must remain permitted unless and until the well plumbing and power source are disconnected from the well head or the well casing is capped or the well is plugged. Wells must be capped or plugged in accordance with Texas Department of Licensing and Regulation rules, 16 Tex. Admin. Code § 76.104 (as amended).

b. **Applications and Application Fees:** Each original application for a water well permit, or an application for an emergency permit, or a permit renewal, or amendment requires a separate application. Application forms will be provided by the District and furnished to the applicant upon request. For permit renewals, the District will generally forward to the permittee an application for renewal prior to the expiration of the permit term. However, any failure by the District to forward a renewal application to the permittee shall not relieve the permittee of the obligation to renew the permit. The appropriate application fee, established by Board resolution, shall be paid by the applicant at the time the application is submitted to the District. After the application form and fee have been submitted, the District may request additional information to complete its review of the application. Any additional information received will become part of the application. An application shall not be considered complete until all requested information has been submitted and the application fee has been paid.

c. **Notice of Permit Hearing:** Once the District has received a completed original application for a water well permit, or application for a permit renewal or amendment, the General Manager will issue written notice indicating a date and time for a hearing on the application in accordance with these Rules, except that no notice or hearing is required for permit amendments granted by the General Manager in accordance with Rule 5.4, or emergency permits granted in accordance with Rule 5.5. The General Manager may schedule as many applications at one hearing as the General Manager deems necessary.

d. **Decision and Issuance of Permit:** In deciding whether or not to issue a permit, and in setting the terms of the permit, the Board shall consider the purpose of Chapter 8801 and all other relevant factors, including, but not limited to, (1) the District Regulatory Plan; (2) the quality, quantity, and availability of alternative water supplies at prices competitive with those charged by suppliers of alternative water supplies within the District; (3) the economic impact on the applicant from grant or denial of the permit, or the terms prescribed by the permit, in relation to the effect on subsidence that would result; (4) the applicant's use of waste prevention and water conservation measures; and (5) the applicant's compliance with the requirements of Chapter 8801 or any rule, permit, or order of the District. The Board shall grant an application for a permit to drill and operate a new well on property inside a platted subdivision if water service from a local retail public utility is not available to the lot where the well is to be located. The Board may grant an application for a permit to drill and operate a new well on property inside a platted subdivision if water service from a local retail public utility is available to the lot where the well is to be located, but the permit shall be limited to the amount authorized by the then current Regulatory Plan (Regulatory Area 1—10%, Regulatory Area 2—20%, Regulatory Area 3—20%).

The Board shall grant a permit to an applicant whenever it is found upon presentation of adequate proof that there is no other adequate and available substitute or supplemental source of alternative water supplies at prices competitive with those charged by suppliers of alternative water supplies within the District, and that compliance with any provision of Chapter 8801, or any rule of the District, will result in an arbitrary taking of property or in the closing and elimination of any lawful business, occupation, or activity, in either case without sufficient corresponding benefit or advantage to the people. Alternative water supplies are available if they can be utilized with the exercise of reasonable diligence within a reasonable time.

The Board may condition issuance of a permit on the resolution of a prior or continuing violation. The District may require an applicant to pay a civil penalty or settlement amount, or take other necessary action, to resolve a prior or continuing violation before consideration of an application for a permit.

e. **Permit Term and Renewal:** Unless specified otherwise by the Board or these Rules, permits are effective for a term ending one year from the last day of the calendar month of issuance. The permit term will be shown on the permit. The Board may

issue a permit for a term not to exceed five years. Permits may be renewed by the Board following application and hearing. Permits do not become vested rights in the permit holder, and there is no automatic right of renewal. Permits will not be renewed unless the well has been drilled at the time of application.

f. **Permit Provisions:** The permit shall list the name of the permittee, the name of the owner of the well or wells included in the permit, the amount of groundwater authorized to be withdrawn under the permit and the term of the permit. The permit shall contain the standard provisions listed in Rule 5.3 and any other special provisions or exemptions deemed appropriate. The permit may also contain provisions relating to water conservation or accountability.

g. **Revocation or Modification of Permit:** A permit does not become a vested right in the holder, and the Board may revoke or suspend a permit, or modify or amend the terms of a permit, at any time after notice and hearing.

h. **Aggregation of Withdrawal:** In issuing a permit, the authorized withdrawal for a given well may be aggregated, at the discretion of the District, with the authorized withdrawal from other permitted wells designated by the District. Geographic location of wells, operational or legal control of the wells, ownership or legal control of property where the wells are located, use of the wells for a common purpose, whether the wells are included in a regional water supplier's groundwater reduction plan, and integrated distribution systems will be considered in determining whether or not to require or allow aggregation of withdrawal. For the purpose of categorizing wells by the amount of groundwater production, where wells are permitted with an aggregate withdrawal, the total authorized withdrawal shall be assigned to the wells in aggregate, rather than allocating to each well a pro rata share or estimated production. Although all wells included within an aggregate permit are subject to the groundwater reduction requirements set forth in the District Regulatory Plan, as long as the amount of alternative water supply utilized in connection with the aggregate permit is in compliance with such groundwater reduction requirements, then the wells within the aggregate permit are deemed to be in compliance with such groundwater reduction requirements.

i. **Payment of Permit Fee:**

1. The validity of any permit issued by the District is contingent upon payment by the permittee of the applicable permit fee. Payment shall be made upon receipt of a permit fee statement.

2. If the permit fee is not received by the District within 45 calendar days of the date of the permit fee statement, the permit shall be null and void, and the District may proceed with enforcement action as provided in these Rules.

3. For permittees subject to payment of a disincentive permit fee, the Board may allow the permittee to pay the disincentive permit fee through a promissory

note or other legally binding agreement. The permittee must execute a promissory note or other agreement and pay 25 percent of the full amount within 45 calendar days of the date of the disincentive permit fee statement. The promissory note or other agreement must provide for the remaining 75 percent of the disincentive permit fee to be paid in three equal installments as follows: 25 percent due and payable within 90 days of the beginning date of the permit, 25 percent due and payable within 135 days of the beginning date of the permit, and the final 25 percent due and payable within 180 days of the beginning date of the permit. If a permittee fails to abide by the terms of the promissory note or other payment agreement, the permit shall be null and void, and the District may proceed with enforcement action as provided in these Rules. Furthermore, failure to abide by the terms of the promissory note or other payment agreement shall be grounds for denial of future permits and shall be grounds for denial of this payment arrangement on future permits. This payment arrangement is not available for amendments.

j. **Effect of Acceptance of Permit:** Acceptance of the permit by the person to whom it is issued constitutes 1) acknowledgement of, and 2) agreement to comply with all of the terms, provisions, conditions, limitations, and restrictions embodied in Chapter 8801, the permit, these Rules, and other Board orders. Failure to timely file a motion for rehearing constitutes acceptance of the permit.

