**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

| | | |
|---|---|---|
| **KAWA FOAD, ESQ.,** | § | |
| | § | |
| *Plaintiff*, | § | |
| | § | |
| v. | § | Civil Action No. 4:26-cv-05348 |
| | § | |
| **THE HARRIS-GALVESTON SUBSIDENCE DISTRICT, et al.,** | § | Judge Lee H. Rosenthal |
| | § | |
| | § | |
| | § | |
| *Defendants*. | | |

**PLAINTIFF'S RESPONSE IN OPPOSITION TO DEFENDANT HELEN STEWART TRUSCOTT'S MOTION TO DISMISS (ECF 16 *ET SEQ.*)**

## TABLE OF CONTENTS

**I. NATURE AND STAGE OF THE PROCEEDING ..... 1**

**II. STATEMENT OF THE ISSUES AND STANDARD OF REVIEW ..... 2**

**III. SUMMARY OF THE ARGUMENT ..... 3**

**IV. THE MOTION INVENTS FACTS FOUND NOWHERE IN THE PLEADINGS AND MISSTATES ITS OWN AUTHORITIES ..... 4**

**V. ARGUMENT ..... 7**

A. The Court Has Subject-Matter Jurisdiction Over Count III: Rooker-Feldman Does Not Apply To Administrative Rulings, And No Abstention Doctrine Applies. ..... 7

B. Truscott Has Not Established Absolute Quasi-Judicial Immunity On The Face Of The FAC. ..... 9

C. The "Official Capacity" Designation Does Not Warrant Dismissal Of Any Claim. ..... 15

D. Section 1983's Judicial-Officer Proviso Does Not Reach Declaratory Relief, And The Injunction Sought Runs Against The District. ..... 16

E. The Conspiracy Count Is Pleaded With Particularity, And Its Only Asserted Defense Is Immunity. ..... 17

F. Dismissal With Prejudice Would Be Improper; In The Alternative, Leave To Amend Should Be Granted. ..... 17

**VI. CONCLUSION ..... 18**

# TABLE OF CITATIONS

**Cases**

*Antoine v. Byers & Anderson, Inc.*, 508 U.S. 429 (1993)....................2
*Ashcroft v. Iqbal*, 556 U.S. 662 (2009)....................2
*Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007)....................2, 17
*Bradley v. Fisher*, 80 U.S. (13 Wall.) 335 (1871)....................13
*Brewster v. Dretke*, 587 F.3d 764 (5th Cir. 2009)....................18
*Brown v. Harris Cty. Hous. Auth.*, No. H-15-2847, 2018 WL 3080880 (S.D. Tex. Jan. 11, 2018)....................12
*Burford v. Sun Oil Co.*, 319 U.S. 315 (1943)....................9
*Burns v. Reed*, 500 U.S. 478 (1991)....................2, 10
*Butz v. Economou*, 438 U.S. 478 (1978).................... passim
*City of St. Louis v. Praprotnik*, 485 U.S. 112 (1988)....................15
*Clark v. Amoco Prod. Co.*, 794 F.2d 967 (5th Cir. 1986)....................2, 10
*Cleavinger v. Saxner*, 474 U.S. 193 (1985)....................3, 10, 11, 13, 18
*Colorado River Water Conservation Dist. v. United States*, 424 U.S. 800 (1976)....................9
*Dennis v. Sparks*, 449 U.S. 24 (1980)....................6, 7, 17
*District of Columbia Court of Appeals v. Feldman*, 460 U.S. 462 (1983)....................8
*Estes v. Ramirez*, No. 7:14-CV-69, 2014 WL 11698007 (S.D. Tex. June 13, 2014)....................8
*Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280 (2005)....................3, 7, 8, 18
*Forrester v. White*, 484 U.S. 219 (1988)....................9
*Great Plains Tr. Co. v. Morgan Stanley Dean Witter & Co.*, 313 F.3d 305 (5th Cir. 2002)....................18
*Hafer v. Melo*, 502 U.S. 21 (1991)....................15
*Kentucky v. Graham*, 473 U.S. 159 (1985)....................15
*Khan v. City of Dallas*, No. 3:15-CV-3254-D-BK, 2017 WL 4221118 (N.D. Tex. Sept. 5, 2017)....................8
*Lance v. Dennis*, 546 U.S. 459 (2006)....................7, 8
*Monell v. Dep't of Soc. Servs.*, 436 U.S. 658 (1978)....................15
*Morris v. Am. Home Mortg. Servicing, Inc.*, 443 F. App'x 22 (5th Cir. 2011)....................8
*Mosley v. Bowie County*, 275 F. App'x 327 (5th Cir. 2008)....................8
*ODonnell v. Harris Cnty.*, 892 F.3d 147 (5th Cir. 2018)....................16
*ODonnell v. Harris County*, 227 F. Supp. 3d 706 (S.D. Tex. 2016)....................15
*O'Neal v. Miss. Bd. of Nursing*, 113 F.3d 62 (5th Cir. 1997)....................11, 13
*Patsy v. Bd. of Regents*, 457 U.S. 496 (1982)....................9
*Perez v. ME Alpha I, LLC*, No. H-25-3178, 2026 WL 1471901 (S.D. Tex. May 26, 2026)....................13
*Peterson v. City of Fort Worth*, 588 F.3d 838 (5th Cir. 2009)....................15
*Price v. Porter*, 351 F. App'x 925 (5th Cir. 2009)....................8
*Pulliam v. Allen*, 466 U.S. 522 (1984)....................14, 16

*Railroad Commission of Texas v. Pullman Co.*, 312 U.S. 496 (1941) ............ 9
*Ramming v. United States*, 281 F.3d 158 (5th Cir. 2001) ............ 2
*Rooker v. Fidelity Trust Co.*, 263 U.S. 413 (1923) ............ 8
*Sanchez v. Smith*, 8 F.3d 20 (5th Cir. 1993) ............ 13
*Sprint Commc'ns, Inc. v. Jacobs*, 571 U.S. 69 (2013) ............ 9
*Stump v. Sparkman*, 435 U.S. 349 (1978) ............ 13
*Truong v. Bank of Am., N.A.*, 717 F.3d 377 (5th Cir. 2013) ............ 3, 7
*Tumey v. Ohio*, 273 U.S. 510 (1927) ............ 6
*Verizon Md. Inc. v. Pub. Serv. Comm'n of Md.*, 535 U.S. 635 (2002) ............ 3, 7, 8, 18
*Vinson v. Benson*, 235 F.3d 1342 (5th Cir. 2000) ............ 13
*Ward v. Village of Monroeville*, 409 U.S. 57 (1972) ............ 6
*Younger v. Harris*, 401 U.S. 37 (1971) ............ 9

