**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

| | | |
|---|---|---|
| KAWA FOAD, ESQ., | § | |
| | § | |
| ***Plaintiff***, | § | |
| | § | |
| v. | § | Civil Action No. 4:26-cv-05348 |
| | § | |
| THE HARRIS-GALVESTON SUBSIDENCE DISTRICT, et al., | § | Judge Lee H. Rosenthal |
| | § | |
| | § | |
| | § | |
| ***Defendants***. | | |

**PLAINTIFF'S RESPONSE IN OPPOSITION TO DEFENDANTS ROBINSON, SEAQUIST, AND BICKERSTAFF HEATH DELGADO ACOSTA LLP'S RULE 12(b)(6) MOTION TO DISMISS (ECF 17)**

## TABLE OF CONTENTS

**I. NATURE AND STAGE OF THE PROCEEDING ........ 1**

**II. STATEMENT OF THE ISSUES AND STANDARD OF REVIEW ........ 2**

**III. SUMMARY OF THE ARGUMENT ........ 3**

**IV. THE MOTION INVENTS FACTS FOUND NOWHERE IN THE PLEADINGS AND MISCHARACTERIZES THE ONES IT CITES ........ 4**

**V. ARGUMENT ........ 7**

A. Count VII Pleads A Plausible Agreement With The Specificity The Fifth Circuit Requires. ........ 7

B. The Deprivation Pleaded Is Retaliation For Petitioning—Not A Right To Practice Law Or A Right To Records—And The Motion Does Not Address It. ........ 11

C. Robinson And Seaquist Have Not Established Qualified Immunity On The Face Of The FAC. ........ 13

D. Texas Attorney Immunity Cannot Bar A § 1983 Claim, And *Butz* Does Not Create A "Federal Common Law" Immunity For Records Counsel. ........ 15

E. Count VIII States A Claim Against Bickerstaff; At Minimum, Any Deficiency Is Curable. ........ 16

F. Dismissal With Prejudice Would Be Improper; In The Alternative, Leave To Amend Should Be Granted. ........ 18

**VI. CONCLUSION ........ 19**

**TABLE OF CITATIONS**

**Cases**

*Adickes v. S.H. Kress & Co.*, 398 U.S. 144 (1970) .......... 7
*Ashcroft v. Iqbal*, 556 U.S. 662 (2009) .......... 2, 8
*Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007) .......... 2, 7, 10
*Brewster v. Dretke*, 587 F.3d 764 (5th Cir. 2009) .......... 18
*Butz v. Economou*, 438 U.S. 478 (1978) .......... 6, 15
*Cinel v. Connick*, 15 F.3d 1338 (5th Cir. 1994) .......... 7
*Clark v. Amoco Prod. Co.*, 794 F.2d 967 (5th Cir. 1986) .......... 2
*Dennis v. Sparks*, 449 U.S. 24 (1980) .......... 7, 16, 19
*Filarsky v. Delia*, 566 U.S. 377 (2012) .......... 13, 14, 19
*Goldfarb v. Virginia State Bar*, 421 U.S. 773 (1975) .......... 12
*Great Plains Tr. Co. v. Morgan Stanley Dean Witter & Co.*, 313 F.3d 305 (5th Cir. 2002) .......... 18
*Howlett v. Rose*, 496 U.S. 356 (1990) .......... 15
*Johnson v. City of Shelby*, 574 U.S. 10 (2014) (per curiam) .......... 2, 4
*Keenan v. Tejeda*, 290 F.3d 252 (5th Cir. 2002) .......... 4, 11, 14
*Lugar v. Edmondson Oil Co.*, 457 U.S. 922 (1982) .......... 7
*Martinez v. California*, 444 U.S. 277 (1980) .......... 4
*McBurney v. Young*, 569 U.S. 221 (2013) .......... 12
*McCuin v. Texas Power & Light Co.*, 714 F.2d 1255 (5th Cir. 1983) .......... 12
*Morgan v. Swanson*, 659 F.3d 359 (5th Cir. 2011) (en banc) .......... 6
*Mullenix v. Luna*, 577 U.S. 7 (2015) .......... 6
*Priester v. Lowndes County*, 354 F.3d 414 (5th Cir. 2004) .......... 7, 8
*Richardson v. McKnight*, 521 U.S. 399 (1997) .......... 13
*Taylor v. Tolbert*, 644 S.W.3d 637 (Tex. 2022) .......... 4, 7, 15
*Tower v. Glover*, 467 U.S. 914 (1984) .......... 16, 19
*Wyatt v. Cole*, 504 U.S. 158 (1992) .......... 4, 13, 19

**Statutes**

42 U.S.C. § 1983 .......... 1, 4, 7, 13, 15, 16
Tex. Gov't Code § 81.101 .......... 6
Tex. Gov't Code §§ 81.103–.104 .......... 6
Tex. Gov't Code § 552.301 .......... 6, 16

**Rules**

Fed. R. Civ. P. 12(b)(6) .......... 1, 2, 3, 4, 9, 19
Fed. R. Civ. P. 15(a) .......... 18, 19
S.D. Tex. LR 7.5(A) .......... 19
HGSD Rule 1.1(p) (Oct. 11, 2023) (ECF 16-1) .......... 5

HGSD Rule 7.3(c) (Oct. 11, 2023) (ECF 16-1) ........................................................................ 6, 12

