**UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

| | | |
|---|---|---|
| **KAWA FOAD, Esq.,** | § | |
| | § | |
| **Plaintiff,** | § | |
| | § | |
| **v.** | § | **Civil Action No.: 4:26-cv-005348** |
| | § | |
| **THE HARRIS-GALVESTON** | § | |
| **SUBSIDENCE DISTRICT; et al.,** | § | |
| **Defendants.** | § | |

---

**DEFENDANTS LORI J. ROBINSON'S, GUNNAR P. SEAQUIST'S, AND BICKERSTAFF HEATH DELGADO ACOSTA, LLP'S REPLY IN SUPPORT OF THEIR MOTION TO DISMISS PURSUANT TO FEDERAL RULE OF CIVIL PROCEDURE 12(b)(6)**

---

STEVEN H. WELLER
State Bar No. 24039235
Southern Dist. Bar No. 2943704

SARA LABASHOSKY
State Bar No. 24129467
slabashosky@bickerstaff.com

CANON P. HILL
State Bar No. 24140247
chill@bickerstaff.com

BICKERSTAFF HEATH
DELGADO ACOSTA LLP
Two Barton Skyway
1601 S. MoPac Expressway, Suite C400
Austin, Texas 78746
(512) 472-8021
(512) 320-5638 FAX

**Counsel for Defendants**

# TABLE OF CONTENTS

TABLE OF CONTENTS ..... i
TABLE OF AUTHORITIES ..... ii
I. Summary of Reply ..... 1
II. Arguments and Authorities ..... 3
A. Plaintiff's Response fails to identify any pleaded facts plausibly suggesting an agreement by the Bickerstaff Defendants to violate his constitutional rights. ..... 3
B. Plaintiff pleadings do not plausibly state any constitutional deprivation, but rather the Bickerstaff Defendants' lawful representation of the District. ..... 6
a. Notwithstanding Plaintiff's arguments, the Bickerstaff Defendants are entitled to qualified immunity. ..... 9
b. State and federal attorney immunity respectively bar Plaintiff's claims. ..... 13
c. Plaintiff's state law claims are fatally defective, and he is not entitled to another opportunity to replead. ..... 14
Prayer ..... 15
CERTIFICATE OF SERVICE ..... 16

# TABLE OF AUTHORITIES

**Cases** Page(s)

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009)....15

*Bell Atl. Corp. v. Twombly*,
550 U.S. 544 (2007)....4–5

*Borough of Duryea, Pa. v. Guarnieri*,
564 U.S. 379 (2011)....7

*Butz v. Economou*,
438 U.S. 478 (1978)....14

*Chhim v. Univ. of Texas at Austin*,
836 F.3d 467 (5th Cir. 2016)....7

*Dallas Police & Fire Pension Sys. v. Alexander*,
No. 4:17-CV-00631-ALM-KPJ, 2020 WL 9936144 (E.D. Tex. Mar. 26, 2020)....8–9

*DeLanis v. Metro. Gov't of Nashville & Davidson Cnty.*,
160 F.4th 732 (6th Cir. 2025)....12

*Filarsky v. Delia*,
566 U.S. 377 (2012)....2, 9–12

*Fisher v. King*,
232 F.3d 391 (4th Cir. 2000)....8

*Gates v. Texas Dep't of Protective & Regulatory Servs.*,
537 F.3d 404 (5th Cir. 2008)....12

*Houchins v. KQED, Inc.*,
438 U.S. 1 (1978)....8

*Jabary v. City of Allen*,
547 F. App'x 600 (5th Cir. 2013)....4, 6

*Jones v. City of Austin Police Dept.*,
No. 03-00-00272-CV, 2000 WL 1759247 (Tex. App.—Austin Nov. 30, 2000)....8

*Keenan v. Tejeda*,
290 F.3d 252 (5th Cir. 2002)....7

*Kelley v. Cochran*,
No. 1:25-CV-00191-MJT-ZJH, 2025 WL 27874156 (E.D. Tex. Sept. 16, 2025), adopted, 2025 WL 2785036 (E.D. Tex. Sept. 30, 2025)....7