**Rule 5.3 Standard Permit Provisions:**

All permits are granted subject to Chapter 8801, these Rules and orders of the Board, and the laws of the State of Texas. In addition to any special provisions or other requirements incorporated into the permit, each permit issued shall contain the following standard permit provisions:

a. This permit is granted in accordance with the provisions of Chapter 8801, and the rules and orders of the District, and acceptance of this permit constitutes an acknowledgment and agreement that the permittee will comply with Chapter 8801, all the terms, provisions, conditions, requirements, limitations, and restrictions embodied in this permit and with the rules, regulations, and orders of the District.

b. This permit confers no vested rights in the holder, and it may be revoked or suspended, or its terms may be modified or amended pursuant to the provisions of Chapter 8801. Any person who becomes the owner of a permitted well must notify the District of the name and contact information for the new owner within 90 calendar days from the date of the change in ownership.

c. The operation of the well for the authorized withdrawal shall be conducted in a non-wasteful manner.

d. Except as provided in Rule 8.2, a water meter must be installed and operated in accordance with Section 8 of the Subsidence District's rules.

e. The well owner or well operator shall keep accurate records, on a monthly basis, of the amount of groundwater withdrawn and the purpose of the withdrawal, and such records shall be provided to the permittee and available for inspection by the Subsidence District representatives. If a meter is required, the meter shall be read, and the meter reading and actual amount of pumpage recorded each month in accordance with Rule 8.7 of the Subsidence District's rules. Immediate written notice shall be given to the Subsidence District in the event a withdrawal exceeds the quantity authorized by this permit.

f. The well site shall be accessible to Subsidence District representatives for inspection, and the permittee agrees to cooperate fully in any reasonable inspection of the well and well site by the Subsidence District representative.

g. The application pursuant to which this permit has been issued is incorporated in this permit, and this permit is granted on the basis of and contingent upon the accuracy of the information supplied in that application and in any amendments to the application. A finding that false information has been supplied shall be grounds for immediate revocation of the permit. In the event of conflict between the provisions of this permit and the contents of the application, the provisions of this permit shall control.

h. Violation of this permit's terms, conditions, requirements, or special provisions, including pumping amounts in excess of authorized withdrawal, shall be punishable by civil penalties as provided by Section 8801.204, Special District Local Laws Code.

i. Wherever special provisions are inconsistent with other provisions or rules of the Subsidence District, the special provisions shall prevail.

**Rule 5.4 Permit Amendments:**

a. **Permit Amendment Increasing Authorized Withdrawal:** It is a violation of these Rules to pump any amount of water over the amount authorized by permit. Permit amendments to increase the authorized withdrawal must be filed before withdrawals exceed the permit limits.

1. **Submission of Application:** An application by a permit holder for a permit amendment increasing maximum authorized withdrawal must be submitted prior to the withdrawal of the groundwater in excess of the amount currently permitted.

2. **Basis for Amendment:** An applicant for a permit amendment increasing authorized withdrawal must present sufficient evidence that: (1) due to circumstances beyond the control of the applicant, the amount of withdrawal originally authorized has proved inadequate; and (2) no suitable alternative water supply is immediately available to the applicant.

3. **Action on Request:** The General Manager may rule on any application for increased withdrawal in an amount up to but not exceeding 20 million gallons or 25 percent of the initially authorized withdrawal, whichever is greater, without notice, hearing, or further action by the Board. Once a ruling is made by the General Manager, notice of the ruling shall be served upon the applicant. Any applicant may appeal the General Manager's ruling by filing a written request for hearing within ten business days of the date of service of the General Manager's decision. If a written request for hearing is filed, or if the application for increased withdrawal is for an amount greater than 20 million gallons and 25 percent of the initially authorized withdrawal, notice shall be issued and a hearing conducted in the manner prescribed for permit issuance.

4. **Permit Fee:** The permit fee to be assessed for any additional withdrawal granted shall be the permit fee rate in effect at the time of issuance of the amended permit multiplied by the additional withdrawal granted.

b. **Permit Amendment Decreasing Authorized Withdrawal:** An application by a permit holder for a permit amendment decreasing the authorized withdrawal must be made prior to payment, or to the due date for payment, of the current permit fee, whichever is earlier. The General Manager may grant such an amendment without notice, hearing, or further action by the Board.

**Rule 5.5 Emergency Permits:**

a. **Basis for Emergency Permit:** Upon application, the General Manager may grant an Emergency Permit that authorizes the withdrawal of water from a well not currently drilled or permitted. An applicant for an Emergency Permit must present sufficient evidence that: (i) no suitable alternative water supply is immediately available to the applicant; and (ii) an emergency need for the groundwater exists.

b. **Action on Requests:** The General Manager may rule on any application for an Emergency Permit authorizing the withdrawal of water without notice, hearing, or further action by the Board, or with such notice and hearing as the General Manager deems practical and necessary under the circumstances. The General Manager may deny an application for an Emergency Permit on any reasonable ground including, but not limited to, a determination that the applicant is currently in violation of Chapter 8801 or these Rules, or that the applicant has a previous unresolved violation on record with the District. Notice of the ruling shall be served upon the applicant. Any applicant may appeal the General Manager's ruling by filing, within ten business days of the General Manager's ruling, a written request for a hearing before the Board. The Board will hear the applicant's appeal at the next available regular Board meeting. The General Manager shall inform the Board of any Emergency Permits granted. On the motion of any Board member, and a majority concurrence in the motion, the Board may overrule the action of the General Manager.

c. **Permit Fee:** The Permit Fee to be assessed for an Emergency Permit under this Rule shall be the same as a permit issued under Rule 5.2.

d. **Term of Emergency Permit:** No Emergency Permit may be issued unless an application for a permit issued under Rule 5.2 has been filed with the District. The term of any Emergency Permit granted by the General Manager under this Rule shall extend only until the Board makes a final decision on the application for the permit under Rule 5.2.