**Statutes**

28 U.S.C. § 1331 ............ 7
42 U.S.C. § 1983 ............ 1, 2, 9, 14, 16
Tex. Gov't Code § 81.101 ............ 14
Tex. Gov't Code §§ 81.103–.104 ............ 14
Tex. Penal Code § 38.123 ............ 14
Tex. Spec. Dist. Loc. Laws Code § 8801.109 ............ 8
Tex. Spec. Dist. Loc. Laws Code § 8801.202 ............ 8, 9, 12

**Rules**

Fed. R. Civ. P. 12(b)(1) ............ 2
Fed. R. Civ. P. 12(b)(6) ............ 1, 2, 17
Fed. R. Civ. P. 15(a) ............ 17, 18, 19
Fed. R. Civ. P. 41(b) ............ 4, 17
S.D. Tex. LR 7.5(A) ............ 19
Harris-Galveston Subsidence District Rule 1.1(p) (Oct. 11, 2023) ............ 3, 4, 5, 7, 11
Harris-Galveston Subsidence District Rule 7.3(c) (Oct. 11, 2023) ............ 14
Harris-Galveston Subsidence District Rule 7.5(k) (Oct. 11, 2023) ............ 12
Harris-Galveston Subsidence District Rule 7.8(b) (Oct. 11, 2023) ............ 5, 8, 12
Harris-Galveston Subsidence District Rule 7.4(c) (Oct. 11, 2023) ............ 7
Harris-Galveston Subsidence District Rule 7.5(j)(6) (Oct. 11, 2023) ............ 5

**TO THE HONORABLE LEE H. ROSENTHAL, UNITED STATES DISTRICT JUDGE:**

Plaintiff KAWA FOAD, ESQ. ("***Plaintiff***"), appearing *pro se*, respectfully submits this Response in Opposition to the Motion to Dismiss for Lack of Subject Matter Jurisdiction and Failure to State a Claim Upon Which Relief Can Be Granted (ECF 16) (the "***Motion***") filed by Defendant HELEN STEWART TRUSCOTT, ESQ. ("***Truscott***" or the "***Hearing Examiner***"), and respectfully states as follows:

## I. NATURE AND STAGE OF THE PROCEEDING

This is a civil-rights action under 42 U.S.C. § 1983, with supplemental Texas-law claims, arising from Plaintiff's removal—without motion, notice, or hearing—from a contested permit proceeding before the Harris-Galveston Subsidence District ("***HGSD***" or the "***District***"). Plaintiff's Verified First Amended Complaint (ECF 6) (the "***FAC***") pleads four counts against Truscott, the hearing examiner who presided over that proceeding: First Amendment retaliation (Count I) and stigma-plus due process (Count II) under § 1983; declaratory and injunctive relief (Count III), pleaded against Truscott and Defendant Michael J. Turco ("***Turco***"), the District's General Manager, in their official capacities; and § 1983 conspiracy (Count VII). (FAC ¶¶ 22, 202, 221, 230, 237, 256–57.) Damages are sought against Truscott "only for conduct to which judicial immunity does not attach." (FAC ¶ 22; *see id.* ¶ 202.)

Truscott, served by waiver on July 24, 2026 (ECF 12), filed the Motion on September 22, 2026, attaching thereto the District's 2023 Rules (ECF 16-1), the October 17, 2025 e-mail exchange (ECF 16-2), and the October 20, 2025 order (ECF 16-3) (the "***Disqualification Ruling***") in support of the Motion (ECF 16). Pin citations to docketed filings are to the page numbers assigned by the Court's CM/ECF header. The GDHM Defendants' Rule 12(b)(6) motion (ECF 10) is fully briefed; the Bickerstaff Defendants' motion (ECF 17) is pending; the defendants'

unopposed joint motion to stay discovery (ECF 19) is pending; and the Rule 16 conference has been reset to November 30, 2026 (ECF 21).

## II. STATEMENT OF THE ISSUES AND STANDARD OF REVIEW

The Motion presents five issues: (1) whether the *Rooker-Feldman* doctrine deprives the Court of jurisdiction over Count III where the challenged ruling was entered by an administrative hearing examiner, not a state court; (2) whether Truscott has carried her burden of establishing absolute quasi-judicial immunity on the face of a complaint that pleads she was selected and paid by the adverse party, communicated ex parte with that party's counsel, and ruled without motion, notice, or hearing; (3) whether the "official capacity" designation requires dismissal of any claim; (4) whether § 1983's judicial-officer proviso reaches Count III's request for declaratory relief; and (5) whether any dismissal may be with prejudice. ECF 16 at 9.

The *Rooker-Feldman* ground is a facial attack under Rule 12(b)(1): the Motion offers no jurisdictional evidence beyond the FAC and documents it incorporates, so the Court accepts the FAC's allegations as true and asks only whether they establish jurisdiction. *See Ramming v. United States*, 281 F.3d 158, 161 (5th Cir. 2001) (cited at ECF 16 at 10). On the Rule 12(b)(6) grounds, the Court accepts all well-pleaded facts as true and asks whether the FAC states a claim that is plausible on its face. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007); *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). An affirmative defense supports dismissal at this stage only "if a successful affirmative defense appears clearly on the face of the pleadings." *Clark v. Amoco Prod. Co.*, 794 F.2d 967, 970 (5th Cir. 1986). And where the defense is absolute immunity, the burden is the movant's: "The proponent of a claim to absolute immunity bears the burden of establishing the justification for such immunity." *Antoine v. Byers & Anderson, Inc.*, 508 U.S. 429, 432 (1993). "The presumption is that qualified rather than absolute immunity is sufficient to protect government officials in the exercise of their duties." *Burns v. Reed*, 500 U.S. 478, 486–87 (1991).