**TO THE HONORABLE LEE H. ROSENTHAL, UNITED STATES DISTRICT JUDGE:**

Plaintiff KAWA FOAD, ESQ. ("***Plaintiff***"), appearing pro se, respectfully submits this Response in Opposition to the Motion to Dismiss Pursuant to Federal Rule of Civil Procedure 12(b)(6) (ECF 17) (the "***Motion***") filed by Defendants LORI J. ROBINSON, ESQ. ("***Robinson***"), GUNNAR P. SEAQUIST, ESQ. ("***Seaquist***"), and BICKERSTAFF HEATH DELGADO ACOSTA LLP ("***Bickerstaff***") (collectively, the "***Bickerstaff Defendants***"), and respectfully states as follows:

## I. NATURE, AND STAGE OF THE PROCEEDING

This is a civil-rights action under 42 U.S.C. § 1983, with supplemental Texas-law claims, arising from a coordinated campaign to silence the one lawyer demanding to see the records behind an unadjudicated $106,901 exaction by the Harris-Galveston Subsidence District ("***HGSD***" or the "***District***"). Plaintiff's Verified First Amended Complaint (ECF 6) (the "***FAC***") pleads two counts against the Bickerstaff Defendants: § 1983 conspiracy (Count VII), against Robinson, Seaquist, and Bickerstaff, and respondeat superior under Texas law (Count VIII), against Bickerstaff. (FAC ¶¶ 28–30, 252–68.) Robinson is the Bickerstaff partner "who directed HGSD's responses to the Requests"; Seaquist is the Bickerstaff partner "who participated in HGSD's public-information function"; both are sued individually for conduct under color of state law. (FAC ¶¶ 28–29.)

The Bickerstaff Defendants, served by waiver, filed the Motion on September 22, 2026. (ECF 17.) The same day, Defendant Helen Stewart Truscott ("***Truscott***" or the "***Hearing Examiner***") filed a separate motion to dismiss (ECF 16), to which Plaintiff has responded (ECF 20). The GDHM Defendants' Rule 12(b)(6) motion (ECF 10) is fully briefed; the defendants' joint motion to stay discovery (ECF 19) is pending; and the Rule 16 conference has been reset to November 30, 2026 (ECF 21). Plaintiff's motion for a seven-day extension of the deadline to

respond to the Motion is pending. Pin citations to docketed filings are to the page numbers assigned by the Court's CM/ECF header.

## II. STATEMENT OF THE ISSUES, AND STANDARD OF REVIEW

The Motion presents four issues: (1) whether the FAC pleads facts from which an agreement between the Bickerstaff Defendants and the state-actor Defendants may plausibly be inferred, and a resulting deprivation of federal rights (ECF 17 at 13–21); (2) whether Robinson and Seaquist—private lawyers retained under an engagement the FAC alleges no Board ever authorized—have established qualified immunity on the face of the FAC (ECF 17 at 21–24); (3) whether Count VIII states a claim against Bickerstaff (ECF 17 at 24–25); and (4) whether Texas's common-law attorney-immunity defense, or a "federal common law" variant of it, bars any claim (ECF 17 at 25–26).

Under Rule 12(b)(6), the Court accepts all well-pleaded facts as true, views them in the light most favorable to Plaintiff, and asks whether the FAC states a claim that is plausible on its face. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007); *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). A conspiracy claim survives where the complaint pleads "enough fact to raise a reasonable expectation that discovery will reveal evidence of illegal agreement." *Twombly*, 550 U.S. at 556. Qualified immunity and attorney immunity are affirmative defenses; they support dismissal at this stage only "if a successful affirmative defense appears clearly on the face of the pleadings." *Clark v. Amoco Prod. Co.*, 794 F.2d 967, 970 (5th Cir. 1986). And a complaint is not dismissed for pleading the wrong label because federal pleading rules "do not countenance dismissal of a complaint for imperfect statement of the legal theory supporting the claim asserted." *Johnson v. City of Shelby*, 574 U.S. 10, 11 (2014) (per curiam).

## III. SUMMARY OF THE ARGUMENT

The Motion is built on a complaint the Bickerstaff Defendants wrote for Plaintiff, not the one he filed. It tells the Court that Truscott is an "Administrative Law Judge" (ECF 17 at 7, 10)—a title that appears nowhere in the FAC, the District's Rules, or the Texas Government Code, and that the Hearing Examiner herself does not claim. It tells the Court that Plaintiff "makes no allegation that any of the Bickerstaff Defendants played any role in the contested case hearing" (ECF 17 at 10), when the FAC pleads that Robinson and Seaquist were served with the omnibus disqualification motion in that very proceeding, that Robinson corresponded directly with the Hearing Examiner in it, and that the General Manager's counsel "removed" them from its correspondence only in April 2026. (FAC ¶¶ 81, 89, 126.) It tells the Court that "only one" of the six evidentiary facts pleaded in paragraph 255 "even mentions a BHDA lawyer" (ECF 17 at 16), when three of them do. And it tells the Court, as a matter of fact, that the District complied with the Public Information Act (it did not), that nothing "of the sort has ever transpired," and that Seaquist's pleaded participation is "categorically false" (ECF 17 at 8, 15, 17)—denials that have no place in a Rule 12(b)(6) motion and which the Court must disregard.