*McBurney v. Young*,
569 U.S. 221 (2013)....8

*Mullenix v. Luna*,
577 U.S. 7 (2015)....13

*Richardson v. McKnight*,
521 U.S. 399 (1997)....2, 9, 11–12

*Smith v. Arkansas State Highway Emp., Local 1315*,
441 U.S. 463 (1979)....7

*Spottsville v. Barnes*,
135 F. Supp. 2d 1316 (N.D. Ga. Apr. 4, 2001) ........ 8

*Sullo & Bobbitt, PLLC v. Abbott*,
2012 WL 2796794 (N.D. Tex. July 10, 2012) ........ 8

*Taylor v. Tolbert*,
644 S.W.3d 637 (Tex. 2022) ........ 14

*Witt v. Kenyon*,
No. 7:25-CV-00061-O-BP, 2026 WL 2222978 (N.D. Tex. July 13, 2026), adopted, 2026 WL 2218160 (N.D. Tex. July 31, 2026) ........ 7

*Wyatt v. Cole*,
504 U.S. 158 (1992) ........ 2, 9, 11

**Statutes**

42 U.S.C. § 1983 ........ 2, 6, 10, 13–14

Tex. Gov't Code § 552.001 et seq. ........ 10

Tex. Gov't Code § 552.301(e)(1) ........ 14

Tex. Spec. Dist. Code § 8801.057(a) ........ 10

**Other Authorities**

U.S. Const. amend. I ........ 7

**TO THE HONORABLE LEE H. ROSENTHAL, U.S. DISTRICT JUDGE:**

Disgruntled at Judge Truscott's refusal to permit him to serve as unlicensed counsel in the administrative hearing before the Harris-Galveston Subsidence District (the "District"), Plaintiff, Kawa Foad, filed this baseless action in an apparent attempt to punish anyone and everyone he imagines responsible for this perceived affront. Even against the other defendants, this suit was ill-conceived and without merit. But Plaintiff's inclusion of Lori Robinson, Gunnar Seaquist, and Bickerstaff Heath Delgado Acosta, LLP ("BHDA") (each of the foregoing are collectively referred to herein as the "Bickerstaff Defendants") in this suit based on nothing more than conclusory allegations of a phantom conspiracy in connection with the firm's legal representation of the District in response to Public Information Act (PIA) requests is nothing short of frivolous, and Plaintiff's Response in Opposition (ECF 25) (the "Response") offers no colorable argument to the contrary. The Court should grant the Bickerstaff Defendants' Motion to Dismiss in its entirety.

## I. Summary of Reply

In suing the Bickerstaff Defendants, Plaintiff asserts only two claims: (1) that BHDA attorneys Robinson and Seaquist somehow conspired with the District to prevent Plaintiff from appearing in the contested case proceeding; and (2) that BHDA is vicariously liable for the alleged torts of its individual employees under state law. As shown in the motion to dismiss, both claims fail at the pleading stage, and Plaintiff's arguments to the contrary in the Response are without merit.

First, the Response affirmatively confirms that Plaintiff's "conspiracy" claim distills to (1) his contention that Robinson falsely represented that the District had complied with the Public Information Act in response to his requests when he believes she did not; (2) the conclusory and unadorned recital, solely on information of belief, that Seaquist participated in the records response

function with knowledge of its falsity; (3) Plaintiff's contention that he copied Robinson and Seaquist on correspondence and that they did not respond, and (4), that some of his correspondence was circulated among the District's lawyers. Even assuming for the purpose of this Motion to Dismiss that these allegations were true, none plausibly suggests any agreement by the Bickerstaff Defendants to deprive Plaintiff of a constitutional right, much less that such a deprivation occurred. And because Plaintiff does not, and cannot, state an actionable conspiracy or any underlying tort claims against Robinson or Seaquist, his claim of vicarious liability against BHDA likewise fails.

Next, as each of the allegations against the Bickerstaff Defendants in this lawsuit pertain to actions taken within the scope of their representation of a governmental entity, the U.S. Supreme Court's decision in *Filarsky* dictates that qualified immunity applies to bar Plaintiff's § 1983 claim against them. Plaintiff's reliance on the narrow exception to qualified immunity articulated in *Wyatt* and *Richardson* is misplaced as those decisions are narrowly cabined to the limited contexts—compelling replevin and private prison management—in which they were decided. Indeed, Plaintiff conspicuously fails to cite any persuasive or precedential case in which a court denied qualified immunity under the circumstances presented in this case—private counsel providing legal representation to the government in the performance of a governmental function. Finally, and in the same vein, state and federal attorney immunity likewise apply and operate to bar Plaintiff's claims. As each of these protections apply as a matter of law, Plaintiff is not entitled to an opportunity to replead his specious tort claims as such would be futile.