**Rule 5.6 Fees and Payment of Fees:**

a. **Application, Registration, and other Administrative Fees**. The Board shall establish a schedule of administrative fees. The Board will attempt to set fees at an amount that does not unreasonably exceed the cost to the District of performing the function for which the fees are charged. Payment of the appropriate fee according to the fee schedule is required before any administrative action is performed by the District.

b. **Permit Fees**. The Board may establish a fee based on the term of the permit and the maximum amount of groundwater that the Board authorizes to be withdrawn from the well under a permit issued by the District. The fee rate may not exceed 110 percent of the highest rate that the City of Houston charges for water supplied to its customers in the District. Permit fees shall be paid within 45 days of the receipt of a fee statement from the District. Failure to pay the permit fees by the due date may result in suspension or revocation of the permit. The amount of a permit fee applicable to a well used for irrigating agricultural crops may not exceed 70 percent of the lowest amount assessed for non-irrigation or non-agricultural uses.

c. **Disincentive Permit Fee**. The Board may establish a fee creating a disincentive to continued over-reliance on groundwater. In addition to the base fee, the disincentive permit fee shall be applied to groundwater withdrawals that exceed the applicable percentage of total water demand for the Regulatory Area where the well is located. The disincentive permit fee shall not be assessed against groundwater withdrawn pursuant to permits included in and in compliance with a certified groundwater reduction plan. The disincentive permit fee is assessed for each year that groundwater reduction requirements are not met or will not be met in the permit as issued.

d. **Groundwater Reduction Exemptions**. A permittee that does not have an available alternative water supply, is not located in the service area of any regional water supplier, and presents an acceptable groundwater conservation plan to the District may be exempted from that Regulatory Area's groundwater reduction requirements and disincentive fees. The groundwater conservation plan must be presented to the Board of Directors for approval as part of that permittee's permit renewal no less than once every five years. The plan must provide for an annual report to the District and the Board of Directors may add requirements or adjust deadlines as needed to ensure maximum conservation is achieved. The District may, as part of that permittee's

permit renewal consideration, determine that an alternative water supply is available and therefore rescind the exemption and reduce the permit accordingly.

e. **Returned Check Fee**. The Board may establish a fee rate for checks returned to the District for insufficient funds, account closed, signature missing, or any other problem causing a check to be returned by the District's depository.

**Rule 5.7 Permit Fee Rebates:**

a. **Submission of Application:** An application for a permit fee rebate must be filed within 90 calendar days of permit termination and must be for an amount equal to or greater than the amount set by the Board in the District's fee schedule. Any application filed later than 90 calendar days after permit termination, or for a rebate of less than the minimum amount, will not be considered or granted. A regional water supplier is not entitled to a permit fee rebate. Rebate application forms will be provided by the District upon request. The appropriate application fee, established by Board resolution, shall be paid by the applicant at the time the application is submitted to the District.

b. **Basis for Rebate:** An applicant for a permit fee rebate must present sufficient evidence that: (1) a water meter was installed and operating during the entire permit term; (2) the amount of actual withdrawal during the permit term was less than the amount of authorized withdrawal; and, (3) if the well is a public supply well, the ratio of water sold or otherwise accounted for to the total water produced is at least 85%.

c. **Action on Application:** The General Manager may rule on applications for permit fee rebates without notice, hearing, or further action by the Board. Once a ruling is made by the General Manager, notice of the ruling shall be served upon the applicant. An applicant may appeal the General Manager's ruling by filing, within ten business days of the date of service of the General Manager's ruling, a written request for a hearing before the Board. The Board will hear the applicant's appeal at the next regular Board meeting.

**Rule 5.8 Exclusions and Exemptions:**

a. **Single-Family Dwelling Wells Excluded:** A well with a casing diameter of less than five inches that serves only a single-family dwelling is excluded from the permit requirements of these Rules. Serving only a single-family dwelling means the well supplies groundwater for domestic use inside one home located on property that does not have an available alternative water supply. Domestic use includes water used inside the home for any purpose and may also include use outside the home for landscape irrigation, irrigating a garden or providing water to domestic livestock. A new well to be located on property that has an available alternative water supply and is located inside a platted subdivision does not qualify for this exemption and must obtain a drilling and operating permit in accordance with Rule 5.2.

b. **Exemptions:** The permit requirements do not apply to: (i) windmills serving a well with a casing diameter of four inches nominal or less, (ii) monitoring wells, (iii) leachate wells (iv) extraction wells, (v) injection wells, or (vi) dewatering wells.

**Rule 5.9 Over-Conversion Credits:**

a. **Earning Over-Conversion Credits:** Permittees in Regulatory Area 3 who exceed the District's groundwater reduction requirements for that area may request over-conversion credits. Over-conversion credits will be issued to the permittee for an amount equal to the amount of alternative water supply utilized over and above the amount of reduction required in the District Regulatory Plan as long as the total over-conversion credit requested exceeds 10 million gallons. For the purpose of determining the amount of over-conversion credits to be issued, the amount of conversion required will be determined at the end of the permit term based on actual total water demand. Over-conversion credits may be used to increase authorized withdrawals that exceed the groundwater reduction requirements without having to pay a disincentive permit fee for the amount of over-conversion credits submitted. The regular permit fee must be paid for the total amount of groundwater withdrawals authorized by the issued permit, including the amount of over-conversion credits requested or submitted.

b. **Transfer of Over-Conversion Credits**: Permittees with approved groundwater reduction plans may transfer over-conversion credits to another permittee with an approved groundwater reduction plan within Regulatory Area Three. The transfer becomes effective upon filing a registration with the General Manager of the transfer. A transfer of over-conversion credits must meet the following conditions:

1. the receiving permittee must submit an over-conversion credit transfer registration and pay the associated fee;

2. any transferred over-conversion credits must be utilized within 12 months of the date the transfer is effective; and

3. transferred over-conversion credits may only be used for 10% or less of the permittee's total water demand for the applicable permit term.

**Rule 5.10 Permit Reconciliation Process:**

a. **Qualifications and Exemptions:** The permit reconciliation process is only available to regional water suppliers. Participation in the permit reconciliation process exempts the permittee from the following:

1. the requirement to file permit amendment applications to alter the amount of groundwater authorized to be withdrawn under the permit;

2. the requirement to notify the District in the event a withdrawal exceeds the quantity authorized by the permit.

b. **Permit Application and Hearing:** If there is a difference in the requested permit amount and the permit amount recommended by the General Manager, the Hearing Examiner will accept testimony and make a recommendation to the Board based on the merits of the request.

c. **Annual Reconciliation Report:** Within 90 days after the end of the permit term the regional water supplier must submit documentation, along with detailed supporting information, on a form and in a format required by the General Manager, including:

1. total groundwater withdrawn during the permit term; and

2. total alternative water supply actually used during the permit term.

d. **Staff review of reconciliation documents:** The General Manager shall review the annual reconciliation report to determine if a reconciliation settlement must be paid or over-conversion credits issued.

e. **Reconciliation Settlement:** If the General Manager's review of the annual reconciliation report shows that the regional water supplier exceeded the **amount authorized** to be withdrawn on the permit, the permittee shall pay a reconciliation settlement in an amount equal to two times the current permit fee rate for the amount of the excess. If the General Manager's review of the annual reconciliation report shows that the regional water supplier exceeded the **authorized percentage** of total water demand listed on the permit the permittee shall pay a reconciliation settlement in an amount equal to the current disincentive permit fee rate for the amount of the excess. The regional water supplier may submit over-conversion credits or groundwater credits equal to the excess withdrawal amount in lieu of payment of a reconciliation settlement, subject to the limitations for each credit and in accordance with District policy. A regional water supplier is not entitled to a permit fee rebate (Rule 5.7).

f. **Permit provisions:** The District may include a special provision designating the permittee as a regional water supplier on the permit or permit renewal issued by the District.

g. **Immunity:** A regional water supplier that meets all the requirements of this rule shall be immune from enforcement actions for exceeding 1) the amount authorized to be withdrawn on the permit or 2) the authorized percentage of actual total water demand listed on the permit. This immunity shall be waived for failure to pay the reconciliation settlement amount within 45 days of the date on the invoice.