## III. SUMMARY OF THE ARGUMENT

The Motion's jurisdictional ground fails at the threshold. *Rooker-Feldman* "is confined to . . . cases brought by state-court losers complaining of injuries caused by state-court judgments." *Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280, 284 (2005). It "has no application to judicial review of executive action, including determinations made by a state administrative agency." *Verizon Md. Inc. v. Pub. Serv. Comm'n of Md.*, 535 U.S. 635, 644 n.3 (2002). An HGSD hearing examiner—"a person appointed by the General Manager," ECF 16-1, Rule 1.1(p)—is not a state court, and nothing she or the District's Board did is a state-court judgment. The Fifth Circuit has said so in terms: the doctrine "does not prohibit a district court from reviewing non-state-court decisions." *Truong v. Bank of Am., N.A.*, 717 F.3d 377, 382 (5th Cir. 2013).

The immunity ground cannot be resolved against Plaintiff on the pleadings. Absolute immunity for administrative adjudicators is a *functional* immunity that the Supreme Court extended in *Butz v. Economou*, 438 U.S. 478 (1978), because—and only because—"the process of agency adjudication is currently structured so as to assure that the hearing examiner exercises his independent judgment on the evidence before him, free from pressures by the parties or other officials within the agency." *Id.* at 513. Where those structural safeguards are absent, the Court has refused absolute immunity to adjudicators who were "not 'independent'" and were "under obvious pressure" to rule for the institution that employed them. *Cleavinger v. Saxner*, 474 U.S. 193, 203–04 (1985). The FAC pleads the *Cleavinger* side of that line: A hearing examiner appointed by the General Manager (i.e., Turco) and compensated by the respondent District, her fees reviewed by the very official (i.e., Turco) whose demand (i.e., the Penalty) she was adjudicating; an *ex parte* communication with that official's counsel three days before the ruling; a ruling entered on a Friday e-mail, without motion, notice, briefing, or hearing, on relief no party

requested; and no avenue of appeal. (FAC ¶¶ 67, 73, 166–67, 206.) Those allegations must be taken as true, and they defeat the predicate of the immunity Truscott claims.

Most, if not all, of the remaining arguments of the Motion rest upon on facts that appear nowhere in the pleadings. It tells the Court that Truscott is "directly supervised" by the Board (ECF 16 at 18–19), when its own exhibit says she is appointed by the General Manager—the adverse party. (ECF 16-1, Rule 1.1(p).) It tells the Court that Plaintiff had "multiple" opportunities to challenge the ruling before the Board (ECF 16 at 21–22), citing paragraphs that allege he was excluded from the notice. (FAC ¶¶ 86–87.) It tells the Court that the Board "reviewed" the ruling (ECF 16 at 21), citing paragraphs that allege the Board refused to act and refused to hear him. (FAC ¶¶ 165, 214.) It tells the Court that a twenty-day rehearing clock ran from a Board "decision" on July 8, 2026 (ECF 16 at 14–15), when the record it cites (ECF 6-1 at 128) shows the Board continued the matter to August. And it tells the Court that Plaintiff's claims rest "exclusively" on the ruling itself (ECF 16 at 21–22), when the FAC pleads damages against Truscott expressly for her ex parte and off-the-record conduct. (FAC ¶ 202.) A motion that must rewrite the complaint to attack it has conceded that the complaint, as written, states a claim. The "official capacity" label is a claim against the District, which is a party; the judicial-officer proviso limits only injunctive relief, and the injunction Count III seeks runs against the District and the officials who enforce the ruling; and a dismissal for want of jurisdiction cannot be with prejudice. Fed. R. Civ. P. 41(b).

## IV. THE MOTION INVENTS FACTS FOUND NOWHERE IN THE PLEADINGS AND MISSTATES ITS OWN AUTHORITIES

A Rule 12 motion tests the complaint Plaintiff filed, not the one the movant would prefer to answer. The Motion repeatedly attributes to the FAC, to the District's Rules, and to the record allegations and facts that are not there—and in several instances are contradicted by the very paragraphs it cites. Each of the following is verifiable from the Motion, its exhibits, and the FAC.

1. **"Directly supervised by the Board"; "serve at the pleasure of" the General Manager.** The Motion asserts both. ECF 16 at 17–19. Neither appears in the FAC, the Enabling Act, or the Rules. The only provision the Motion cites, Rule 1.1(p), says that a hearings examiner is "a person appointed by the General Manager to conduct a hearing or other proceeding." ECF 16-1, Rule 1.1(p). Nothing in it speaks of supervision, tenure, or removal. What the FAC actually pleads is that the examiner was "selected and compensated by the respondent District, with no party input, in an arrangement of roughly ten years' standing, her fees subject to review by Turco—the very official whose demand she was adjudicating." (FAC ¶ 167.) The Motion adds that "acts by a hearing examiner require Board approval," citing Rule 7.5(j)(6). ECF 16 at 12, 18. That rule permits an examiner to "recommend to the Board that the hearing be dismissed" as a discovery sanction; it says nothing about approval of her other acts, and the Disqualification Ruling was never submitted to the Board for approval—it took effect the day it issued. The Motion thus manufactures a supervisory structure that would help its policymaker argument, while conceding the one that destroys its immunity argument: the adjudicator was appointed and paid by the litigant.
2. **"Multiple opportunities to attack the Disqualification Ruling before the Board, FAC ¶¶ 86–87."** ECF 16 at 21–22. Paragraph 86 alleges that the District noticed the April 7, 2026 status conference to Mr. Davis "without copying/noticing Plaintiff." Paragraph 87 alleges that when Plaintiff asked to be copied, Defendant Ellis responded that Plaintiff could not contact the District "except through local counsel." (FAC ¶¶ 86–87.) The paragraphs cited for Plaintiff's "opportunities" allege his exclusion. The omnibus motion seeking the examiner's disqualification, served in November 2025 and re-served through May 2026, was never ruled upon. (FAC ¶¶ 80–81, 167.)
3. **"Reviewed by the Board. See FAC ¶¶ 112–13, 165."** ECF 16 at 21. Paragraphs 112 and 113 allege that the examiner closed the record "by submission" without any evidentiary hearing and signed a recommendation reciting that "[n]o evidentiary hearing has occurred." Paragraph 165 alleges that the Board "did not vacate or modify" the ruling. Paragraph 214 alleges that the Board "denied Plaintiff's request to respond." No paragraph of the FAC alleges Board review of the Disqualification Ruling, because none occurred.
4. **The phantom "Board decision" and its twenty-day clock.** The Motion asserts that "Woodloch and Foad had 20 calendar days to request a rehearing of the Board decision on the Disqualification Ruling," that the deadline ran on July 28, 2026, and that Plaintiff "has not alleged" a timely rehearing request or a state-court appeal by September 11, 2026. ECF 16 at 14–15. There was no Board decision on the Disqualification Ruling. The record the Motion itself cites, ECF 6-1 at 128, shows that on July 8, 2026 the Board moved "to continue this hearing on the hearing examiner's recommendation to our regular board meeting in August." A continuance is not a decision; Rule 7.8(b) applies only to "[a]ny decision of the Board" and only at the instance of "[a] party," ECF 16 at 14, which Plaintiff—excluded from the proceeding—was not (FAC ¶ 206); and the FAC—filed July 24, 2026, four days *before* the deadline the Motion invents—could not have alleged the expiration of a period that had not run. The Motion's footnote 7 compounds the error by placing the Board's "ratif[ication]" at a hearing on "June 8,