On the law, the Motion fails at every step. *First*, the FAC pleads an agreement with the specificity the Fifth Circuit requires: A defined object (collect the exaction, conceal the records, remove the advocate); a defined membership (a public agency, its examiner, and three retained firms that "shared an outsider's correspondence among themselves in real time" and "spoke for one another's clients interchangeably"); and overt acts by each Bickerstaff Defendant, including four written representations by Robinson that production was "complete" and that "no other responsive documents exist in any format," each disproved by the District's own later productions, the last of them timed to the Board's ratification of Plaintiff's removal. (FAC ¶¶ 126–27, 186, 253–58.) *Second*, the deprivation pleaded is retaliation for petitioning—the records requests, the

Attorney General proceeding, and the threatened federal suit—not a "right to practice law without a license" or a constitutional right to records, and the Motion's authorities on those straw-man propositions are beside the point. *Third*, qualified immunity is not available to private parties who invoke state power for private ends, *Wyatt v. Cole*, 504 U.S. 158, 168 (1992), and in any event "government retaliation against a private citizen for exercise of First Amendment rights cannot be objectively reasonable." *Keenan v. Tejeda*, 290 F.3d 252, 261 (5th Cir. 2002). *Fourth*, Texas attorney immunity cannot defeat a § 1983 claim—"[c]onduct by persons acting under color of state law which is wrongful under 42 U.S.C. § 1983 . . . cannot be immunized by state law," *Martinez v. California*, 444 U.S. 277, 284 n.8 (1980)—and the Motion's own authority, *Taylor v. Tolbert*, 644 S.W.3d 637 (Tex. 2022), refused to apply the defense to federal claims. *Fifth*, Count VIII is pleaded against Bickerstaff for its lawyers' false statements and for its own institutional conduct; the absence of a count caption naming Robinson is not a ground for dismissal under *Johnson v. City of Shelby*, and any deficiency is curable by amendment. Dismissal with prejudice—requested without a word of argument—would be improper.

## IV. THE MOTION INVENTS FACTS FOUND NOWHERE IN THE PLEADINGS AND MISCHARACTERIZES THE ONES IT CITES

A Rule 12(b)(6) motion tests the operative FAC Plaintiff filed. The Motion repeatedly substitutes assertions of its own—about the tribunal, about the Bickerstaff Defendants' role, about what the FAC does and does not allege, and about what actually happened—that are found nowhere in the pleadings and, in several instances, are contradicted by the paragraphs the Motion cites. Each of the following is verifiable from the Motion and the FAC.

1. **The "Administrative Law Judge."** The Motion twice describes Truscott as "the Administrative Law Judge ('ALJ')" and refers to "the ALJ" throughout its introduction. (ECF 17 at 7, 10.) No such allegation exists. The FAC pleads that Truscott is a hearing examiner "appointed by HGSD and also compensated by HGSD to preside over the Contested Hearing where the General Manager was Woodloch's adversary." (FAC ¶ 16(iii).) The District's Rules define a hearings examiner as "a person appointed by the

General Manager to conduct a hearing or other proceeding." (ECF 16-1, Rule 1.1(p).) An administrative law judge in Texas is an officer of the State Office of Administrative Hearings or of a state agency, appointed and insulated by statute; a District hearings examiner is a private attorney selected and paid by the General Manager. The difference is not semantic: the Motion uses the invented title to cast Plaintiff's removal as the ruling of an independent tribunal, when the FAC pleads that it was the act of a compensated contractor of the adverse party, entered without motion, notice, or hearing. (FAC ¶¶ 73, 166–67.) Truscott's own motion does not call her an ALJ.

2. **"Played no role in the contested case hearing."** The Motion asserts that the Bickerstaff Defendants "played no role in the contested case hearing or Plaintiff's ability to participate in it" and that Plaintiff "makes no allegation" to the contrary. (ECF 17 at 7, 10.) The FAC alleges that on October 6, 2025—eleven days before the unauthorized-practice accusation—Plaintiff wrote to "Martin, Robinson, Seaquist, and Ellis" demanding complete production and confirmation that his noticed absence from the hearing would not prejudice his clients (FAC ¶ 60); that on November 24, 2025, Plaintiff "formally submitted the Omnibus Motion and accompanying records to Ellis, Martin, Robinson, and Seaquist, requesting written confirmation that the attachments had been delivered to their respective clients and intended recipients—including the Hearing Examiner" (FAC ¶ 81); that in April 2026 the General Manager's counsel announced that "Ms. Robinson and Mr. Se[a]quist have not made an appearance in this proceeding and have been removed" from the contested-case correspondence—an announcement that would have been unnecessary had they not been on it (FAC ¶ 89); and that on June 17, 2026, Robinson sent her third "complete production" representation to Mr. Davis "copying Turco, Jones, and the Hearing Examiner" (FAC ¶ 126). Whatever the Bickerstaff Defendants' role turns out to have been, the FAC alleges one, and the Motion's contrary assertion is not a fact the Court may accept.

3. **"Only one" of six.** The Motion represents that, "[o]f the six items Plaintiff lists as 'evidence' of a purported agreement, only one even mentions a BHDA lawyer." (ECF 17 at 16.) Paragraph 255 lists, among the six, "Robinson's and Martin's parallel false assurances of complete production," "the real-time circulation of Plaintiff's correspondence among HGSD's lawyers," and "the uniform silence that met Plaintiff's April 15, 2026 verified declaration." (FAC ¶ 255.) The second item is pleaded with reference to Robinson and Seaquist, who were on the correspondence that circulated (FAC ¶¶ 57, 60, 81); the third concerns a declaration transmitted to "twenty-four named attorneys at GDHM and Bickerstaff" (FAC ¶ 108). Three of six, not one.

4. **"Plaintiff's sole averment."** Building on the miscount, the Motion asserts that Plaintiff's "sole averment in support of the Bickerstaff Defendants' alleged agreement" is that Robinson and Martin "both assured Plaintiff of their belief that they had provided a complete response." (ECF 17 at 16.) The FAC does not plead a "belief"; it pleads four written representations that production was complete and that "no other responsive documents exist in any format," and that "[e]ach representation was false when made" because "records produced afterward—including the fee worksheet produced July 1, 2026—were responsive, existed when each representation was made, and had been requested." (FAC ¶ 126.) It pleads that the native records were withheld from Plaintiff alone while being released to other members of the public (FAC ¶¶ 130–31), that the

fourth "complete" representation was made on June 30, 2026, eight days before the Board ratified Plaintiff's removal with the records still withheld (FAC ¶¶ 126, 215), and that Robinson's correspondence treated Plaintiff "himself as the requestor" (FAC ¶ 219). The Motion does not engage any of this; it recharacterizes it as a good-faith "belief" and then attacks the recharacterization.