Thus, on the grounds asserted in the Bickerstaff Defendants' Motion, Plaintiff's claims against the Bickerstaff Defendants should be dismissed in their entirety and with prejudice to refiling.

## II. Arguments and Authorities

### A. Plaintiff's Response fails to identify any pleaded facts plausibly suggesting an agreement by the Bickerstaff Defendants to violate his constitutional rights.

The Bickerstaff Defendants' Motion to Dismiss demonstrated that Plaintiff had failed to state a claim for conspiracy because he could not plead any specific, non-conclusory facts that the individual Bickerstaff Defendants entered into an agreement to deprive him of a constitutional right or that that such deprivation actually occurred. ECF 17, pp. 14-21. In his Response, Plaintiff argues that his complaint is sufficient because he recited the "object" of a purported agreement as being "the collection of an unadjudicated six-figure exaction, the concealment of the records that would expose its baselessness, and the elimination and discrediting of the advocate pressing for them." ECF 25, p 12. Foad argues in his Response that he pleads three bases evidencing the Bickerstaff Defendants' agreement to this purported "object": (1) Robinson's and Martin's parallel false assurances of complete production; (2) the real-time circulation of Plaintiff's correspondence among HGSD's lawyers; and (3) the uniform silence that met Plaintiff's April 15, 2026 verified declaration. ECF. 25, p. 9. Thus, Foad argues that he pled "the *circulation* that makes the agreement plausible: Ellis never copied on Plaintiff's September 26, 2025 inquiry 'joined the thread, confirming that the correspondence was circulating among HGSD's lawyers in real time' and Plaintiff's October 6, 2025 demand went to Martin, Robinson, Seaquist, and Ellis together." ECF 25, p. 12. On their face, none of these allegations bear any plausible indicia of a conspiratorial agreement to violate Plaintiff's constitutional rights by the Bickerstaff Defendants.

Rather, as discussed in the Motion to Dismiss, Plaintiff's allegation that Martin, as independent counsel for the District's General Manager, and Robinson, as counsel representing the District in regard to TPIA requests, both stated that they had provided a complete response to his various TPIA requests amount to nothing more than two law firms' respective, parallel

representations of the same governmental client in distinct capacities and within the confines of the law, not a conspiracy under § 1938. As the Fifth Circuit has held, a plaintiff's pleaded "facts, when 'placed in a context ... [must raise] a suggestion of a preceding agreement, *not merely parallel conduct that could just as well be independent action*.'" *Jabary v. City of Allen*, 547 Fed.Appx. 600, 610 (5th Cir. 2013) (emphasis added) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 557 (2007)). To this point, Plaintiff's baseless contention that the Supreme Court's standards concerning parallel conduct as established in *Twombly* are cabined to the "antitrust" context should be rejected, as the Fifth Circuit itself has applied said standards to conspiracy claims. *See id.*; (ECF 25, p. 14).

The remaining allegations from which Plaintiff would ask this Court to infer conspiratorial agreement by the Bickerstaff Defendants are nothing more than Plaintiff's allegation that the Bickerstaff Defendants were copied on emails or failed to respond to Plaintiff's demands in the manner he wanted them to. Of course, such emails do not even remotely suggest an agreement to an unlawful course of action. For example, Plaintiff claims a conspiracy based on "the real-time circulation of Plaintiff's correspondence among HGSD's lawyers." Notably, he does not, and cannot, allege that any of the Bickerstaff Defendants circulated his correspondence. He simply alleges that District General Counsel, Greg Ellis, responded to an email from Plaintiff on which Ellis was not initially copied. But the allegation that the District forwarded an email from Plaintiff for response by its General Counsel is hardly a conspiracy. Even more astonishing is Plaintiff's contention that the Bickerstaff Defendants were somehow party to a conspiratorial agreement because Plaintiff *himself* elected to copy them on the email he sent transmitting his "verified declaration." To the contrary, the absurdity of a Plaintiff manufacturing the appearance of an agreement by cc'ing individuals on an email is plain on its face.