## SECTION 6: OTHER DISTRICT ACTIONS AND DUTIES

**Rule 6.1 District Regulatory Plan:**

The District Regulatory Plan specifies the acts, procedures, performance, and avoidance necessary to prevent subsidence, and forms the basis of permitting decisions and permit requirements imposed by the Board. If the Board considers a new plan necessary or desirable, based on evidence presented at hearing, a new plan will be adopted. A plan, once adopted, shall remain in effect until the adoption of a new plan.

**Rule 6.2 Annual Groundwater Pumpage Reports:**

a. Before January 31st of each year, each well owner required to have a permit shall submit to the District and to the regional water supplier, if the well operates pursuant to that regional water supplier's aggregate permit, a report, on a form provided by the District, stating the following: (1) name of the permittee and the name of the well owner(s); (2) the well number(s); (3) the total amount of groundwater produced by the well or aggregate system during the immediately preceding calendar year (January through December); (4) the amount and source of alternative water supply used; and (5) any other information requested by the District pursuant to the provisions of Chapter 8801.

b. Before March 15th of each year, each regional water supplier shall submit to the District a report, on a form provided by the District, stating the following: (1) name of the permittee; (2) the well numbers included in the permittee's aggregate permit; (3) the total amount of groundwater produced by the aggregate system during the immediately preceding calendar year (January through December); (4) the total amount of groundwater produced by the aggregate system during each separate month of the immediately preceding calendar year; (5) the amount and source of alternative water supply used; and (6) any other information requested by the District pursuant to the provisions of Chapter 8801.

## SECTION 7: HEARINGS

### Rule 7.1 Types of Hearings:

The District conducts two general types of hearings: hearings involving permit matters, in which the rights, duties, or privileges of a party are determined after an opportunity for an adjudicative hearing, and rulemaking hearings involving matters of general applicability that implement, interpret, or prescribe the law or District policy, or that describe the procedure or practice requirements of the District. Any matter designated for hearing before the Board may be referred by the Board for hearing before a Hearings Examiner.

a. **Permit Hearings:**

1. **Permit Applications, Amendments, and Revocations:** The District will hold hearings on original permit applications, applications for permit renewals or amendments, and permit revocations or suspensions. Hearings involving permit matters are to be scheduled before a Hearings Examiner.

2. **Hearings on Motions for Rehearing:** Motions for Rehearing will be heard by the Board pursuant to Rule 7.8 (b).

b. **Rulemaking Hearings:**

1. **Annual Groundwater Hearing:** The Board will hold a hearing by May 31st of each year to determine the effects of groundwater withdrawal during the preceding calendar year on the subsidence of land within the District.

2. **Permit Fee Hearing:** The Board will hold a hearing to determine the permit fee rate to be collected by the District, based on the amount of groundwater that a permittee is authorized to withdraw under a permit.

3. **District Rule or Regulatory Plan:** The Board will hold a hearing to consider adoption of rules or a new District Regulatory Plan.

4. **Other Matters:** A public hearing may be held on any matter within the jurisdiction of the Board if the Board or the General Manager, when authorized by the Board, deems a hearing to be in the public interest, or if the Board or the General Manager, when authorized by the Board, deems a hearing necessary to effectively carry out the duties and responsibilities of the District.

### Rule 7.2 Notice and Scheduling of Hearings:

The General Manager shall be responsible for giving notice of all hearings in the following manner:

a. Written notice of a hearing other than a hearing on a permit application shall be given to each regional water supplier, county and municipal government within the District. Notice shall also be given to each person who has previously requested copies of hearing notices pursuant to the procedures set forth in subsection (b), and any other person the General Manager deems appropriate. The date of delivery or mailing of notice shall be not less than five business days before the date set for the hearing. Notice of hearing shall be published at least once in a newspaper of general circulation in each county within the District. The date of publication shall be not less than five business days before the date set for the hearing. A copy of the notice shall be provided to each county clerk to be posted at the county courthouse of each county within the District in the place where notices are usually posted. The date of posting shall be not less than five business days before the date of the hearing. In addition to the notices required above, where a hearing involves a permit matter, written notice of the date, time, and location of the hearing shall be given to the applicant by regular mail or by certified mail, return receipt requested, at least five business days before the day of hearing. Notices of public hearings shall inform persons when an order to convert to alternative water supplies is to be considered.

b. Any person having an interest in the subject matter of a hearing or hearings may receive written notice of such hearing or hearings by submitting a request, in writing, addressed to the General Manager. The request shall identify with as much specificity as possible the hearing or hearings of which written notice is requested. The request shall remain valid for a period of one year from the date of the request, after which time a new request must be submitted. Failure to provide written notice under this section does not invalidate any action taken by the Board.

c. Hearings will normally be held at the District Office; however, the Board may from time to time change or schedule dates, times, and places for hearings. The General Manager is authorized to schedule hearings involving permit matters at such dates, times, and places as the General Manager deems administratively feasible and appropriate. Other hearings shall be scheduled at the dates, times, and locations set at a regular Board meeting.