2026," a date on which, so far as the FAC alleges, nothing happened. ECF 16 at 25 n.7; *cf.* FAC ¶ 214 (July 8, 2026).

5. **"Grounded exclusively on her issuance of the October 20, 2025 Disqualification Ruling."** ECF 16 at 21–22; *see also* ECF 16 at 16 (the ex parte communication and private-channel practice were not "included as grounds in Foad's causes of action"). The FAC pleads precisely the opposite: "Damages are sought against Truscott only for non-adjudicative conduct: the ex parte communication, the private-channel practice, and her participation, on information and belief, in the coordinated removal." (FAC ¶ 202.) Count VII pleads the October 14, 2025 ex parte e-mail as the first act of the conspiracy. (FAC ¶ 256.) The Motion quotes paragraph 202 two pages later, ECF 16 at 23, and so cannot have overlooked it; it simply asks the Court to disregard it.

6. **"Foad nowhere else charges Ms. Truscott of having a 'pecuniary interest in the outcome.'"** ECF 16 at 15 n.4. The FAC's section titled "Conflicts; No Neutral Adjudicator" alleges that the District "appointed and compensates the Hearing Examiner," that it "stood to collect the $106,901," and that her fees were subject to review by the official seeking that sum, citing *Tumey v. Ohio*, 273 U.S. 510, 523 (1927), and *Ward v. Village of Monroeville*, 409 U.S. 57, 60 (1972), for the proposition that an adjudicator's or her principal's financial interest in the outcome violates due process. (FAC ¶¶ 166–67 & n.18.) The Motion's "interpretation" of Count II erases those paragraphs.

7. **One document, three incompatible descriptions.** For the policymaker argument, the Disqualification Ruling was a mere "recommendation" to the Board. ECF 16 at 9, 19. For the immunity argument, it was a judicial act—an "Order" that "held" Plaintiff could not appear. ECF 16 at 13, 21. For *Rooker-Feldman*, it was a final "judgment" that became "completed" no later than July 8, 2026. ECF 16 at 24. The document itself—Exhibit 3—is none of these: a one-page e-mail ruling, entered without motion, notice, or hearing, declaring that the examiner "will follow state law precedent" while citing none. ECF 16-3 at 2. The Motion cannot have it all three ways, and the Court should not permit it to.

8. **The "admission."** The Motion quotes a sentence from Plaintiff's opposition to the GDHM motion describing *Dennis v. Sparks*, 449 U.S. 24 (1980)—"private parties were alleged to have conspired with an immune adjudicator"—as a concession that Truscott is immune. ECF 16 at 23 n.6. The sentence described *Dennis*'s holding that an adjudicator's immunity does not extend to her co-conspirators. Whether immunity attaches to *this* examiner is the question the FAC expressly reserves (FAC ¶¶ 22, 202) and the Motion must answer under *Butz*. It does not try.

9. **A chronology the FAC does not contain.** The Motion's "Factual Background" asserts that the General Manager "offered to resolve the permit violation with a payment of $106,901 to cover Woodloch's excess pumping" (ECF 16 at 12); the FAC alleges a staff letter "demanding the $106,901 Penalty" at a time when "no violation had been adjudicated, no hearing had been noticed or held, and the Board had taken no action of any kind." (FAC ¶¶ 32–33.) It asserts that "the Board designated the Woodloch matter as a contested case" and that, "[s]hortly after the hearing, Ms. Truscott was appointed to preside" (ECF 16 at 12–13, citing FAC ¶¶ 64–65, 166); the FAC alleges that the

examiner herself declared the matter contested—"I declared that it was a contested hearing"—although Woodloch had never requested one as Rule 7.4(c) requires, and that she was the District's standing examiner under "an arrangement of roughly ten years' standing," not an appointee selected for this case. (FAC ¶¶ 91, 167.) It asserts that Plaintiff "sought review of the Disqualification Ruling both before the District and elsewhere" (ECF 16 at 14); the FAC alleges no proceeding "elsewhere," and the Motion cites none. Each of these inventions serves the same end—to make a District employee's e-mail ruling look like the reviewable judgment of an independent tribunal—and none of them is in the pleading the Court is asked to dismiss.

A movant who must invent a supervisory chain, a Board decision, a rehearing deadline, a post-hearing appointment, a review "elsewhere," and a narrower complaint than the one on file has conceded that the complaint on file states a claim.

## V. ARGUMENT

### A. The Court Has Subject-Matter Jurisdiction Over Count III: Rooker-Feldman Does Not Apply To Administrative Rulings, And No Abstention Doctrine Applies.