5. **The verified notice that became an "omnibus motion."** Footnote 1 of the Motion asserts that the "verified notice" Seaquist ignored "appears to be" the Omnibus Motion filed in the contested case, and that no counsel "outside of the contested case proceeding" had a duty to respond to it. (ECF 17 at 13 n.1; *see id.* at 17.) The FAC says what the notice was: the April 15, 2026 verified declaration "documenting the misconduct alleged herein," transmitted "to HGSD's officials and twenty-four named attorneys at GDHM and Bickerstaff," to which "[n]o recipient responded, investigated, or corrected the conduct." (FAC ¶¶ 108, 255, 267.) The Motion's footnote substitutes a different document, then argues that no duty attached to the substitute.

6. **Factual denials.** The Motion asserts that the District complied with the Public Information Act—"(it did not)"—that "nothing of the sort has ever transpired," that the Bickerstaff Defendants played no role "as, of course, they did not," that Seaquist's pleaded participation is "categorically false," and that the conspiracy is "fantasized." (ECF 17 at 8, 12, 15, 17.) These are denials, not arguments. They belong in an answer. On this Motion the FAC's allegations—including that the Attorney General "ordered the release of records" after the District "failed to comply with TPIA § 552.301" (FAC ¶ 52), that production arrived "more than fourteen weeks after the OAG Ruling ordered disclosure" and remains incomplete (FAC ¶ 77), and that Seaquist participated in the records function with knowledge of its falsity (FAC ¶ 258)—are taken as true.

7. **"Admits he is unlicensed."** The Motion opens with the assertion that Plaintiff "admits he is unlicensed to practice law in the State of Texas" and later declares it "beyond reasonable dispute that Plaintiff was practicing a law without a license in Texas." (ECF 17 at 7, 18.) The FAC pleads that Plaintiff is a Florida-licensed attorney (FAC ¶ 13) and that he "permissibly represented his Clients" in the permit dispute (FAC ¶ 14), before a tribunal whose own Rules provide that a party "may be represented by counsel, engineer, or other representative." (ECF 16-1, Rule 7.3(c).) Whether an out-of-state lawyer's appearance as a "representative" before a special-purpose district—not "before a judge in court," Tex. Gov't Code § 81.101(a)—constitutes the unauthorized practice of law is a question Texas commits to the judicial branch and the Unauthorized Practice of Law Committee, Tex. Gov't Code §§ 81.101(b), 81.103–.104, and one the FAC pleads was never adjudicated by anyone with authority to decide it. (FAC ¶¶ 73, 206.) It is not an "admission," and the Motion's declaration that it is "beyond reasonable dispute" is argument dressed as fact.

8. **Misstated authorities.** The Motion's qualified-immunity section cites *Morgan v. Swanson* at "659 F.3d 459, 371–72"—a page range that precedes the volume page it gives; the en banc decision is reported at 659 F.3d 359 (5th Cir. 2011). (ECF 17 at 23.) It cites *Mullenix v. Luna* at "557 U.S. 7"; the decision is at 577 U.S. 7 (2015). (*Id.*) It quotes *Butz v. Economou*, 438 U.S. 478, 512 (1978), for the proposition that "advocates" enjoy absolute immunity (ECF 17 at 26), omitting that *Butz* derived that immunity from the common-law protection of "parties participating in the judicial

> process," *id.* at 509, and extended it to "an agency attorney who arranges for the presentation of evidence on the record in the course of an adjudication," *id.* at 517—not to lawyers answering records requests. And it cites *Taylor v. Tolbert* for attorney immunity (ECF 17 at 25) without disclosing that *Taylor* held the defense inapplicable to the federal claims before it. 644 S.W.3d at 640–41.

A movant who must retitle the adjudicator, erase the pleaded contacts between its clients and the proceeding, miscount the pleaded evidence, swap one document for another, and deny the allegations outright has not shown that the complaint fails to state a claim. It has shown that the complaint states one it would prefer to answer differently.

## V. ARGUMENT

### A. Count VII Pleads A Plausible Agreement With The Specificity The Fifth Circuit Requires.

#### *1. The standard.*

A § 1983 conspiracy claim against private parties requires "facts that suggest: 1) an agreement between the private and public defendants to commit an illegal act . . . and 2) an actual deprivation of constitutional rights." *Cinel v. Connick*, 15 F.3d 1338, 1343 (5th Cir. 1994); *Priester v. Lowndes County*, 354 F.3d 414, 420 (5th Cir. 2004). The plaintiff must plead "specific facts to show an agreement," *Priester*, 354 F.3d at 421—but the facts need only make the agreement plausible, not prove it. *Twombly*, 550 U.S. at 556. A private party who is "a willful participant in joint activity with the State or its agents" acts under color of law, *Lugar v. Edmondson Oil Co.*, 457 U.S. 922, 941 (1982) (quoting *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 152 (1970)), and private persons who conspire with an adjudicator act under color of state law even where the adjudicator is immune: "Immunity does not change the character of the judge's action or that of his co-conspirators." *Dennis v. Sparks*, 449 U.S. 24, 28 (1980). The Bickerstaff Defendants do not contest color of law. They could not: their qualified-immunity argument rests on the premise that Robinson and Seaquist were "carrying out the work of government." (ECF 17 at 22.)