Moreover, the alleged "over acts" by the Bickerstaff Defendants that Plaintiff points to as support for his conspiracy claim only underscore that claim's frivolity. Plaintiff's Response again trumpets his allegation of Robinson's "serial written assurances that production was complete," which merely concerns the District's continued supplementation to his various TPIA request. Pl.'s Resp. in Opp., 13. While Plaintiff may dispute whether that process comported with the PIA (again, it did), he pleads no fact to suggest that the District's ongoing supplementation was intended to deprive him of any constitutional right. Similarly, although Plaintiff recycles his conclusory allegations that Seaquist "*on information and belief*, participated in the records response function with knowledge of its falsity, and silence in the face of Plaintiff's verified notice," (ECF 25, p. 13-14), those unadorned, threadbare recitals, are far from the specific facts necessary for the Court to infer knowing agreement to a conspiracy. *Twombly*, 550 U.S. at 557. By Plaintiff's own logic—that "[p]leading on information and belief is appropriate where . . . the facts are peculiarly within the defendants' possession" such that discovery is warranted and dismissal is inappropriate (ECF 25, p. 15)—he could pick out any of BHDA's unaffiliated attorneys and plead these same conclusory allegations against them and have met his pleading burden. However, this illustrates exactly why Plaintiff has failed to meet his pleading burden generally and concerning Seaquist specifically.

Nor are Plaintiff's arguments concerning his "verified declaration" or his "Omnibus Motion" evidence of any "overt acts," other than his own. (ECF 25, p. 13). Plaintiff particularly faults Seaquist and BHDA for their alleged respective "silence in the face of [Plaintiff's] April 15, 2026 verified declaration." *Id.* In his First Amended Complaint, Plaintiff alleges that he "transmitted a verified declaration documenting the misconduct alleged herein to . . . the twenty-four named attorneys at GDHM and Bickerstaff," to which "[n]o recipient responded, investigated,

or corrected the conduct." (ECF 6, p. 30, ¶ 107). However, as explained above, the "misconduct" Plaintiff complained of was merely the various Defendants' respective representations of the District within the confines of the law, which is *facially* apparent from Plaintiff's First Amended Complaint. Thus, it is not apparent how the alleged inaction of Seaquist or BHDA in failing to yield to Plaintiff's spurious demand for "disqualification of the conflicted lawyers by name" amounts to any legally operative facts, let alone plausible evidence of a conspiracy to deprive Plaintiff of his rights. (ECF 6, p. 69, ¶ 267). Indeed, by Plaintiff's own apparent logic, one could essentially manufacture the existence of a "conspiracy" by issuing impertinent demands to unaffiliated persons that, when properly ignored, suddenly give rise to legal liability under § 1983. However, such is not the law and is insufficient to plausibly suggest the existence of a conspiracy. Ultimately, when considering that Plaintiff has failed to meet his pleading burden to plausibly allege "an agreement among individuals to commit a deprivation" of his rights, and further that his pleadings fundamentally concern the Bickerstaff Defendants lawful representation of the District, his conspiracy claim against them should be dismissed with prejudice.

**B. Plaintiff pleadings do not plausibly state any constitutional deprivation, but rather the Bickerstaff Defendants' lawful representation of the District.**

Aside from the facial deficiencies in Plaintiff's First Amended Complaint concerning the existence of agreement to a conspiracy, it is further clear that Plaintiff does not plead any actual deprivations of his rights. *See Jabary*, 547 Fed. Appx. at 610. In the Response, Plaintiff argues that "[t]he right deprived is the right to petition the government—by records requests, by an opposition filed in the Attorney General proceeding, by written demands, and by notice of intent to sue—without retaliation," however this pivot is equally unavailing to his position. (ECF 25, p. 15) (citing ECF 6, ¶¶ 48–50, 78, 219) (cleaned up). To establish a retaliation claim as an ordinary citizen, Plaintiff must show that (1) he was engaged in a constitutionally protected activity, (2) the

defendant's actions caused him to suffer an injury that would chill a person of ordinary firmness from continuing to engage in that activity, and (3) the defendants' adverse actions were substantially motivated against the plaintiffs' exercise of constitutionally protected conduct. *Keenan v. Tejeda*, 290 F.3d 252, 258 (5th Cir. 2002) (internal citations omitted). Plaintiff fails to plead facts plausibly showing any of these elements. *See Chhim v. Univ. of Texas at Austin*, 836 F.3d 467, 470 (5th Cir. 2016) (Holding that plaintiffs bear the burden of pleading sufficient facts on all of the ultimate elements of their claim to make their case plausible.).