**Rule 7.3 General Procedures:**

a. **Authority of Presiding Officer:** The presiding officer may conduct the hearing or other proceeding in the manner the presiding officer deems most appropriate for the particular proceeding. The presiding officer has the authority to:

1. set hearing dates, other than the initial hearing date for permit matters set by the General Manager in accordance with Rule 7.2 (c);

2. convene the hearing at the time and place specified in the notice for public hearing;

3. establish the jurisdiction of the District concerning the subject matter under consideration;

4. rule on motions and on the admissibility of evidence and amendments to pleadings;

5. designate and align parties and establish the order for presentation of evidence;

6. administer oaths to all persons presenting testimony;

7. examine witnesses;

8. issue subpoenas when required to compel the attendance of witnesses or the production of papers and documents;

9. require the taking of depositions and compel other forms of discovery under these Rules;

10. ensure that information and testimony are introduced as conveniently and expeditiously as possible, without prejudicing the rights of any party to the proceeding;

11. conduct public hearings in an orderly manner in accordance with these Rules;

12. recess any hearing from time to time and place to place;

13. reopen the record of a hearing for additional evidence when necessary to make the record more complete; and

14. exercise any other appropriate powers necessary or convenient to effectively carry out the responsibilities of presiding officer.

b. **Registration Forms:** Each individual attending a hearing or other proceeding of the District shall submit a form giving the following information: name; address; whether the person plans to testify; and any other information relevant to the hearing or other proceeding.

c. **Appearance; Representative Capacity:** Any interested person may appear in person or may be represented by counsel, engineer, or other representative, provided the representative is fully authorized to speak and act for the principal. Such person or representative may present evidence, exhibits, or testimony, or make an oral presentation in accordance with the procedures applicable to the particular proceeding. Any partner may appear on behalf of the partnership. A duly authorized officer or agent of a public or private corporation, political subdivision, governmental agency, municipality, association, firm, or other entity may appear for the entity. A

fiduciary may appear for a ward, trust, or estate. A person appearing in a representative capacity may be required to prove proper authority.

d. **Alignment of Parties; Number of Representatives Heard:** Participants in a proceeding may be aligned according to the nature of the proceeding and their relationship to it. The presiding officer may require the participants of an aligned class to select one or more persons to represent them in the proceeding or on any particular matter or ruling and may limit the number of representatives heard, but shall allow at least one representative of an aligned class to be heard in the proceeding or on any particular matter or ruling.

e. **Appearance by Applicant or Movant:** The applicant, movant, or party requesting the hearing or other proceeding or a representative should be present at the hearing or other proceeding. Failure to so appear may be grounds for withholding consideration of a matter and dismissal without prejudice or may require the rescheduling or continuance of the hearing or other proceeding if the presiding officer deems it necessary in order to fully develop the record.

f. **Reporting:** Hearings and other proceedings shall be recorded on audio cassette tape or, at the discretion of the presiding officer, may be recorded by a certified shorthand reporter. The District does not prepare transcriptions for the public of hearings or other proceedings recorded on audio cassette on District equipment, but will arrange for a party at interest to have access to the recording. Subject to availability of space, any party at interest may, at its own expense, arrange for a reporter to report the hearing or other proceeding or for recording of the hearing or other proceeding. The cost of reporting or transcribing a permit hearing may be assessed in accordance with Rule 7.5 (b). If a proceeding other than a permit hearing is recorded by a reporter, and a copy of the transcript of testimony is ordered by any person, the testimony shall be transcribed and the original transcript filed with the papers of the proceeding at the expense of the person requesting the transcript of testimony. Copies of the transcript of testimony of any hearing or other proceeding thus reported may be purchased from the reporter.

g. **Continuance:** The presiding officer may continue hearings or other proceedings from time to time and from place to place without the necessity of publishing, serving, mailing, or otherwise issuing a new notice. If a hearing or other proceeding is continued and a time and place (other than the District Office) for the hearing or other proceeding to reconvene are not publicly announced at the hearing or other proceeding by the presiding officer before it is recessed, a notice of any further setting of the hearing or other proceeding shall be delivered at a reasonable time to all parties, persons who have requested notice of the hearing pursuant to Rule 7.2 (b), and any other person the presiding officer deems appropriate, but it is not necessary to post at the county courthouses or publish a newspaper notice of the new setting.

h. **Filing of Documents; Time Limit:** Applications, motions, exceptions, communications, requests, briefs, or other papers and documents required to be filed

under these Rules or by law must be received in hand at the District's Office within the time limit, if any, set by these Rules or by the presiding officer for filing. Mailing within the time period is insufficient if the submissions are not actually received by the District within the time limit.

i. **Computing Time:** In computing any period of time specified by these Rules, by a presiding officer, by Board orders, or by law, the day of the act, event, or default after which the designated period of time begins to run is not included, but the last day of the period computed is included, unless the last day is a Saturday, Sunday or legal holiday as determined by the General Manager or the Board, in which case the period runs until the end of the next day which is neither a Saturday, Sunday, nor a legal holiday.

j. **Affidavit:** Whenever the making of an affidavit by a party to a hearing or other proceeding is necessary, it may be made by the party or the party's representative or counsel. This Rule does not dispense with the necessity of an affidavit being made by a party when expressly required by statute.

k. **Broadening the Issues:** No person shall be allowed to appear in any hearing or other proceeding that in the opinion of the presiding officer is for the sole purpose of unduly broadening the issues to be considered in the hearing or other proceeding.

l. **Conduct and Decorum:** Every person, party, representative, witness, and other participant in a proceeding shall conform to ethical standards of conduct and shall exhibit courtesy and respect for all other participants. No person may engage in any activity during a proceeding that interferes with the orderly conduct of District business. If in the judgment of the presiding officer, a person is acting in violation of this provision, the presiding officer shall first warn the person to refrain from engaging in such conduct. Upon further violation by the same person, the presiding officer may exclude that person from the proceeding for such time and under such conditions as the presiding officer deems necessary.

**Rule 7.4 Uncontested Permit Hearings Procedures:**

a. **Informal Hearings:** Permit hearings may be conducted informally when, in the judgment of the Hearings Examiner, the conduct of a proceeding under informal procedures will result in a savings of time or cost to the parties, lead to a negotiated or agreed settlement of facts or issues in controversy, and not prejudice the rights of any party.

b. **Agreement of Parties:** If, during an informal proceeding, all parties reach a negotiated or agreed settlement which, in the judgment of the Hearings Examiner, settles the facts or issues in controversy, the proceeding shall be considered an uncontested case and the Hearings Examiner shall summarize the evidence, make findings of fact and conclusions of law based on the existing record and any other evidence submitted by the parties at the hearing.

c. **Decision to Proceed as Uncontested or Contested Case:** If the parties do not reach a negotiated or agreed settlement of the facts and issues in controversy or if any party contests a staff recommendation, and the Hearings Examiner determines these issues will require extensive discovery proceedings, the Hearings Examiner shall declare the case to be contested and convene a prehearing conference as set forth in Rule 7.5. A request for a contested case hearing must be filed prior to the conclusion of the public hearing. The Hearings Examiner may also recommend issuance of a temporary permit for a period not to exceed four months, with any special provisions that the Hearings Examiner deems necessary, for the purpose of completing the contested case process. Any case not declared a contested case under this provision shall be an uncontested case and the Hearings Examiner shall summarize the evidence, make findings of fact and conclusions of law, and make appropriate recommendations to the Board.

**Rule 7.5 Contested Permit Hearings Procedures:**

a. **Prehearing Conference:** A prehearing conference may be held to consider any matter which may expedite the hearing or otherwise facilitate the hearing process.