*Rooker-Feldman* is a narrow doctrine about one thing: 28 U.S.C. § 1331 confers original, not appellate, jurisdiction, so a district court may not sit in review of a *state-court judgment*. *Exxon Mobil*, 544 U.S. at 284 (doctrine "is confined to . . . cases brought by state-court losers complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced and inviting district court review and rejection of those judgments"); *Lance v. Dennis*, 546 U.S. 459, 464 (2006). The Supreme Court has stated the corollary expressly: the doctrine "has no application to judicial review of executive action, including determinations made by a state administrative agency." *Verizon*, 535 U.S. at 644 n.3. The Fifth Circuit follows that rule. *Truong*, 717 F.3d at 382 ("the rule does not prohibit a district court from reviewing non-state-court decisions") (citing *Verizon*, 535 U.S. at 644 n.3).

No state court has adjudicated anything in this case. HGSD is "a special purpose district created by the Texas legislature." ECF 16 at 10. Its hearing examiner is "a person appointed by the General Manager to conduct a hearing or other proceeding." ECF 16-1, Rule 1.1(p). Its Board

is the body whose "decision" the Enabling Act contemplates, Tex. Spec. Dist. Loc. Laws Code § 8801.109(d), and whose actions are reviewable—for the first time—in a state district court under § 8801.202. The Motion's theory would convert the output of every county appraisal review board, zoning board, and utility-district examiner in Texas into a "state-court judgment" immune from federal civil-rights review. *Verizon* forecloses it. Every *Rooker-Feldman* authority the Motion cites involved a court: *Rooker v. Fidelity Trust Co., 263 U.S. 413 (1923) (a state supreme court) (cited at ECF 16 at 23); District of Columbia Court of Appeals v. Feldman*, 460 U.S. 462 (1983) (the District of Columbia's highest court) (cited at ECF 16 at 23–24); *Estes v. Ramirez*, No. 7:14-CV-69, 2014 WL 11698007 (S.D. Tex. June 13, 2014) (a state court's disqualification of counsel) (cited at ECF 16 at 22, 24); *Price v. Porter*, 351 F. App'x 925, 926–27 (5th Cir. 2009) (a state-court judge's refusal to recuse) (cited at ECF 16 at 25); and *Morris v. Am. Home Mortg. Servicing, Inc.*, 443 F. App'x 22, 24 (5th Cir. 2011), and *Mosley v. Bowie County*, 275 F. App'x 327, 328–29 (5th Cir. 2008) (state-court foreclosure and child-support judgments) (both cited at ECF 16 at 26). The one exception, *Khan v. City of Dallas*, No. 3:15-CV-3254-D-BK, 2017 WL 4221118 (N.D. Tex. Sept. 5, 2017) (cited at ECF 16 at 24–25), is a magistrate judge's recommendation in a pro se case that neither cites *Verizon* nor confronts *Exxon Mobil*'s "state-court" limitation, and that rested in the alternative on collateral estoppel. *Id.* at *4. It cannot displace Supreme Court precedent.

The doctrine fails for a second, independent reason. It applies only to the "state-court loser"—the party to the earlier judgment. *Lance*, 546 U.S. at 466 (doctrine "does not bar actions by nonparties to the earlier state-court judgment"). Plaintiff was never a party to the Woodloch permit proceeding; he was the permittee's representative, and the Disqualification Ruling excluded him from it. (FAC ¶ 206.) The Motion's rehearing-and-appeal timeline (ECF 16 at 14–15) proves

the point: Rule 7.8(b) permits a rehearing request only by a party to "[a]ny decision of the Board," and § 8801.202 affords judicial review of Board action "only after any administrative appeal to the district is finally resolved." There was no Board decision on the Disqualification Ruling to rehear—the Board "did not vacate or modify" it and "denied Plaintiff's request to respond" (FAC ¶¶ 165, 214)—and a non-party excluded from the proceeding has nothing to exhaust. In any event, § 1983 requires no exhaustion. *Patsy v. Bd. of Regents*, 457 U.S. 496, 516 (1982).

The Motion's footnote 7 gestures, in the alternative, at *Younger v. Harris*, 401 U.S. 37 (1971), *Colorado River Water Conservation District v. United States*, 424 U.S. 800 (1976), *Burford v. Sun Oil Co.*, 319 U.S. 315 (1943), and *Railroad Commission of Texas v. Pullman Co.*, 312 U.S. 496 (1941). ECF 16 at 25 n.7. None is briefed, and none applies. *Younger* abstention is reserved for the "three exceptional categories" of state proceedings identified in *Sprint Communications, Inc. v. Jacobs*, 571 U.S. 69, 78 (2013)—criminal prosecutions, civil enforcement proceedings akin to prosecutions, and orders uniquely in furtherance of a state court's ability to perform its judicial functions—and a permit-renewal proceeding before a district-compensated examiner is none of them; nor is Plaintiff a party to it. (FAC ¶ 208.) *Colorado River* presupposes parallel litigation between the same parties; there is none. *Burford* and *Pullman* are not even argued. A footnote citing four doctrines without applying any of them does not carry an abstention request.

### B. Truscott Has Not Established Absolute Quasi-Judicial Immunity On The Face Of The FAC.

#### *1. The immunity is functional, the burden is Truscott's, and the predicate is independence and procedural safeguards.*

"[I]mmunity is justified and defined by the functions it protects and serves, not by the person to whom it attaches." *Forrester v. White*, 484 U.S. 219, 227 (1988). The title "hearing examiner" therefore settles nothing. The official claiming absolute immunity "must bear the

burden of showing that public policy requires an exemption of that scope," *Butz*, 438 U.S. at 506, and the Supreme Court has "been quite sparing in [its] recognition of absolute immunity." *Burns*, 500 U.S. at 487. At the pleading stage, that burden must be carried on the face of the complaint. *Clark*, 794 F.2d at 970.