### 2. *The FAC pleads the object, the members, the mechanism, and each Bickerstaff Defendant's overt acts.*

*Priester* and the cases it follows reject complaints that allege a conspiracy by label—a defendant who "ignored or 'encouraged and/or allowed'" another's conduct, 354 F.3d at 421—without facts suggesting an actual agreement. The FAC is not that complaint. It pleads the *object* of the agreement: "the collection of an unadjudicated six-figure exaction, the concealment of the records that would expose its baselessness, and the elimination and discrediting of the advocate pressing for them." (FAC ¶ 254.) It pleads the *membership and mechanism*: "a public agency, its appointed examiner, and three privately retained law firms that shared an outsider's correspondence among themselves in real time, spoke for one another's clients interchangeably—Board counsel arguing the General Manager's records defense, the General Manager's counsel delivering the Board's legal updates—covered for one another's misstatements in open session, and deployed the machinery of the District against the one lawyer demanding to see its records." (*Id.*) It pleads the *circulation* that makes the agreement plausible: Ellis, never copied on Plaintiff's September 26, 2025 inquiry, "joined the thread, confirming that the correspondence was circulating among HGSD's lawyers in real time" (FAC ¶ 57), and Plaintiff's October 6, 2025 demand went to Martin, Robinson, Seaquist, and Ellis together (FAC ¶ 60). And it pleads the *timing*: "until October 17, 2025, HGSD's lawyers negotiated with Plaintiff without objection, and within days of his September 30 and October 6, 2025 demands—for the fee worksheet, the Workflow entries, the mailing records, and the website records—the same actors pivoted to the UPL charge, the Disqualification Ruling," and the No-Contact Directive. (FAC ¶ 136; *see id.* ¶ 82.)

Within that structure, the FAC attributes specific overt acts to each Bickerstaff Defendant, as *Iqbal* requires. Robinson: "the serial written assurances that production was complete" (FAC ¶

258)—four of them, on October 3, 2025, June 15, June 17, and June 30, 2026, each stating that "no other responsive documents exist in any format," each "false when made," and the June 17 representation copied to the Hearing Examiner in the contested case (FAC ¶¶ 126, 186); the substitution of metadata-stripped PDFs for native records that the District released natively to other requestors (FAC ¶¶ 130–31); the November 25, 2025 cost estimate "so high that Plaintiff rejected it in writing as prohibitive" (FAC ¶ 83); and the December 16, 2025 re-attachment of "the same conflicting PDF Violation Letters" with an insistence that the native-format demand "had been satisfied" (FAC ¶ 85). Seaquist: participation in the records-response function with knowledge of its falsity, and silence in the face of the April 15, 2026 verified declaration (FAC ¶¶ 108, 258), after receiving the Omnibus Motion in November 2025 with a request to confirm its delivery to the Hearing Examiner (FAC ¶ 81). Bickerstaff: its attorneys' acts within the scope of their agency, and its own failure, after the verified declaration, to investigate, correct, or withdraw (FAC ¶¶ 258, 267). The FAC further pleads that the Bickerstaff engagement was never authorized by the Board and that no Bickerstaff invoice or proof of payment has ever been produced (FAC ¶¶ 174–79, 215)—facts bearing on motive and on the "own financial interest" the FAC alleges counsel pursued (FAC ¶ 261).

The Motion's response is that Robinson's conduct is "equally—and, in fact more—consistent with Robinson's and the District's ongoing efforts at compliance." (ECF 17 at 16.) That is a jury argument. On a Rule 12(b)(6) motion the Court does not choose between competing inferences; it asks whether the inference Plaintiff draws is plausible. A lawyer who four times certifies in writing that no other responsive documents exist, while the native fee worksheet that would have exposed the exaction's basis sits in the General Manager's files and is produced only after the fourth certification (FAC ¶¶ 126, 128), has at minimum pleaded herself into the

"reasonable expectation that discovery will reveal evidence of illegal agreement." *Twombly*, 550 U.S. at 556.

#### *3. "Parallel conduct" is an antitrust concept the FAC does not plead.*

The Motion invokes *Twombly*'s discussion of "parallel conduct." (ECF 17 at 16.) *Twombly* addressed independent competitors whose identical pricing was "just as much in line with a wide swath of rational and competitive business strategy unilaterally prompted by common perceptions of the market." 550 U.S. at 554. Robinson and Martin were not competitors acting unilaterally; they were co-counsel for the same governmental body, on the same correspondence, answering the same requestor, whose assurances the FAC alleges were coordinated, not coincident—Martin disclaimed any role in open-records matters on June 22, 2026, and delivered the "General Manager's PIA Response" nine days later, repeating Robinson's completeness representation. (FAC ¶¶ 136, 187.) Lawyers for one client who make the same false statement to the same adversary about the same records are not engaged in "parallel conduct"; they are engaged in joint conduct, and the FAC pleads it as such.

#### *4. Seaquist.*

The Motion argues that the allegations against Seaquist are "abjectly conclusory" because they are pleaded on information and belief and because Seaquist "had no reason, let alone the legal obligation," to respond to the Omnibus Motion. (ECF 17 at 17.) As shown above, the "verified notice" was the April 15, 2026 declaration, not the Omnibus Motion (FAC ¶¶ 108, 258), and the FAC pleads Seaquist's receipt of both (FAC ¶¶ 81, 108). The FAC pleads that Seaquist "participated in HGSD's public-information function" (FAC ¶ 29), that the October 6, 2025 demand was addressed to him (FAC ¶ 60), that the disciplinary rule on truthfulness in statements to others is implicated "as to Robinson's and Seaquist's written production representations" (FAC ¶ 190), and that he participated in the records-response function "with knowledge of its falsity"

(FAC ¶ 258). Pleading on information and belief is appropriate where, as here, the facts—who within Bickerstaff reviewed, drafted, and approved the four completeness representations—are peculiarly within the defendants' possession, and the FAC pleads that the District has never produced its own engagement, billing, or payment records for the firm. (FAC ¶¶ 174, 177.) Whether Seaquist's participation was as the FAC alleges is a question for discovery, not a ground for dismissal.