As a threshold matter, Plaintiff states no legal authority to suggest that his participation in the TPIA process even implicates the First Amendment's Petition Clause, which protects "'the right of the people . . . to petition the Government *for a redress of grievances*.'" *See* U.S. Const., Amdt. 1. Setting aside his equally faulty contention that he was the subject of "retaliation" because the District exercised its statutory right under the PIA to ask the Attorney General for a letter ruling, it cannot be said that the Plaintiff's requests under the PIA amounted to a "petition" within the meaning of the U.S. Constitution. *See Borough of Duryea, Pa. v. Guarnieri*, 564 U.S. 379, 388, 395 (2011) ("The right to petition allows citizens to express their ideas, hopes, and concerns to their government and their elected representatives . . .") ("Petition, as a word, a concept, and an essential safeguard of freedom, is of ancient significance in the English law and the Anglo–American legal tradition."). Indeed, courts have previously rejected similar conclusory arguments attempting to link the Petition Clause to public information act requests. *See*, *e.g.*, *Kelley v. Cochran*, No. 1:25-CV-00191-MJT-ZJH, 2025 WL 27874156, at *6 (E.D. Tex. September 16, 2025), *adopted*, 2025 WL 2785036 (E.D. Tex. September 30, 2025) (citing *Smith v. Arkansas State Highway Emp., Local 1315*, 441 U.S. 463, 465 (1979)) ("The Petition Clause does not impose an affirmative obligation on government officials to respond to such petitions."); *see also Witt v.*

*Kenyon*, No. 7:25-CV-00061-O-BP, 2026 WL 2222978, at *15 (N.D. Tex. July 13, 2026), *adopted*, 2026 WL 2218160 (N.D. Tex. July 31, 2026) ("Although [the Plaintiffs] invoke the "First Amendment right to petition the government by submitting lawful public records requests," . . . they do not provide authority for the specific proposition that a public records request falls within the ambit of protected petitioning.").

Further, as "[t]he general public does not have a First Amendment right to information requested under state freedom of information acts or public information act requests," it is clear that Plaintiff could not have suffered any deprivation or injury under the First Amendment necessary to support a claim. *Dallas Police & Fire Pension Sys. v. Alexander*, No. 417-CV-00631-ALM-KPJ, 2020 WL 9936144, at *10 (E.D. Tex. Mar. 26, 2020) (citing *McBurney v. Young*, 569 U.S. 221, 232 ("This Court has repeatedly made clear that there is no constitutional right to obtain all the information provided by [Freedom of Information Act] laws."); *Houchins v. KQED, Inc.*, 438 U.S. 1, 14 (1978) ("The Constitution itself is [not] a Freedom of Information Act[.]") (internal punctuation omitted); *Fisher v. King*, 232 F.3d 391, 399 (4th Cir. 2000) (recognizing that the general public does not have a First Amendment right of physical access to original 911 recordings); *Sullo & Bobbitt, PLLC v. Abbott*, 2012 WL 2796794, at *11 (N.D. Tex. July 10, 2012) (citing *Houchins*, 438 U.S. at 15 ("Neither the First Amendment nor the Fourteenth Amendment mandates a right of access to government information or sources of information within the government's control.")); *Spottsville v. Barnes*, 135 F. Supp. 2d 1316, 1323 (N.D. Ga. Apr. 4, 2001) (recognizing the state's authority to craft public information act statutes on a selective basis); *Jones v. City of Austin Police Dept.*, No. 03-00-00272-CV, 2000 WL 1759247, at *1 (Tex. App.—Austin, Nov. 30, 2000) (the First Amendment does not guarantee prisoners right to records under the Texas Open Records Act)). Thus, as Plaintiff's "TPIA requests are not constitutionally

protected speech," but rather are "statutorily protected requests in Texas," "Section 1983 does not protect [Plaintiff's] state rights under Texas statutes." *Id.*, at *11 (cleaned up).