1. **Matters Considered:** Matters which may be considered at a prehearing conference include, but are not limited to: (1) the designation of parties; (2) the formulation and simplification of issues; (3) the necessity or desirability of amending applications or other pleadings; (4) the possibility of making admissions or stipulations; (5) the scheduling of discovery; (6) the identification of and specification of the number of witnesses; (7) the filing and exchange of prepared testimony and exhibits; and (8) the procedure at the hearing.

2. **Notice:** A prehearing conference may be held at a date, time, and place stated in a separate notice given in accordance with Rule 7.2, or at the date, time, and place for hearing stated in the notice of public hearing, and may be continued from time to time and place to place, at the discretion of the Hearings Examiner.

3. **Conference Action:** Action taken at a prehearing conference may be reduced to writing and made a part of the record or may be stated on the record at the close of the conference.

b. **Assessing Reporting and Transcription Costs:** Upon the timely request of any party, or at the discretion of the Hearings Examiner, the Hearings Examiner may assess reporting and transcription costs to one or more of the parties. The Hearings Examiner shall consider the following factors in assessing reporting and transcription costs:

1. the party who requested the transcript;

2. the financial ability of the party to pay the costs;

3. the extent to which the party participated in the hearing;

4. the relative benefits to the various parties of having a transcript;

5. the budgetary constraints of a governmental entity participating in the proceeding; and

6. any other factor that is relevant to a just and reasonable assessment of costs.

In any proceeding where the assessment of reporting or transcription costs is an issue, the Hearings Examiner shall provide the parties an opportunity to present evidence and argument on the issue. A recommendation regarding the assessment of costs shall be included in the Hearings Examiner's report to the Board.

c. **Designation of Parties:** Parties to the hearing shall be designated on the first day of hearing or at such other time as the Hearings Examiner determines. The General Manager and any person specifically named in a matter are automatically designated parties. Persons other than the General Manager or a person specifically named must, in order to be admitted as a party, appear at the proceeding in person or by representative and seek to be designated. After parties are designated, no other person may be admitted as a party unless, in the judgment of the Hearings Examiner, there exists good cause and the hearing will not be unreasonably delayed.

d. **Rights of Designated Parties:** Subject to the direction and orders of the Hearings Examiner, parties have the right to conduct discovery, present a direct case, cross-examine witnesses, make oral and written arguments, obtain copies of all documents filed in the proceeding, receive copies of all notices issued by the District concerning the proceeding, and otherwise fully participate in the proceeding.

e. **Persons Not Designated Parties:** At the discretion of the Hearings Examiner, persons not designated as parties to a proceeding may submit comments or statements, orally or in writing. Comments or statements submitted by non-parties may be included in the record, but shall not be considered by the Hearings Examiner as evidence.

f. **Furnishing Copies of Pleadings:** After parties have been designated, a copy of every pleading, request, motion, or reply filed in the proceeding shall be provided by the author to every other party or the party's representative. A certification of this fact shall accompany the original instrument when filed with the District. Failure to provide copies may be grounds for withholding consideration of the pleading or the matters set forth therein.

g. **Interpreters for Deaf Parties and Witnesses:** If a party or subpoenaed witness in a contested case is deaf, the District shall provide an interpreter whose qualifications are approved by the State Commission for the Deaf and Hearing Impaired to interpret the proceedings for that person. Deaf person means a person who has a hearing impairment, whether or not the person also has a speech impairment, that inhibits the person's comprehension of the proceedings or communication with others.

h. **Agreements to be in Writing:** No agreement between parties or their representatives affecting any pending matter will be considered by the Hearings Examiner unless it is in writing, signed, and filed as part of the record, or unless it is announced at the hearing and entered of record.

i. **Discovery:** Discovery shall be conducted upon such terms and conditions, and at such times and places, as directed by the Hearings Examiner. Unless specifically modified by these Rules or by order of the Hearings Examiner, discovery shall be governed by, and subject to the limitations set forth in, the Texas Rules of Civil Procedure. In addition to the forms of discovery authorized under the Texas Rules of Civil Procedure, the parties may exchange informal requests for information, either by agreement or by order of the Hearings Examiner.

j. **Discovery Sanctions:** If the Hearings Examiner finds a party is abusing the discovery process in seeking, responding to, or resisting discovery, the Hearings Examiner may:

   1. suspend processing of the application for a permit if the applicant is the offending party;

   2. disallow any further discovery of any kind or a particular kind by the offending party;

   3. rule that particular facts shall be regarded as established against the offending party for the purposes of the proceeding, in accordance with the claim of the party obtaining the discovery ruling;

   4. limit the offending party's participation in the proceeding;

   5. disallow the offending party's presentation of evidence on issues that were the subject of the discovery request; and

   6. recommend to the Board that the hearing be dismissed with or without prejudice.

k. **Ex Parte Communications:** The Hearings Examiner may not communicate, directly or indirectly, in connection with any issue of fact or law with any agency, person, party, or their representatives, except on notice and opportunity for all parties to participate. This provision shall not prevent communications with staff not directly

involved in the hearing to utilize the special skills and knowledge of the agency in evaluating the evidence.

l. **Compelling Testimony; Swearing Witnesses and Subpoena Power:** The Hearings Examiner may compel the testimony of any person which is necessary, helpful, or appropriate to the hearing. The Hearings Examiner shall administer the oath in a manner calculated to impress the witness with the importance and solemnity of the promise to adhere to the truth. The Hearings Examiner may issue subpoenas to compel the testimony of any person and the production of books, papers, documents, or tangible things, in the manner provided in the Texas Rules of Civil Procedure.

m. **Evidence:** Except as modified by these Rules, the Texas Rules of Civil Evidence shall govern the admissibility and introduction of evidence; however, evidence not admissible under the Texas Rules of Civil Evidence may be admitted if it is of the type commonly relied upon by reasonably prudent persons in the conduct of their affairs. In addition, evidence may be stipulated by agreement of all parties.

n. **Written Testimony:** When a proceeding will be expedited and the interest of the parties will not be prejudiced substantially, testimony may be received in written form. The written testimony of a witness, either in narrative or question and answer form, may be admitted into evidence upon the witness being sworn and identifying the testimony as a true and accurate record of what the testimony would be if given orally. The witness shall be subject to clarifying questions and to cross-examination, and the prepared testimony shall be subject to objection.

o. **Requirements for Exhibits:** Exhibits of a documentary character shall be of a size which will not unduly encumber the files and records of the District. All exhibits shall be numbered and, except for maps and drawings, shall not exceed 8 1/2 by 11 inches in size.