*Butz* extended absolute immunity to federal hearing examiners for a stated reason. The Court identified the features of the judicial process that make damages actions unnecessary—"[t]he insulation of the judge from political influence, the importance of precedent in resolving controversies, the adversary nature of the process, and the correctability of error on appeal," 438 U.S. at 512—and then found those features replicated by statute in federal agency adjudication: "the process of agency adjudication is currently structured so as to assure that the hearing examiner exercises his independent judgment on the evidence before him, free from pressures by the parties or other officials within the agency." *Id.* at 513. The Court catalogued the safeguards: the examiner "is not responsible to, or subject to the supervision or direction of," the agency's prosecuting personnel; "[n]or may a hearing examiner consult any person or party, including other agency officials, concerning a fact at issue in the hearing, unless on notice and opportunity for all parties to participate"; examiners are assigned in rotation, removable only for cause, and paid under independent control. *Id.* at 513–14. "In light of these safeguards," the Court held that "persons subject to these restraints and performing adjudicatory functions within a federal agency are entitled to absolute immunity from damages liability for their judicial acts." *Id.* at 514.

The Court then drew the other side of the line. In *Cleavinger*, prison disciplinary committee members who heard evidence, made findings, and imposed sanctions were denied absolute immunity because the structural predicate was missing: "the members of the committee, unlike a federal or state judge, are not 'independent'; to say that they are is to ignore reality. They are not

professional hearing officers, as are administrative law judges." 474 U.S. at 203–04. They were employees of the institution whose charge they adjudicated and were thus "under obvious pressure" to resolve disputes in its favor. *Id.* at 204. The Court applied the *Butz* factors—"(a) the need to assure that the individual can perform his functions without harassment or intimidation; (b) the presence of safeguards that reduce the need for private damages actions as a means of controlling unconstitutional conduct; (c) insulation from political influence; (d) the importance of precedent; (e) the adversary nature of the process; and (f) the correctability of error on appeal," *id.* at 202—and found them unmet. The Fifth Circuit applies the same six factors, *O'Neal v. Miss. Bd. of Nursing*, 113 F.3d 62, 65–66 (5th Cir. 1997), and in that very case—the Motion's own authority (ECF 16 at 20–21)—it granted immunity only after confirming from the governing statute that the parties before the board had counsel, witnesses, cross-examination, and "more than adequate opportunity to correct any error made by the board on appeal." *Id.* at 66.

### 2. *The FAC pleads the absence of every safeguard on which Butz immunity depends.*

Taking the FAC as true, Truscott presided over nothing resembling the process *Butz* described.

*Independence.* The examiner was "selected and compensated by the respondent District, with no party input, in an arrangement of roughly ten years' standing, her fees subject to review by Turco—the very official whose demand she was adjudicating." (FAC ¶ 167; *see id.* ¶ 166.) The Motion's own exhibit confirms the appointment runs from the General Manager, ECF 16-1, Rule 1.1(p), and the General Manager was the party prosecuting the $106,901 demand before her. (FAC ¶¶ 32–34, 166.) That is the *Cleavinger* relationship—an adjudicator employed and paid by the litigant—not the *Butz* one.

*Ex parte contact.* On October 14, 2025, the examiner e-mailed the General Manager's counsel, excluding Woodloch, Mr. Davis, and Plaintiff, in violation of the District's own bar on ex parte communications. (FAC ¶¶ 67, 256 & Fig. 6; ECF 16-1, Rule 7.5(k).) Three days later the General Manager's counsel sent the unauthorized-practice accusation to the examiner's personal e-mail address, and one business day after that the examiner ruled. (FAC ¶¶ 71, 73, 256.) *Butz* rested absolute immunity in part on the statutory rule that an examiner may not "consult any person or party . . . concerning a fact at issue in the hearing, unless on notice and opportunity for all parties to participate." 438 U.S. at 514. The FAC pleads that rule was broken.

*The adversary process.* The Disqualification Ruling "issued on the strength of a Friday email, without motion, notice, briefing, or any opportunity to be heard, and granted relief no party had requested." (FAC ¶ 73.) The Motion's Exhibit 3 confirms it: the order opens "[i]n response to the question of whether or not Kawa Foad, Esq. shall be allowed to represent the permittee," cites no motion, recites no hearing, and announces that the examiner "will follow state law precedent" without identifying any. ECF 16-3 at 2. The findings that followed were the General Manager's own proposed findings, adopted "without any evidentiary hearing." (FAC ¶¶ 111–13, 168.) The Motion lists the hearing rights the District's Rules *provide*—discovery, cross-examination, oral and written argument, ECF 16 at 11–12—but nowhere contends that any of them was *afforded* on the question that matters here. In the Motion's own authority, immunity turned on whether the "procedural protections" were in fact "provided." ECF 16 at 21 (describing *Brown v. Harris Cty. Hous. Auth.*, No. H-15-2847, 2018 WL 3080880, at *6–7 (S.D. Tex. Jan. 11, 2018)).

*Correctability on appeal.* There was none. The Rules provide rehearing only of "[a]ny decision of the Board," ECF 16-1, Rule 7.8(b); § 8801.202 affords judicial review to parties aggrieved by final District action; and Plaintiff, barred from the proceeding, was a party to nothing.

(FAC ¶ 206.) The omnibus motion seeking the examiner's disqualification was served in November 2025, re-served in March and April 2026, resubmitted to the Board in May 2026, and never ruled upon. (FAC ¶¶ 80–81, 167.) When Plaintiff addressed the Board on July 8, 2026, it "denied Plaintiff's request to respond." (FAC ¶ 214.)

On these allegations, Truscott cannot carry her burden at Rule 12. Each *Butz* factor the Motion invokes is contradicted by facts the Court must accept: the adjudicator was not insulated from the party before her but selected and paid by it; the process was not adversarial but ex parte; precedent played no role (the order cites none); and error was not correctable on appeal because no appeal existed. *Cleavinger* denied absolute immunity on a thinner showing. Whether Truscott functioned as a neutral adjudicator "in a setting similar to court," *O'Neal*, 113 F.3d at 65, or as what the FAC alleges—the District's compensated examiner coordinating with the District's counsel to remove the one advocate pressing its records obligations—is a question of fact that discovery, not a motion to dismiss, will answer. The Motion's remaining immunity cases do not suggest otherwise: *Sanchez v. Smith, 8 F.3d 20 (5th Cir. 1993) (ECF 16 at 20), Vinson v. Benson, 235 F.3d 1342 (5th Cir. 2000) (ECF 16 at 20), Perez v. ME Alpha I, LLC, No. H-25-3178, 2026 WL 1471901 (S.D. Tex. May 26, 2026) (ECF 16 at 21), and the out-of-circuit* district court decisions cited at ECF 16 at 20–21 each involved a tribunal whose independence and procedures were not in dispute.