### B. The Deprivation Pleaded Is Retaliation For Petitioning—Not A Right To Practice Law Or A Right To Records—And The Motion Does Not Address It.

The Motion's second element argument attacks two rights Plaintiff does not assert. It argues at length that Plaintiff has no "constitutionally protected right to practice law without a license in Texas" (ECF 17 at 18–19) and that the Public Information Act creates no federal right to records or protected property interest (ECF 17 at 19–21). Count VII does not depend on either proposition. It pleads that the Defendants agreed "to punish and silence his petitioning, remove him from the representation, and conceal the records that would expose the Penalty's baselessness." (FAC ¶ 253.) The right deprived is the right to petition the government—by records requests, by an opposition filed in the Attorney General proceeding, by written demands, and by notice of intent to sue—without retaliation. (FAC ¶¶ 48–50, 78, 219.) The FAC says so in terms: "The wrong is the same whoever had the better of the licensure debate." (FAC ¶ 218.)

"The First Amendment prohibits not only direct limits on individual speech but also adverse governmental action against an individual in retaliation for the exercise of protected speech activities." *Keenan*, 290 F.3d at 258. A retaliation claim by a private citizen requires that "(1) they were engaged in constitutionally protected activity, (2) the defendants' actions caused them to suffer an injury that would chill a person of ordinary firmness from continuing to engage in that activity, and (3) the defendants' adverse actions were substantially motivated against the

plaintiffs' exercise of constitutionally protected conduct." *Id.* Each element is pleaded: the Requests, the Attorney General opposition, and the notice of intent to sue are petitioning (FAC ¶¶ 48–49, 78); the unauthorized-practice accusation, the Disqualification Ruling, the No-Contact Directive, and the July 8, 2026 silencing are injuries that would chill a person of ordinary firmness (FAC ¶¶ 73, 87, 214, 219); and the FAC pleads motive and timing—"within days" of the September 30 and October 6, 2025 records demands, "the same actors pivoted to the UPL charge." (FAC ¶ 136; *see id.* ¶ 82.)

The Motion's authorities do not touch this claim. *Goldfarb v. Virginia State Bar*, 421 U.S. 773 (1975), and *McCuin v. Texas Power & Light Co.*, 714 F.2d 1255 (5th Cir. 1983), concern a State's power to regulate the bar; neither suggests that a government body may retaliate against a lawyer for petitioning because his bar card is from another State. *McBurney v. Young*, 569 U.S. 221 (2013), and the district-court decisions the Motion cites (ECF 17 at 19–21) hold that the Constitution confers no free-standing right to obtain public records; none holds that a citizen who requests records may be punished for doing so. The distinction is the one between the right to a benefit and the right not to be retaliated against for seeking it, and the Motion never addresses it. Nor does the licensure question help the Bickerstaff Defendants: the FAC pleads that Rule 7.3(c) permits appearance by an "other representative," that no court or committee with authority over the unauthorized practice of law ever found that Plaintiff engaged in it, and that the accusation was deployed as the instrument of retaliation. (FAC ¶¶ 73, 206.) A motion to dismiss is not the vehicle for the Bickerstaff Defendants to try that question in their clients' favor.

Finally, the Motion contends that Plaintiff "cannot . . . draw any connection" between the completeness assurances and his removal from the proceeding. (ECF 17 at 16.) The connection is the conspiracy. A conspirator is liable for the acts of co-conspirators in furtherance of the common

object; the Bickerstaff Defendants need not have signed the Disqualification Ruling to be answerable for an agreement whose pleaded object included Plaintiff's removal and whose pleaded means included the concealment the Bickerstaff Defendants carried out. (FAC ¶¶ 253–54, 258.) That the Motion treats the records function and the removal as unrelated is itself a departure from the pleading, which alleges they were two halves of one enterprise. (FAC ¶¶ 136, 254.)

### C. Robinson And Seaquist Have Not Established Qualified Immunity On The Face Of The FAC.

#### *1. Qualified immunity is not available to private lawyers on these allegations.*

The Motion assumes that because Bickerstaff was "retained to assist with the District's discharge of its duties under the TPIA," its partners may invoke qualified immunity under *Filarsky v. Delia*, 566 U.S. 377 (2012). (ECF 17 at 22.) *Filarsky* is narrower than the Motion suggests. The Supreme Court has twice refused to extend qualified immunity to private parties sued under § 1983. In *Wyatt v. Cole*, 504 U.S. 158 (1992), it held that private defendants who invoke state process for their own ends may not claim it, because the immunity "acts to safeguard government, and thereby to protect the public at large, not to benefit its agents," and "[t]hese rationales are not transferable to private parties." *Id.* at 168. In *Richardson v. McKnight*, 521 U.S. 399 (1997), it denied the immunity to employees of a private firm "systematically organized to perform a major administrative task for profit." *Id.* at 409–10. *Filarsky* distinguished both: *Wyatt* involved individuals who "had no connection to government and pursued purely private ends," 566 U.S. at 392–93, and *Richardson* involved a private firm operating a prison, *id.* at 393. The question *Filarsky* answered was whether an individual lawyer engaged to conduct a specific government investigation could seek immunity. 566 U.S. at 393–94.