Finally, Plaintiff's allegations facially establish he was not the subject of any retaliation. Plaintiff again doubles down on his conclusory assertion that his being barred from the unlicensed practice of law before the District was somehow connected to his participation in the TPIA process. Among those injuries Plaintiff asserts he suffered *as a result of his "petitioning"* were "the unauthorized-practice accusation, the Disqualification Ruling, the No-Contact Directive, and the July 8, 2026 silencing." (ECF 25, p. 16). But once again, Plaintiff does not plausibly plead that the Bickerstaff Defendants played any role in these actions nor that they otherwise agreed to them. As such, Plaintiff has failed to plausibly plead any constitutional deprivation inflicted by, or by the agreement of, the Bickerstaff Defendants, and his conspiracy claim must be dismissed.

**a. Notwithstanding Plaintiff's arguments, the Bickerstaff Defendants are entitled to qualified immunity.**

Plaintiff further argues that the Bickerstaff Defendants are not entitled to qualified immunity under the Supreme Court's precedent in *Filarsky v. Delia*, 566 U.S. 377 (2012), on the unsupported basis that "*Filarsky* is narrower than the Motion suggests." (ECF 25, p. 17). Predictably, Plaintiff points to the Supreme Court's previous decisions in *Wyatt v. Cole*, 504 U.S. 158 (1992), and *Richardson v. McKnight*, 521 U.S. 399 (1997) as he asserts that his First Amended Complaint alleges "that Robinson and Seaquist were not lawfully 'carrying out the work of the government' at all, but were private actors operating under an unauthorized engagement for private gain." (ECF 25, p. 18). Plaintiff asserts that BHDA's "engagement with the District was never authorized by the Board, that no invoice or proof of payment for its work has ever been produced, and that its lawyers 'acted in their own financial interest," all of which, according to Plaintiff, negate the application of qualified immunity to the Bickerstaff Defendants under *Filarsky*. (ECF

25, pp. 17–18). However, for the following reasons, these arguments do not disturb the Bickerstaff Defendants' entitlement to qualified immunity.

As an initial matter, Plaintiff's contention that BHDA's engagement to provide legal services regarding the TPIA necessitated approval by the District's Board is simply unfounded. Indeed, Texas Special District Local Laws Code Section 8801.057 ("General Manager") provides that "[t]he board shall employ a general manager, who serves as the chief administrative officer of the district" and further that "[t]he board may delegate to the general manager full authority to manage district affairs or operate the district subject only to orders by the board." Tex. Spec. Dist. Code § 8801.057(a). The District's Board may delegate to its general manager authority to discharge the District's TPIA obligations under Texas Government Code Section 552.001 *et seq.*, including the retention of legal counsel to assist in the discharge of those obligations. Indeed, Plaintiff has put forth no authority to suggest that *only* the Board can retain legal counsel, *and in fact the operative statutes conclusively establish the contrary*. Accordingly, the Court should disregard Plaintiff's specious argument that BHDA's employment was somehow unlawful because the Board itself allegedly did not authorize it.

Further, for all the obvious reasons, the Court should also disregard Plaintiff's argument that "Robinson and Seaquist were not lawfully 'carrying out the work of the government' at all." As has been exhaustively discussed, the Plaintiff failed to even *attempt* to meet his pleading burden against Seaquist. Additionally, Plaintiff himself alleges that Robinson "is a Bickerstaff partner who *directed HGSD's responses to the [TPIA] Requests*." (ECF 6, p. 10, ¶ 28). Since it is beyond dispute that Robinson acted on behalf of the District related to the discharge of its public duties under the TPIA, she likewise is entitled to seek the protection of qualified immunity. *See Filarsky*, 566 U.S. at 389 ("immunity under § 1983 should not vary depending on whether an individual

working for the government does so as a full-time employee, or on some other basis"). Plaintiff points out that "Bickerstaff is a private law firm" (ECF 25, p. 17), but that does not preclude qualified immunity; Filarsky himself was a private attorney employed by the governmental entity at issue in that case. *Id.* at 380. And as discussed above, Plaintiff's legally baseless allegations concerning the necessity of Board approval in BHDA's representation do not plausibly suggest that Robinson or the Bickerstaff Defendants writ large "were not lawfully 'carrying out the work of government.'" (ECF 25, p. 18). Finally, Plaintiff's conclusory assertion that BHDA's "lawyers 'acted in their own financial interest'" is not dispositive, either. (ECF 25, p. 18). To be sure, Robinson and BHDA performed their services for reasonable remuneration from the District, but, yet again, so did Filarsky himself. Thus, Plaintiff's stated bases are ultimately inapposite to determining the Bickerstaff Defendants' entitlement to qualified immunity.