p. **Abstracts of Documents:** When documents are numerous, the Hearings Examiner may receive in evidence only those which are representative and may require the abstracting of relevant data from the documents and the presentation of the abstracts in the form of an exhibit. Parties shall have the right to examine the documents from which the abstracts are made.

q. **Introduction and Copies of Exhibits:** Each exhibit offered shall be tendered for identification and placed in the record. Copies shall be furnished to the Hearings Examiner and to each of the parties, unless the Hearings Examiner rules otherwise.

r. **Excluding Exhibits:** In the event an exhibit has been identified, objected to, and excluded, it may be withdrawn by the offering party. If withdrawn, the exhibit will be returned and the offering party waives all objections to the exclusion of the exhibit. If not withdrawn, the exhibit shall be included on the record for the purpose of preserving the objection to excluding the exhibit.

s. **Official Notice:** The Hearings Examiner may take official notice of all facts judicially cognizable. In addition, official notice may be taken of generally recognized facts within the area of the District's specialized knowledge.

t. **Documents in District Files:** Extrinsic evidence of authenticity is not required as a condition precedent to admissibility of documents maintained in the files and records of the District.

u. **Oral Arguments:** At the discretion of the Hearings Examiner, oral arguments may be heard at the conclusion of the presentation of evidence. Reasonable time limits may be prescribed. The Hearings Examiner may require or accept written briefs in lieu of, or in addition to, oral arguments. When the matter is presented to the Board for final decision, further oral arguments may be heard by the Board.

**Rule 7.6 Conclusion of the Hearing; Report:**

a. **Closing the Record; Final Report:** At the conclusion of the presentation of evidence and any oral argument, the Hearings Examiner may either close the record or keep it open and allow the submission of additional evidence, exhibits, briefs, or proposed findings and conclusions from one or more of the parties. No additional evidence, exhibits, briefs, or proposed findings and conclusions may be filed unless permitted or requested by the Hearings Examiner. After the record is closed, the Hearings Examiner shall prepare a report to the Board. The report shall include a summary of the evidence, together with the Hearings Examiner's findings and conclusions and recommendations for action. Upon completion and issuance of the Hearings Examiner's report, a copy shall be submitted to the Board and delivered to each party to the proceeding. In a contested case, delivery to the parties shall be by certified mail.

b. **Exceptions to the Hearings Examiner's Report; Reopening the Record:** Prior to Board action any party in a contested case may file written exceptions to the Hearings Examiner's report, and any party in an uncontested case may request an opportunity to make an oral presentation of exceptions to the Board. Upon review of the report and exceptions, the Hearings Examiner may reopen the record for the purpose of developing additional evidence, or may deny the exceptions and submit the report and exceptions to the Board. The Board may, at any time and in any case, remand the matter to the Hearings Examiner for further proceedings.

c. **Time for Board Action on Certain Permit Matters:** In the case of hearings involving original permit applications, or applications for permit renewals or amendments, the Hearings Examiner's report should be submitted, and the Board should act, within 60 calendar days after the close of the hearing record.

**Rule 7.7 Rulemaking Hearings Procedures:**

a. **General Procedures:** The presiding officer shall conduct the rulemaking hearing in the manner the presiding officer deems most appropriate to obtain all relevant information pertaining to the subject of the hearing as conveniently, inexpensively, and expeditiously as possible. The presiding officer may follow the guidelines of Parliamentary Procedure at a Glance, New Edition, O. Garfield Jones, 1971 revised edition, or as amended.

b. **Submission of Documents:** Any interested person may submit written statements, protests or comments, briefs, affidavits, exhibits, technical reports, or other documents relating to the subject of the hearing. Such documents shall be submitted no later than the time of the hearing, as stated in the notice of hearing given in accordance with Rule 7.2; provided, however, that the presiding officer may grant additional time for the submission of documents.

c. **Oral Presentations:** Any person desiring to testify on the subject of the hearing shall so indicate on the registration form provided at the hearing. The presiding officer shall establish the order of testimony and may limit the number of times a person may speak, the time period for oral presentations, and the time period for raising questions. In addition, the presiding officer may limit or exclude cumulative, irrelevant, or unduly repetitious presentations.

d. **Conclusion of the Hearing; Closing the Record; Hearings Examiner's Report:** At the conclusion of the testimony, and after the receipt of all documents, the presiding officer may either close the record, or keep it open to allow the submission of additional information. If the presiding officer is a Hearings Examiner, the Hearings Examiner shall, after the record is closed, prepare a report to the Board. The report shall include a summary of the subject of the hearing and the public comments received, together with the Hearings Examiner's recommendations for action. Upon completion and issuance of the Hearings Examiner's report, a copy shall be submitted to the Board. Any interested person who so requests in writing shall be notified when the report is completed, and shall be furnished a copy of the report.

e. **Exceptions to the Hearing Examiner's Report; Reopening the Record:** Any interested person may make exceptions to the Hearings Examiner's report, and the Board may reopen the record, in the manner prescribed in Rule 7.6 (b).

**Rule 7.8 Final Decision; Appeal:**

a. **Board Action:** After the record is closed and the matter is submitted to the Board, the Board may then take the matter under advisement, continue it from day to day, reopen or rest the matter, refuse the action sought or grant the same in whole or part, or take any other appropriate action. The Board action takes effect at the conclusion of the meeting and is not affected by a motion for rehearing.

b. **Requests for Rehearing:** Any decision of the Board on a matter may be appealed by requesting a rehearing before the Board within 20 calendar days of the Board's decision. Such a rehearing request must be filed at the District office in writing and must state clear and concise grounds for the request. Such a rehearing request is mandatory with respect to any decision or action of the Board before any appeal may be brought under Section 8801.202, Special District Local Laws Code. The Board's decision is final if no request for rehearing is made within the specified time, or upon the Board's denial of the request for rehearing, or upon rendering a decision after rehearing. If the rehearing request is granted by the Board, the date of the rehearing will be within 45 calendar days thereafter, unless otherwise agreed to by the parties to the proceeding. The failure of the Board to grant or deny the request for rehearing within 90 calendar days of submission shall be deemed to be a denial of the request.

## SECTION 8: METERING

### Rule 8.1 Water Meter Required:

Except as provided in Rule 8.2, a water meter is required for all permitted wells and at the point of connection for all alternative water supplies used to meet District regulatory requirements.

a. **Approved Meters:** The meter must be mechanically driven, magnetic, or ultrasonic and have a dedicated, digital totalizing register. The digital totalizer must not be resettable and must be capable of a maximum reading greater than the maximum expected pumpage or reuse discharge during the permit term. Battery-operated registers must have a minimum five-year life expectancy and must be permanently hermetically sealed. Battery-operated registers must visibly display the expiration date of the battery. Ultrasonic meters must use Doppler or transit-time methods of measurement. All meters must be installed in line and meet the requirements for registration accuracy set forth in the American Water Works Association standards for cold-water meters.

b. **Installation:** The water meter must be installed according to the manufacturer's published specifications in effect at the time of the meter installation, or its accuracy must be verified by the well owner in accordance with Rule 8.5. If no specifications are published, there must be a minimum length of five pipe diameters of straight pipe upstream of the water meter and one pipe diameter of straight pipe downstream of the water meter. These lengths of straight pipe must contain no check valves, tees, gate valves, back flow preventers, blow-off valves, or any other fixture other than those flanges or welds necessary to connect the straight pipe to the meter. In addition, the pipe must be completely full of water throughout the region.

c. **Bypasses:** Bypasses must be separately metered.