#### 3. *The Disqualification Ruling was entered in the clear absence of any conferred authority.*

Immunity also fails for an independent reason. Even a judge of general jurisdiction loses immunity "when he has acted in the 'clear absence of all jurisdiction.'" *Stump v. Sparkman*, 435 U.S. 349, 356–57 (1978) (quoting *Bradley v. Fisher*, 80 U.S. (13 Wall.) 335, 351 (1871)). "Where there is clearly no jurisdiction over the subject-matter any authority exercised is a usurped

authority." *Id.* at 357 n.6 (quoting *Bradley*, 13 Wall. at 351–52). A hearing examiner has no general jurisdiction; her authority is entirely derivative of the Rules that create her office, which authorize her to designate parties, direct discovery, receive evidence, and recommend action to the Board. ECF 16 at 11–12; ECF 16-1, Rules 7.4–7.6. Nothing in Chapter 8801 or the Rules authorizes a hearing examiner to adjudicate whether a person is engaged in the unauthorized practice of law in Texas—a determination that Texas law commits to the judicial branch and the Unauthorized Practice of Law Committee, Tex. Gov't Code §§ 81.101(b), 81.103–.104, and that carries criminal consequences, Tex. Penal Code § 38.123. The Rules point the other way: Rule 7.3(c) expressly permits appearance "by counsel, engineer, or other representative," ECF 16-1, Rule 7.3(c), as the Disqualification Ruling itself acknowledged before confining the rule to "informal or technical proceedings"—a limitation found nowhere in its text. ECF 16-3 at 2. An examiner who invents a licensure requirement the Rules do not contain, and applies a statute the Rules do not incorporate, to exclude a non-party from a proceeding she was appointed only to recommend upon, has not merely erred within her jurisdiction; she has exercised a power never conferred.

#### ***4. Immunity, if it attached, would bar only damages—and the FAC seeks damages only where it does not attach.***

Judicial immunity "is not a bar to prospective injunctive relief against a judicial officer acting in her judicial capacity." *Pulliam v. Allen*, 466 U.S. 522, 541–42 (1984). Congress's 1996 amendment to § 1983 narrowed *Pulliam* as to injunctions, but it left declaratory relief untouched; indeed, the proviso presupposes it, barring injunctive relief "unless a declaratory decree was violated or declaratory relief was unavailable." 42 U.S.C. § 1983. Count III's request for a declaration that the Disqualification Ruling is unlawful therefore survives whatever immunity Truscott may ultimately establish. And the FAC pleads damages against Truscott only for conduct to which immunity does not attach (FAC ¶¶ 22, 202)—a limitation the Motion treats as a

concession (ECF 16 at 23 & n.6) but which is, in fact, the ordinary statement of the rule. If the Court concludes after discovery that Truscott functioned as an independent adjudicator, the damages claims against her narrow accordingly; the Court cannot so conclude now, on a record that pleads the opposite.

**C. The "Official Capacity" Designation Does Not Warrant Dismissal Of Any Claim.**

An official-capacity claim is "only another way of pleading an action against an entity of which an officer is an agent." *Kentucky v. Graham*, 473 U.S. 159, 165 (1985) (quoting *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 690 n.55 (1978)); *Hafer v. Melo*, 502 U.S. 21, 25 (1991). The entity here—HGSD—is a named defendant. The Motion's *McMillian* analysis (ECF 16 at 16–19) therefore answers a question no one asked. Plaintiff has never alleged that Truscott is the District's final policymaker; the FAC alleges that "HGSD's Board is its final policymaker" and that the Board *ratified* the Disqualification Ruling at its July 8, 2026 meeting, conditioning any remand on the retention of Texas-licensed counsel and refusing to hear Plaintiff. (FAC ¶¶ 213–14.) Ratification by the final policymaker is a recognized basis of municipal liability. *City of St. Louis v. Praprotnik*, 485 U.S. 112, 127 (1988) (plurality opinion) ("If the authorized policymakers approve a subordinate's decision and the basis for it, their ratification would be chargeable to the municipality because their decision is final."); *Peterson v. City of Fort Worth*, 588 F.3d 838, 848 (5th Cir. 2009) (recognizing the theory while confining it to "extreme factual situations"). Whether the examiner herself could bind the District is thus irrelevant to the District's liability and to Count III, which seeks prospective relief against the officials who continue to enforce the ruling.

The official-capacity claims against Truscott are, in substance, the claims against the District, and they rise or fall with the District's liability—not with any question about the examiner's own authority. The Motion identifies no claim that would be eliminated by striking the label, and it is entitled to no relief on this ground. *ODonnell v. Harris County*, 227 F. Supp. 3d 706

(S.D. Tex. 2016), on which the Motion relies (ECF 16 at 18–19, 23, 28–29), illustrates the point: the official-capacity claims against the hearing officers there were duplicative of the claims against Harris County, which proceeded to the preliminary injunction the Fifth Circuit later affirmed as modified. *See ODonnell v. Harris Cnty.*, 892 F.3d 147 (5th Cir. 2018) (cited at ECF 16 at 28). The Court may note that the official-capacity claims against Truscott are coextensive with those against HGSD; it should not dismiss anything.

### D. Section 1983's Judicial-Officer Proviso Does Not Reach Declaratory Relief, And The Injunction Sought Runs Against The District.

The proviso on which Section IV of the Motion rests provides that "in any action brought against a judicial officer for an act or omission taken in such officer's judicial capacity, injunctive relief shall not be granted unless a declaratory decree was violated or declaratory relief was unavailable." 42 U.S.C. § 1983. By its terms it limits *injunctive* relief only. It does not bar a declaratory judgment—its text assumes one is available—and the Motion does not contend otherwise; its Section IV addresses "injunctive relief" alone. ECF 16 at 26–29. Count III's declaratory claim is therefore unaffected.