The FAC pleads facts that place Robinson and Seaquist on the *Wyatt–Richardson* side of that line, not the *Filarsky* side. Bickerstaff is a private law firm; the FAC alleges that its engagement with the District was never authorized by the Board, that no invoice or proof of

payment for its work has ever been produced, and that its lawyers "acted in their own financial interest." (FAC ¶¶ 174–79, 215, 261.) The FAC alleges, in other words, that Robinson and Seaquist were not lawfully "carrying out the work of government" at all, but were private actors operating under an unauthorized engagement for private gain. Whether the *Filarsky* rationale—avoiding "unwarranted timidity" on the part of those legitimately engaged in the public's business—applies to lawyers in that position is a question that cannot be resolved against Plaintiff on the pleadings. And the Motion's invocation of *Filarsky* carries a cost: a defendant who claims to have been doing the government's work has conceded that she acted under color of state law, which is the premise of Count VII.

***2. Both prongs are satisfied on the pleadings.***

Even if qualified immunity were available, the Motion fails to establish it. On the first prong, the Motion argues only that "none of Plaintiff's alleged claims for relief state a violation of a constitutional or statutory right" (ECF 17 at 24)—an argument that, as shown in Section V.B, *supra*, attacks rights Plaintiff does not assert and ignores the retaliation claim he does. On the second prong, the Fifth Circuit has held that "government retaliation against a private citizen for exercise of First Amendment rights cannot be objectively reasonable." *Keenan*, 290 F.3d at 261. The right not to be retaliated against for petitioning the government was clearly established long before 2025, and the Motion cites no authority suggesting otherwise; its clearly-established-law discussion (ECF 17 at 22–24) is a string of general propositions followed by the bare assertion that Plaintiff "can point to no authority." That is not how the defense is established on a motion to dismiss. The Motion also faults the FAC for failing to plead each defendant's "own individual actions." (ECF 17 at 24.) It does. (FAC ¶¶ 28–29, 126, 186, 190, 258.)

### D. Texas Attorney Immunity Cannot Bar A § 1983 Claim, And *Butz* Does Not Create A "Federal Common Law" Immunity For Records Counsel.

Section IV.D of the Motion argues that Texas's common-law attorney-immunity defense bars Plaintiff's claims, and then—in a single paragraph—that "federal common law entitles the Bickerstaff Defendants to absolute immunity on Plaintiff's federal claims, as well." (ECF 17 at 25–26.) Neither contention survives examination.

*State-law immunity.* A state-law defense cannot defeat a federal civil-rights claim. "Conduct by persons acting under color of state law which is wrongful under 42 U.S.C. § 1983 or § 1985(3) cannot be immunized by state law. A construction of the federal statute which permitted a state immunity defense to have controlling effect would transmute a basic guarantee into an illusory promise; and the supremacy clause of the Constitution insures that the proper construction may be enforced." *Martinez*, 444 U.S. at 284 n.8; *accord Howlett v. Rose*, 496 U.S. 356, 375–76 (1990). The Supreme Court of Texas applied exactly that principle in the case the Motion relies on. *Taylor v. Tolbert* held that attorney immunity barred the state-law wiretap claims before it but did not bar the federal claims, because "federal courts would not apply Texas's common-law attorney-immunity defense to a claim under that statute." 644 S.W.3d at 640–41. The Motion cites *Taylor* for the scope of the defense (ECF 17 at 25) and omits its holding. Attorney immunity is therefore irrelevant to Count VII.

*"Federal common law."* The Motion's alternative is that *Butz* extends absolute immunity to "advocates," and that the Bickerstaff Defendants were advocates "both before the OAG and in responding to his TPIA requests." (ECF 17 at 26.) *Butz* extended absolute immunity to adjudicators and to agency officials performing prosecutorial functions in adjudication—the common-law protection of "parties participating in the judicial process," 438 U.S. at 509—and held that "an agency attorney who arranges for the presentation of evidence on the record in the course of an

adjudication is absolutely immune from suits based on the introduction of such evidence." *Id.* at 517. Answering a requestor's public-information request is not an adjudication, and a letter asking the Attorney General for a ruling under Tex. Gov't Code § 552.301 is not the presentation of evidence before a tribunal. More fundamentally, the Supreme Court has refused to extend absolute immunity to lawyers who conspire with state officials. In *Tower v. Glover*, 467 U.S. 914 (1984), it held that public defenders alleged to have conspired with state officials have no immunity from § 1983 liability, explaining that the Court does "not have a license to establish immunities from § 1983 actions in the interests of what we judge to be sound public policy." *Id.* at 922–23. And in *Dennis*, private parties alleged to have conspired with a judge were held answerable notwithstanding the judge's own absolute immunity. 449 U.S. at 28–29. If a public defender and a litigant conspiring with a judge enjoy no derivative immunity, private records counsel conspiring with a General Manager and a hearing examiner enjoy none.

### E. Count VIII States A Claim Against Bickerstaff; At Minimum, Any Deficiency Is Curable.

The Motion argues that Count VIII fails because Plaintiff "does not plead any tort claims under Texas law against Robinson or Seaquist," and that respondeat superior "is not an independent cause of action." (ECF 17 at 25.) Plaintiff does not contend otherwise; Count VIII is pleaded as the basis on which Bickerstaff answers for its attorneys' tortious conduct and for its own. (FAC ¶¶ 264–67.) The Motion's point is that Counts V and VI name Martin, Ellis, and their firms, not Robinson. (ECF 17 at 25.) But Count VIII expressly incorporates the section captioned "The Attorneys' Pattern of Knowingly False Statements; The Texas Disciplinary Rules," which pleads Robinson's "four written representations . . . that production was complete and 'no other responsive documents exist in any format,' each disproved by HGSD's own subsequent productions," and which identifies the rule on "truthfulness in statements to others" as implicated

by "Robinson's and Seaquist's written production representations." (FAC ¶¶ 186, 190, 264.) Count VIII then alleges that Bickerstaff is liable "for its attorneys' tortious acts pleaded herein." (FAC ¶ 266.) Knowingly false statements of fact made to induce reliance are tortious under Texas law whatever caption they bear, and the Supreme Court has made clear that a complaint is not dismissed for an "imperfect statement of the legal theory supporting the claim asserted." *Johnson*, 574 U.S. at 11.