Plaintiff's reliance on *Wyatt* and Richardson is further misplaced. Concerning the former, Plaintiff seemingly ignored the Supreme Court's discussion of *Wyatt* in *Filarsky*. In that case, the Court cabined *Wyatt*'s application on the grounds that it "involved no government agents, no government interests, and no government need for immunity." *Filarsky*, 566 U.S. at 393. Indeed, "[i]n *Wyatt*, [the Court] held that individuals who used a state replevin law to compel the local sheriff to seize disputed property from a former business partner were not entitled to seek qualified immunity," a fact pattern which has no correlation with that of this case. *Id.* at 392. Concerning *Richardson*, Plaintiff's reliance on that case is equally unavailing as the Supreme Court itself has characterized it as "a self-consciously 'narrow[ ]' decision." *Id.* at 393. In *Richardson*, the Court "determined that prison guards employed by a private company and working in a privately run prison facility did not enjoy the same protection" because "the various incentives characteristic of the private market in that case ensured that the guards would not perform their public duties with

unwarranted timidity or be deterred from entering that line of work." *Id.* To this point, the *Filarsky* Court was careful to cabin the applicability of *Richardson* to "the particular circumstances of that case—'a private firm, systematically organized to assume a major lengthy administrative task (managing an institution) with limited direct supervision by the government, undertak[ing] that task for profit and potentially in competition with other firms.'" *Id.* As the case at bar merely involves the representation of a governmental entity by a private law firm in discrete government tasks concerning the TPIA and does not involve any of the circumstances of *Richardson*, the Court should disregard Plaintiff's arguments to the contrary.

And while the Fifth Circuit has not addressed the entitlement to qualified immunity of private attorneys or firms in representing governmental entities in discrete tasks, the Sixth Circuit has consistently held that "[w]hen private attorneys and law firms provide legal services to a government body, they also are eligible for qualified immunity in connection with that work." *DeLanis v. Metro. Gov't of Nashville & Davidson Cnty.*, 160 F.4th 732, 738 (6th Cir. 2025) (internal citations omitted). Ultimately, because Robinson and the Bickerstaff Defendants' representation of the District was "for public actions taken in service of a government client," the Defendants are entitled to seek the protection of qualified immunity under *Filarsky*. *Id.*

Concerning the application of qualified immunity, notwithstanding Plaintiff's arguments in his Response, he has neither asserted a plausible violation of his First Amendment rights through his theory of conspiratorial retaliation, *see supra*, nor has Plaintiff shown that the Bickerstaff Defendants' actions (or lack thereof) were objectively unreasonable in light of clearly established law. *See Gates v. Texas Dep't of Protective & Regulatory Servs.*, 537 F.3d 404, 418 (5th Cir. 2008). Plaintiff responds that "the right not to be retaliated against for petitioning the government was clearly established long before 2025," but that is far too abstract to deny qualified immunity

in this case. ECF 25, p. 18. The Supreme Court has "repeatedly told courts … not to define clearly established law at a high level of generality.' *Mullenix v. Luna*, 577 U.S. 7, 12 (2015). The dispositive question for purposes of qualified immunity "whether the violative nature of particular conduct is clearly established." *Id.* This inquiry "'must be undertaken in light of the specific context of the case, not as a broad general proposition.' *Id.* Here, Plaintiff can point to no controlling authority clearly establishing that a private attorney engages in a conspiracy in violation of the law by providing legal representation to their client on responding to a public information act request. To the contrary, as shown above, the existing authority demonstrates the opposite conclusion. Accordingly, the Bickerstaff Defendants are entitled to qualified immunity to Plaintiff's § 1983 claim, which should be dismissed with prejudice.