**Rule 8.2 Water Meter Exceptions:** The following types of wells and alternative water supply connections are exempt from Rule 8.1 meter requirements:

a. Windmills;

b. Alternative water supply connections that are metered pursuant to a retail, wholesale or other agreement, or a rate order duly adopted by a regional water supplier, that requires payment based on the total amount of water supplied through the meter; and

c. Wells five inches nominal or less in inside casing diameter where there is a reasonable basis to determine the pumpage will not exceed one million gallons per year, the well is not connected with any other well or aggregate system, and the groundwater will not be used for any outdoor use or filling ponds.

**Rule 8.3 Verification of Well Size:**

In those cases where an accurate measure of inside casing diameter is required to determine whether a well may be exempted from metering or permitting, the District may require the well owner, at the well owner's expense, to remove any obstructions to accurate measurement. Such obstructions include, but are not limited to, well seals, electrical wire and conduit, pumps, and pump column.

**Rule 8.4 Metering Aggregate Withdrawal:**

Where wells are permitted in the aggregate, one or more water meters may be used for the aggregate well system if the water meter or meters are installed so as to measure the groundwater production from all wells covered by the aggregate permits.

**Rule 8.5 Accuracy Verification:**

a. **Testing:** A well owner required to install a meter shall, at the well owner's expense, test the accuracy of each water meter as installed in place and submit a certificate of the test results. The certificate shall be on a form provided by the District. Meters shall be tested by a third party qualified to measure meter accuracy. The General Manager may authorize the tests to be performed by the well owner or well owner's employees or consultants if the well owner demonstrates, to the General Manager's satisfaction, that the well owner has the necessary equipment and expertise to perform such tests. The third party shall be approved by the General Manager prior to the test. Except as otherwise provided herein, certification tests are required for all turbine and propeller type meters as follows:

| **Meter Diameter** | **Testing Interval** |
| --- | --- |
| Less than 6 inches | every 3 years |
| 6 inches and greater | every year |

If the test results indicate meter accuracy outside the range of 97% to 103% of the actual flow, then appropriate steps shall be taken by the well owner within 90 calendar days from the date of the test to recalibrate the meter to 100% of actual flow, or to repair or replace the water meter. The General Manager may extend the 90-day deadline upon good cause shown. The District, at its own expense, may undertake random tests and other investigations at any time for the purpose of verifying water meter readings. If the District's tests or investigations reveal that a water meter is not registering within an accuracy of 97% to 103% of the actual flow, or is not properly recording the total flow, the well owner shall reimburse the District for the cost of those tests and investigations, and the well owner shall take appropriate steps to remedy the problem within 90 calendar days from the date of the tests or investigations. If a water meter or related piping or equipment is tampered with or damaged so that the measurement accuracy is impaired, the District may require the well owner, at the well owner's expense, to take appropriate steps to remedy any problem, and to retest the water meter within 90 calendar days from the date the problem is discovered.

b. **Meter Testing and Calibration Equipment:** Only equipment capable of accuracy results of plus or minus one percent of actual flow with repeatable accuracy of ½ of 1 percent may be used to calibrate or test meters.

c. **Calibration of Testing Equipment:** All approved testing equipment must be calibrated annually by an independent testing laboratory or company capable of accuracy verification. A copy of the accuracy verification must be presented to the District before any further tests may be performed using that equipment.

d. **Positive Displacement Meters:** Positive displacement meters are not required to be tested but must be replaced within 90 days if the meter fails.

**Rule 8.6: Removal of Meter for Repairs:**

The water meter may be removed for repairs and the well kept operational provided that the District is notified prior to removal, and the repairs are completed on a timely basis. The readings on the meter must be recorded prior to removal and again upon reinstallation. The monthly record of pumpage will include an estimate of groundwater withdrawn during the period the meter was not installed and operating.

**Rule 8.7 Water Meter Readings:**

The owner of a permitted well must read each water meter and record the meter reading and the actual amount of pumpage in a log at least monthly. The logs containing the periodic recordings shall be available for inspection by the District at reasonable business hours and copies of such logs must be furnished to the District upon request. The well owner shall read the meter within 15 days before or after the date the permit expires and shall within 30 days after the expiration of the permit, report the readings to either: 1) the regional water supplier, if the well is part of the

regional water supplier's aggregate permit, or 2) the District, if the well is not part of a regional water supplier's aggregate permit.

## SECTION 9: INVESTIGATIONS AND ENFORCEMENT

### Rule 9.1 Notice and Access to Property:

Board Members, the General Manager, and District agents and employees are entitled to access to all property within the District to carry out technical and other investigations necessary to the implementation of Chapter 8801 and these Rules. Prior to entering upon property for the purpose of conducting an investigation, the person seeking access shall give notice in writing or in person or by telephone to the owner, lessee, or operator, agent, or employee of the well owner or lessee, as determined by information contained in the application or other information on file with the District. Notice is not required if prior permission has been granted to enter without notice. Inhibiting or prohibiting access to any Board Member, the General Manager, or District agents or employees who are attempting to conduct an investigation under Chapter 8801 or these Rules shall constitute a violation and shall subject the person who is inhibiting or prohibiting access, as well as any other person who authorizes or allows such action, to the penalties set forth in Chapter 8801.

### Rule 9.2 Conduct of Investigation:

Where investigations or inspections require entrance upon property, such investigations and such inspections shall be conducted at reasonable times, and shall be consistent with the establishment's rules and regulations concerning safety, internal security, and fire protection. The persons conducting such investigations shall identify themselves and present credentials upon request of the owner, lessee, operator, or person in charge of the well.

### Rule 9.3 Request for Injunctive Relief and Assessment of Penalties:

If it appears that a person has violated, is violating, or is threatening to violate any provision of Chapter 8801 or any Board order, other order of the District, rule or permit, the Board may authorize the General Manager to institute and conduct a suit in the name of the District for injunctive relief, or to recover a civil penalty of not less than fifty dollars nor more than five thousand dollars for each violation and for each day of violation, or for both injunctive relief and civil penalties.