As to the injunction, two points dispose of Section IV of the Motion. First, every authority it cites (ECF 16 at 26–29) applied the proviso to a state judge; none holds that an examiner "appointed by the General Manager" of a special-purpose district, with no tenure, no independence, and no adjudicative authority of her own, is a "judicial officer" within a statute enacted to address *Pulliam*'s treatment of judges. The Motion does not brief the question; it assumes the answer. (ECF 16 at 27–28.) Second, Section IV attacks relief Plaintiff does not seek from Truscott. The injunction Count III seeks—against enforcement of the Disqualification Ruling and against further retaliation—runs against the District and the officials who continue to enforce the ruling as a condition of any remand. (FAC ¶¶ 214, 237.) The proviso therefore supplies no

basis to dismiss Count III, which the Motion asks the Court to dismiss "in full," ECF 16 at 26, on the strength of a limitation that reaches, at most, one form of relief against one defendant.

### E. The Conspiracy Count Is Pleaded With Particularity, And Its Only Asserted Defense Is Immunity.

The Motion's footnote 5 argues that Truscott's overt acts were "lawful parallel conduct." ECF 16 at 22 n.5. The FAC pleads a sequence, not parallelism: on October 14, 2025, the examiner e-mailed the General Manager's counsel ex parte, excluding Plaintiff's side; on Friday, October 17—days after Plaintiff's renewed records demands—that counsel sent the unauthorized-practice accusation to the examiner's personal e-mail address; on Monday, October 20, before any response was possible and without any motion, the examiner entered an order granting relief no party had requested; and the examiner thereafter adopted findings drafted by the General Manager's counsel without an evidentiary hearing. (FAC ¶¶ 67, 71, 73, 111–13, 256–57.) "Three actors, five days, one result, no process." (FAC ¶ 256.) That chronology supplies "enough fact to raise a reasonable expectation that discovery will reveal evidence of illegal agreement." *Twombly*, 550 U.S. at 556. Private parties who conspire with an adjudicator act under color of state law, *Dennis*, 449 U.S. at 27–29, and the adjudicator's own exposure on the conspiracy count rises or falls with the immunity question addressed in Section V.B, which cannot be resolved on this record.

### F. Dismissal With Prejudice Would Be Improper; In The Alternative, Leave To Amend Should Be Granted.

A dismissal for lack of subject-matter jurisdiction does not operate as an adjudication on the merits and cannot be with prejudice. Fed. R. Civ. P. 41(b). As to the Rule 12(b)(6) grounds, the Motion's argument for prejudice is the same one the GDHM Defendants advanced (ECF 10 at 16), and it is no better the second time: that because Plaintiff "has already amended his pleading once," he has pleaded his "best case" and further amendment would be futile. ECF 16 at 29–30. The premise is preposterous. Plaintiff amended on July 24, 2026, as a matter of course under Rule

15(a)(1), seventeen days after filing suit—before any defendant had been served, before any defendant had appeared, and before any defendant had identified a single deficiency in anything. The docket confirms it: the first appearance by any defendant was the GDHM Defendants' motion on August 24, 2026 (ECF 10), and this Motion is, by its own account, Truscott's "first appearance." ECF 16 at 8. An amendment made before anyone has answered is not a "chance to cure" that Plaintiff squandered; it is the amendment the Rules give every plaintiff for the asking. The "best case" doctrine the Motion invokes, *Brewster v. Dretke*, 587 F.3d 764, 767–68 (5th Cir. 2009), concerns plaintiffs who, having been told what was deficient, declined to fix it. No court has told Plaintiff anything. Nor is a Notice of Errata correcting scrivener's errors (ECF 13) an "amendment" that counts against him. Rule 15(a)(2) directs that "[t]he court should freely give leave when justice so requires," and district courts in this Circuit "often afford plaintiffs at least one opportunity to cure pleading deficiencies before dismissing a case." *Great Plains Tr. Co. v. Morgan Stanley Dean Witter & Co.*, 313 F.3d 305, 329 (5th Cir. 2002). Should the Court find any count deficient as to Truscott, Plaintiff requests leave to amend to plead, among other things, the terms of the examiner's engagement and compensation by the District, the ex parte communications in further detail, and the Board's July 8, 2026 actions.

## VI. CONCLUSION

The Motion asks the Court to treat an administrative examiner's e-mail ruling as a state-court judgment, and to treat an adjudicator selected and paid by the litigant before her as the functional equivalent of an Article III judge. The first proposition is foreclosed by *Verizon* and *Exxon Mobil*; the second is foreclosed by *Butz* and *Cleavinger* on the facts the FAC pleads and the Court must accept. To get around those facts, the Motion substitutes its own: a Board that supervises, a Board that decided, a rehearing clock that ran, a complaint confined to a single ruling. None of it is in the pleadings. The Court should decline the invitation to adjudicate a complaint

Plaintiff did not file—and should reject out of hand the suggestion that a complaint amended as of right, before any defendant had appeared, is beyond repair. Oral argument would assist the Court because the Motion's jurisdictional and immunity grounds turn on the structure of the District's hearing-examiner arrangement—who appoints, who pays, who reviews—which the Motion and the FAC describe in irreconcilable terms.

WHEREFORE, Plaintiff respectfully requests that the Court deny Defendant Truscott's Motion to Dismiss (ECF 16) in its entirety; in the alternative, deny dismissal with prejudice and grant Plaintiff leave to amend pursuant to Fed. R. Civ. P. 15(a)(2); grant oral argument pursuant to LR 7.5(A); and grant such other and further relief to which Plaintiff may be justly entitled.

Dated: October 13, 2026

Respectfully submitted,
/s/ Kawa Foad
**KAWA FOAD, ESQ.**
Florida Bar No. 1005257
Kawa Foad Law Group, P.A. d/b/a KF Law
1000 Brickell Avenue, Suite 715
Miami, Florida 33131
Telephone: (561) 291-0518
kfoad@kf-law.com
*Plaintiff, pro se*

**CERTIFICATE OF SERVICE**

I hereby certify that on October 13, 2026, a true and correct copy of the foregoing Response, together with the accompanying proposed order, was served on all counsel of record via the Court's CM/ECF system, and by electronic mail on all parties who have consented in writing to service by electronic means.

/s/ Kawa Foad, Esq.