Count VIII also pleads Bickerstaff's own institutional conduct: receipt of the April 15, 2026 verified declaration by "twenty-four named attorneys at GDHM and Bickerstaff," receipt of the Omnibus Motion seeking disqualification of its lawyers by name, and the firm's decision to investigate nothing, correct nothing, withdraw from nothing, and "retain[] their benefits." (FAC ¶ 267.) The Motion dismisses this as "naked assertions" (ECF 17 at 25), but it is a specific allegation of what the firm received, when, and what it did in response. Whether that conduct supports liability independent of the attorneys' acts is a question of Texas law the Motion does not brief.

Should the Court conclude that Count VIII requires a separately captioned tort count against Robinson and Seaquist, the remedy is leave to amend, not dismissal with prejudice. Plaintiff can and will plead the underlying misrepresentation claims by name. And because attorney immunity is an affirmative defense on which the Bickerstaff Defendants bear the burden, *Taylor*, 644 S.W.3d at 640–41 (the attorney must meet "her burden to establish its applicability to the conduct at issue"), whether it reaches knowingly false statements of fact made to a requestor outside any adversarial proceeding is not a question the Court can resolve against Plaintiff on this record.

### F. Dismissal With Prejudice Would Be Improper; In The Alternative, Leave To Amend Should Be Granted.

The Motion asks that every claim be "dismissed in their entirety with prejudice to refiling the same." (ECF 17 at 26.) It offers no argument for prejudice—not a sentence. The GDHM Defendants and Truscott at least attempted one: that because Plaintiff "has already amended his pleading once," he has pleaded his best case. (ECF 10 at 16; ECF 16 at 29–30.) That argument is baseless, and the Bickerstaff Defendants were right not to make it: Plaintiff amended on July 24, 2026, as a matter of course under Rule 15(a)(1), seventeen days after filing suit, before any defendant had been served, before any defendant had appeared, and before any defendant had identified a single deficiency in anything. The first appearance by any defendant was the GDHM motion on August 24, 2026. (ECF 10.) An amendment made before anyone has answered is not a squandered chance to cure; it is the amendment the Rules give every plaintiff for the asking. The "best case" doctrine, *Brewster v. Dretke*, 587 F.3d 764, 767–68 (5th Cir. 2009), concerns plaintiffs who, having been told what was deficient, declined to fix it. No court has told Plaintiff anything.

Rule 15(a)(2) directs that "[t]he court should freely give leave when justice so requires," and district courts in this Circuit "often afford plaintiffs at least one opportunity to cure pleading deficiencies before dismissing a case." *Great Plains Tr. Co. v. Morgan Stanley Dean Witter & Co.*, 313 F.3d 305, 329 (5th Cir. 2002). Should the Court find any count deficient as to the Bickerstaff Defendants, Plaintiff requests leave to amend to plead, among other things, separately captioned misrepresentation claims against Robinson and Seaquist, the terms and authorization of the Bickerstaff engagement, and the circulation of Plaintiff's correspondence among the District's lawyers in further detail.

## VI. CONCLUSION

The Motion asks the Court to dismiss a conspiracy count by renaming the adjudicator, erasing the Bickerstaff Defendants' pleaded contacts with the proceeding, miscounting the pleaded evidence, and denying the allegations as "categorically false." None of that is permitted on a Rule 12(b)(6) motion. The FAC pleads an agreement with a defined object, a defined membership, a pleaded mechanism, and specific overt acts by each Bickerstaff Defendant; it pleads a deprivation—retaliation for petitioning—that the Motion never confronts; and it pleads facts that take Robinson and Seaquist outside *Filarsky* and squarely within *Wyatt*, *Tower*, and *Dennis*. The state-law immunity the Motion invokes cannot bar a federal claim, as the Motion's own authority holds. Oral argument would assist the Court because the Motion's immunity grounds turn on the nature of the Bickerstaff engagement—its authorization, its scope, and whether its lawyers were doing the District's work or their own—which the Motion and the FAC describe in irreconcilable terms.

WHEREFORE, Plaintiff respectfully requests that the Court deny the Bickerstaff Defendants' Motion to Dismiss (ECF 17) in its entirety; in the alternative, deny dismissal with prejudice and grant Plaintiff leave to amend pursuant to Fed. R. Civ. P. 15(a)(2); grant oral argument pursuant to LR 7.5(A); and grant such other and further relief to which Plaintiff may be justly entitled.

Dated: October 14, 2026

Respectfully submitted,
/s/ Kawa Foad
**KAWA FOAD, ESQ.**
Florida Bar No. 1005257
Kawa Foad Law Group, P.A. d/b/a KF Law
1000 Brickell Avenue, Suite 715
Miami, Florida 33131
Telephone: (561) 291-0518
kfoad@kf-law.com
*Plaintiff, pro se*

**CERTIFICATE OF SERVICE**

I hereby certify that on October 14, 2026, a true and correct copy of the foregoing Response, together with the accompanying proposed order, was served on all counsel of record via the Court's CM/ECF system, and by electronic mail on all parties who have consented in writing to service by electronic means.

/s/ Kawa Foad, Esq.