**b. State and federal attorney immunity respectively bar Plaintiff's claims.**

Notwithstanding Plaintiff's arguments to the contrary, the Bickerstaff Defendants are entitled to both state and federal attorney immunity to Plaintiff's respective claims. Plaintiff, seemingly ignoring the Bickerstaff Defendants' actual arguments concerning Texas's attorney immunity, only responds that "[a] state-law defense cannot defeat a federal civil-rights claim," but such was not advanced by the Bickerstaff Defendants. (ECF 25, p. 19). Rather, the Bickerstaff Defendants showed that under Texas law they are entitled to attorney immunity, and, thus, "any *state law tort claim* that Plaintiff might otherwise assert against BHDA or its attorneys falls squarely within the ambit of Texas's attorney immunity and is barred as a matter of law." (ECF 17, p. 26) (emphasis added). In fact, Plaintiff never attempted to rebut this entitlement—*to be clear, he cannot*—and it is thus clear that Plaintiff's state law tort claims against the Bickerstaff Defendants, in whatever state of pleading, are barred and should be dismissed with prejudice.

Beyond state law attorney immunity, the Bickerstaff Defendants have also shown themselves entitled to federal attorney immunity to Plaintiff's § 1983 conspiracy claim against

them. Plaintiff contends that "[a]nswering a requestor's public-information request is not an adjudication, and a letter asking the Attorney General for a ruling . . . is not the presentation of evidence before a tribunal" such that federal attorney immunity under *Butz v. Economou*, 438 U.S. 478 (1978) is inapplicable. However, Plaintiff ignores the administrative nature of the TPIA process, which integrally involves the presentation of argument and evidence in the form of a representative sample before the Texas Attorney General in the administrative letter ruling phase. *See* Tex. Gov't Code § 552.301(e)(1). Further, as Plaintiff has not plausibly pled a colorable conspiracy claim, none of the caselaw he relies on disturbs the Bickerstaff Defendants' entitlement to federal attorney immunity to Plaintiff's § 1983 claim.

**c. Plaintiff's state law claims are fatally defective, and he is not entitled to another opportunity to replead.**

In his First Amended Complaint, Plaintiff does not plead any state law tort cause of action against Robinson or Seaquist necessary to support his *respondeat superior* theory against BHDA. In response, Plaintiff asserts that his "Count VIII expressly incorporates . . . Robinson's 'four written representations . . . that production was complete and 'no other responsive documents exist in any format,' each disproved by HGSD's own subsequent productions," but this contention falls flat in light of the fact that Plaintiff did not actually *a cause of action against Robinson or Seaquist*. Plaintiff contends "[k]knowingly false statements of fact made to induce reliance are tortious under Texas law whatever caption they bear," but Plaintiff points to law to support this assertion. (ECF 25, p. 21). Plaintiff asks that he be granted the opportunity to amend, but this ignores that fact that no matter how Plaintiff amends his state tort claims, it would be barred under Texas law by attorney immunity. (ECF 17, p. 25); *see Taylor v. Tolbert*, 644 S.W.3d 637, 646 (Tex. 2022).

Indeed, attorney immunity also bars Plaintiff's direct claims against BHDA under state tort law, claims which should be further dismissed as they amount to no more than "naked assertions"

devoid of "further factual enhancement," Plaintiff's institutional conduct claim should be dismissed. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). As Plaintiff has already amended his claims once and still has not even attempted to state a cognizable legal theory under Texas law, and attorney immunity applies, Plaintiff's state law tort claims against the Bickerstaff Defendants should be dismissed with prejudice.

**Prayer**

For these reasons, the Bickerstaff Defendants pray that Plaintiff's claims against them be dismissed in their entirety with prejudice to refiling the same, and for such other relief at law and in equity that this Court deems just and proper.

Respectfully submitted,

BICKERSTAFF HEATH
DELGADO ACOSTA LLP
Two Barton Skyway
1601 S. MoPac Expressway, Suite C400
Austin, Texas 78746
(512) 472-8021
(512) 320-5638 FAX

By: /s/ Steven H. Weller

Steven Weller
State Bar No. 24039235
Southern Dist. Bar No. 2943704
*Attorney-in-Charge for All Defendants*

SARA LABASHOSKY
State Bar No. 24129467
slabashosky@bickerstaff.com

CANON P. HILL
State Bar No. 24140247
chill@bickerstaff.com
**Counsel for Defendants**

**CERTIFICATE OF SERVICE**

This is to certify that a true and correct copy of the foregoing document was served upon the *Pro-se* Plaintiff via CM/ECF, email, and or regular mail on September 23, 2026.

Kawa Foad
KF Law
1000 Brickell Ave., Ste. 715
Miami, FL 33131

/s/ Steven H. Weller
Steven H. Weller